1   Neal J. Stephens (State Bar No. 152071)
    Jeffrey B. Schenk (State Bar No. 234355)
2   Thao Donnelly (State Bar No. 355632)
    JONES DAY
3   1755 Embarcadero Road
    Palo Alto, CA  94303
4   Telephone:      +1.650.739.3939
    Facsimile:      +1.650.739.3900
5   Email:  nstephens@jonesday.com
    Email:  jbschenk@jonesday.com
6   Email:  tdonnelly@jonesday.com

7   Edward W. Swanson (State Bar No. 159859)
    August P. Gugelmann (State Bar No. 240544)
8   SWANSON & McNAMARA LLP
    300 Montgomery Street, Suite 1100
9   San Francisco, CA 94104
    Telephone:      +1.415.477.3800
10  Facsimile:      +1.415.477.9100
    Email:  ed@smllp.law
11  Email:  august@smllp.law

12  Attorneys for Defendant
    DAVID TRUNG DUONG
13

14                    UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                        OAKLAND DIVISION

17

18  UNITED STATES OF AMERICA,             Case No. 4:25-CR-00003-YGR

19               Plaintiff,               **REPLY MEMORANDUM IN SUPPORT
                                          OF DAVID DUONG'S MOTION TO
20  v.                                    MODIFY FILTER TEAM PROTOCOL**

21  SHENG THAO, ANDRE JONES, DAVID        Hearing Date:      April 24, 2025
    TRUNG DUONG, and ANDY HUNG            Hearing Time:      10:30 am
22  DUONG,                                Judge:  Hon. Yvonne Gonzalez Rogers
                                          Courtroom:  1, 4th Floor
23               Defendants.

24

25

26

27

28
                                    DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
                                           MOTION TO MODIFY FILTER TEAM PROTOCOL
                                                      CASE NO. 4:25-CR-00003-YGR

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
### I.     THE COURT SHOULD GRANT THE REQUESTED RELIEF

3
The government concedes two critical facts that demonstrate why this Court should grant

4
this motion.  First, the government admits that it failed to obtain prior approval from the

5
Magistrate Judge before it began reviewing privileged material.  The government does not cite

6
any authority to counter the established principle that "it is obvious that no governmental entity

7
should intentionally review privileged material without the express approval of the court."

8
*United States v. Pedersen*, 2014 WL 3871197, at *29 (D. Or. Aug. 6, 2014).

9
Second, the government admits that it designed its filter team protocol to allow the filter

10
team to disclose certain documents to the prosecution team without providing defense counsel an

11
opportunity to raise objections to the Court before the prosecution team receives the documents.

12
*See,* ECF 56-2, Stern Declaration, ¶¶ 3-4.  As a result, the government acts as the sole arbiter of

13
the privilege determinations on those documents—a violation of bedrock separation of powers

14
principles.  This "no oversight" aspect of the government's filter team protocol generates the "fox

15
guarding the hen house" dilemma—where filter team agents can disclose privileged materials to

16
their colleagues on the prosecution team without any check from defense counsel or the Court.

17
The government also overstates the impact the requested relief will have on the review of

18
the privileged material.  The issue before the Court is *not* whether all filter team protocols are *per*

19
*se* illegal such that this filter team must terminate its work and turn over the seized materials to

20
the Court to conduct the entire privilege review.  Defense counsel does not "demand to stop the

21
review."  Nor does the defense request that this Court review every privilege determination.

22
Instead, the issue before the Court is simply whether additional guardrails should be added

23
to the filter team protocol given that it is undisputed that the current protocol allows the filter

24
team to disclose documents to the prosecution team without any judicial oversight.  *See,* ECF 49

25
at 1:4-7; 1:22-28; 3:13-4:8; 7:23-8:3 and 9:24-10:1.  The structural problems with the

26
government's existing protocol can be cured with fairly limited relief.  The defense is simply

27
asking that the filter team (a) provide defense counsel a reasonable opportunity to object to the

28
filter team's privilege calls, and (b) return all copies of all privileged materials to the relevant

- 1 -

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR

defense counsel. When analyzed through the lens of the undisputed facts on the actual issue

before the Court, the government's arguments all fail.

### A.    The Government's Filter Team Protocol Violates Bedrock Separation of Powers Principles.

It is undisputed that the government's protocol allows the filter team to disclose certain

documents – i.e., documents that did not hit on search terms and documents the filter team

classified as "clearly not privileged" – directly to the prosecution team without any judicial

oversight. *See,* ECF 56-2, Stern Declaration, ℙ 3 ("[t]he filter team was instructed to release

materials that did not hit on the search terms to the prosecution team.") and ℙ 4 ("with respect to

the remainder of the materials that hit on certain search terms, the filter team was instructed to

review these materials and pass along any material that was clearly not privileged to the

prosecution team…").

Thus, the government's "no oversight" process violates separation of powers principles

because it authorizes the executive branch—via its filter team—to make decisions on attorney

client privilege that are reserved to the judicial branch. *United States v. Under Seal (In re Search*

*Warrant Issued June 13, 2019)*, 942 F.3d 159, 176-77 (4th Cir. 2019), as amended (Oct. 31,

2019) (rejecting filter team protocol that allowed the filter team to forward documents it classified

as nonprivileged directly to the prosecution team).

The government attempts to distinguish the Fourth Circuit's reasoning by asserting that

the search in this case did not involve the search of a lawyer's office. The government states that

"federal agents spoke with CWS' in-house counsel, determined which CWS offices belonged to

lawyers, and did not search those lawyer offices in order to respect the privilege that may attach

to documents there." ECF 56 at 2:17-19. The government also states that "it is important to note

that the searches here did not involve searches … that in any way were designed to or could have

directly targeted the confidential advice provided to the defendants by any attorneys." *Id.* at 7:19-

21. The government's reasoning is flawed.

First, it is undisputed that the government seized materials containing privileged

communications involving Mr. Duong. The federalism principles at issue apply to the ***content*** of

- 2 -

1    the material seized – privileged material – not merely the *location* where those materials were

2    stored – a law office vs. an executive's office at CWS, a network server, an electronic storage

3    device, or Mr. Duong's residence.

4    Second, the government's position is factually inaccurate. Sooah Sohr, in-house counsel for

5    CWS, spoke with the lead IRS agent on scene at CWS on the morning of the search. Reply

6    Declaration of Sooah Sohr in Support of Motion to Modify Filter Team Protocol ("Sohr Decl." ¶

7    3). Ms. Sohr told the agent that she maintained privileged documents in several locations inside

8    CWS' office—including her personal office, Mr. Duong's office, and the offices of CWS' CFO

9    and HR Manager—and asked that the agents not seize the privileged information. *Id.* The agent

10   instructed Ms. Sohr to unlock and open her personal office, which was closed and locked. *Id.* at ¶

11   4. Ms. Sohr opened her office for the agent. *Id.* The agent then instructed Ms. Sohr to leave the

12   premises so Ms. Sohr left the building. *Id.* When Ms. Sohr returned after the agents had finished

13   their search and departed, she noticed that documents located inside her office had been moved—

14   suggesting that agents had entered her office and searched her records. *Id.* Agents also seized

15   documents from the offices of Mr. Duong, the CFO, and the HR Manager—the locations where

16   Ms. Sohr told the agent that she stored privileged material. Reply Declaration of Neal J. Stephens

17   in Support of Motion to Modify Filter Team Protocol ("Stephens Reply Decl.") ¶¶ 1-2, Exhibits

18   A and B.

19   The agents who searched CWS also seized numerous electronic storage devices and imaged

20   CWS' network server. *Id.*, Exhibit B at 16-17. That electronic data will include privileged

21   material generated by Ms. Sohr. Given that the government seized privileged material involving

22   Ms. Sohr, there is no meaningful difference between the facts in this case and the facts in *In re*

23   *Search Warrant Issued June 13, 2019.* In both cases, the government seized privileged material

24   from an attorney. Accordingly, the federalism principles that drove the holding in the Fourth

25   Circuit's decision also apply here.

26   The government also cites a series of cases that have no bearing on the issues in this case. For

27   example, the government cites *United States v. Jarman,* 847 F.3d 259, 266 (5th Cir. 2017)

28   to assert that numerous federal circuits have endorsed the terms of their filter team protocol. ECF

- 3 -

1    56 at 7:14-15. But the quote the government attributes to the Fifth Circuit in *Jarman* does not

2    exist in the court's opinion. *Jarman*, 847 F.3d at 266. The issue in *Jarman* involved a review of

3    a denial of a motion to suppress, not whether a filter team protocol is adequate when it allows the

4    filter team to disclose documents to the prosecution team without any judicial oversight. *Id.* at

5    261. In short, the court in *Jarman* did not analyze how other circuits assess filter team protocols

6    that contain the "no oversight" flaw that exists in the filter team protocol in this case. *Id.*

7        The government's remaining cases are also off point. *See, United States v. Young*, 2015 WL

8    5138520 (N.D. Cal. Sept. 1, 2015) (motion to suppress statements to an informant, not a

9    challenge to a filter team protocol); *United States v. Backstad*, 2020 WL 5992347 (S.D.N.Y. Oct

10   9, 2020) (motion to suppress and other pretrial motions, not a challenge to a filter team protocol);

11   *In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150 at *2 (S.D.N.Y. May 28,

12   2021) (intervenors in a pending grand jury investigation seeking appointment of a special master,

13   return of warrant materials, and pre-indictment discovery of the government's privilege and

14   responsiveness designations); *United States v. Yang*, 2019 WL 5864733 (N.D. Cal. Nov. 7, 2019)

15   (motion to dismiss on limitations grounds, not a challenge to a filter team protocol).

16           **B.**      **The Government's Filter Team Protocol Creates the "Fox Guarding the**
17                   **Henhouse" Problem.**

        The government's filter protocol also presents the "fox guarding the hen house" problem
18
     because members of the filter team could either mistakenly or intentionally violate their ethical
19
     obligation and pass privileged information to the prosecution team by simply classifying it as
20
     "clearly not privileged." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006).
21
        The government attempts to distinguish the Sixth Circuit's reasoning by emphasizing that this
22
     matter relates to a seizure of privileged material via a search warrant, not a grand jury subpoena.
23
     ECF 56 at 9:12-28. The government suggests that the Sixth Circuit approved the use of any type
24
     of filter team protocol – regardless of its terms – if the government seized the privileged materials
25
     via a search warrant. *Id.* at 10:1-4. But the Sixth Circuit did not give blanket approval to any and
26
     all filter team protocols where the government proceeded via a search warrant. Instead, the Sixth
27
     Circuit focused on whether the protocol at issue contained a "check … against the possibility that
28

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR

1    the government's team might make some false negative conclusions." *In re Grand Jury*

2    *Subpoenas*, 454 F.3d at 523.  In that case, like ours, the proposed protocol was flawed because

3    "appellants' attorneys would have an opportunity to assert privilege *only* over those documents

4    which *the taint team has identified* as being clearly privileged or possibly privileged." *Id.*

5    (emphasis in original).  In other words, it may be possible for the government to draft an

6    acceptable filter team protocol when it proceeds via search warrant.  But the government failed to

7    do so in this case.  The filter team protocol in this case is defective because it lacks the "check"

8    on false negative conclusions and thereby suffers from the same "fox guarding the hen house"

9    defect that doomed the filter protocol in *In re Grand Jury Subpoenas. Id.*

10        The government's filter team protocol also contradicts ethical guidance provided by the

11    Department of Justice.  The Professional Responsibility Advisory Office ("PRAO") at Main

12    Justice provides ethical guidance to federal prosecutors about their professional responsibilities,

13    including how to design an appropriate filter team protocol.  Stephens Reply Decl. ¶ 3, Exhibit C.

14    PRAO has confirmed that "the courts, of course, are the arbiters of what constitutes an 'adequate'

15    filter team." *Id.,* Exhibit C at 1.  PRAO has also advised that best practices for filter team

16    protocols include "permitting court review of challenged documents *prior* to handing such

17    documents over to the prosecution team." *Id.,* Exhibit C at 2.  (emphasis added).

18        In other words, PRAO has advised federal prosecutors to respect the separation of powers

19    principles expressed by the Fourth Circuit and avoid the "fox guarding the hen house" problem

20    emphasized by the Sixth Circuit.  An appropriate filter team protocol cannot allow the filter team

21    to disclose a class of documents to the prosecution team—like the documents classified as

22    "clearly not privileged" here—without allowing for judicial oversight of those privilege

23    decisions.  In addition, PRAO does not take the position that the government can design a filter

24    team protocol that ignores all of these concerns simply because the government obtained the

25    documents via a search warrant as opposed to a grand jury subpoena. *Id.*  In short, the

26    government's filter protocol conflicts with ethical guidance on best practices for filter teams from

27    Main Justice.

28

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR

### C.    Mr. Duong's Motion is Timely

The government argues that the Court should deny this motion as untimely. ECF 56 at 1:17-19. The government, however, fails to cite any case law to support its argument. The facts demonstrate that this motion is timely. Undersigned counsel raised this issue with the government on February 5, 2025, the day before the first status conference before this Court. In addition, the government did not unseal the indictment until January 17, 2025. While the government did obtain search terms from Mr. Duong's prior counsel, the government did not share the format of its filter protocol with prior counsel so Mr. Duong's counsel was not aware of the structural defects in the government's filter team process.

### D.    The Proposed Relief is Reasonable

The government argues that the proposed relief "would have the effect of unnecessarily freezing the government's review and thereby delaying the production of discovery to all defendants." ECF 56 at 1:28-2:1. The government also asserts that Mr. Duong demands that the Court "stop the review." *Id.* at 7:22. These statements exaggerate the requested relief. Defense counsel is not trying to stop the filter team review. Defense counsel merely seeks a reasonable amount of time to review the material that the filter team intends to disclose to the prosecution team so that counsel can raise any objections before the filter team discloses that material to the prosecution team. As noted above, the proposed relief is consistent with both the leading case law in this area and ethical guidance from the Department of Justice.

The government also argues that it should not have to return all copies of privilege materials that are contained on digital and electronic media. *Id.* at 11:10-22. The government does not cite any case law to support its position. Courts, by contrast, understand that the whole point of a filter team process is to identify privileged material and return that material to its owner—the government is not entitled to keep any copy of the privileged material. *See, Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) ("[A] taint team serves no practical effect if the government refuses to destroy or return the copies of documents that the taint team has identified as privileged.").

Instead of citing case law to support its argument, the government relies on language that

1    it drafted into its search warrant application. The government's approach on this issue suffers

2    from the same flaw as its defense of its defective filter team protocol. The government created a

3    flawed process that it wants to follow and then it relies on the process it created—not the case

4    law—as justification to continue to follow its flawed process. This circular reasoning is not

5    persuasive.

6         In addition, the government asserts that it will not return privileged information stored on

7    electronic devices because "some of these seized devices will likely be admitted into evidence at

8    trial." *Id.* at 11:15-18. In other words, the prosecution team intends to introduce privileged

9    material into evidence at trial. The prosecution team is not entitled to possess the privileged

10   information—let alone use it at trial. The government's position underscores why the defendants

11   are seeking an order requiring the filter team to return all copies of all privileged material to the

12   appropriate defense attorney. *See, Harbor Healthcare Sys., L.P.,* 5 F.4th at 599 (by refusing to

13   return privileged materials, "the government has thus conceded that it has no intent to respect

14   Harbor's interest in the privacy of its privileged materials as the investigation unfolds.")

15        Finally, while the government claims that the initial phase of its filter review process is

16   90% complete, the filter team has not returned a single page of privileged or potentially

17   privileged material to counsel for Mr. Duong. Stephens Reply Decl. ¶ 4.

18   **II.    CONCLUSION**

19        For the reasons stated above, defendants respectfully request that the Court grant this

20   motion and the relief in their proposed order.

21   DATED: April 10, 2025                    Respectfully Submitted,

22                                            JONES DAY

23                                            */s/ Neal J. Stephens*
                                              NEAL J. STEPHENS
24                                            JEFFREY SCHENK
                                              THAO DONNELLY
25

26

27

28

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SWANSON & McNAMARA LLP


*/s/ Edward w. Swanson*
EDWARD W. SWANSON
AUGUST P. GUGELMANN

Attorneys for Defendant
David Trung Duong

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR

**CERTIFICATE OF SERVICE**

1

2

3          I, Trudy Carney, declare:

4          I am a citizen of the United States and employed in Santa Clara County, California.  I am

5   over the age of eighteen years and not a party to the within-entitled action.  My business address

6   is Silicon Valley Office, 1755 Embarcadero Road, Palo Alto, California  94303.  On April 10,

7   2025, I served a copy of the Reply Memorandum in Support of David Duong's Motion to Modify

8   Filter Team Protocol by electronic transmission.

9          I am familiar with the USDC Northern District's practice for collecting and processing

10  electronic filings.  Under that practice, documents are electronically filed with the Court.  The

11  Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the

12  assigned judge, and any registered users in the case.  The NEF will constitute service of the

13  document.  Registration as a CM/ECF user constitutes consent to electronic service through the

14  Court's transmission facilities.

15         Executed on April 10, 2025, Palo Alto, California.

16

17

18                                         _____
                                                Trudy Carney

19  NAI-5000366021v1

20

21

22

23

24

25

26

27

28

DAVID DUONG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY FILTER TEAM PROTOCOL
CASE NO. 4:25-CR-00003-YGR