**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**SHENG THAO, ET AL.,**<br><br>　　　　Defendants. | Case No.  25-cr-00003-YGR<br><br>**ORDER DENYING MOTIONS TO SUPPRESS**<br><br>Re Dkt. Nos. 119, 136, 138, 141, 150 & 191 |

Before the Court are defendants' motions[1] to suppress the fruits of various warrants, including two warrants which defendants assert were issued in reliance on an affidavit that contained material omissions regarding Co-Conspirator 1[2] (Mario Juarez). [3]  Defendants also seek an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

Defendant Sheng Thao has been charged alongside co-defendants David Duong, Andy Duong, and Andre Jones in an eight-count indictment.  (Dkt. No. 1 ["Indictment"].)

---

[1]  David Duong filed his motion on December 4, 2025.  (Dkt. No. 119 ["D. Duong Mtn"].)  The remaining defendants filed joinder motions, including Sheng Thao (Dkt. No. 136); Andy Duong (Dkt. No. 138 ["A. Duong Mtn"]); and Andre Jones (Dkt. No. 141 ["Jones Mtn"].)  The government filed an omnibus opposition to respond to all four motions.  (Dkt. No. 151, ["Oppo."].)  Each defendant filed his/her own reply.  (Dkt. Nos. 159, 162, 163, 167.)

[2]  For reasons described more fully on the record at the March 5, 2026 hearing, the Court unseals the identity of Co-Conspirator 1.  The parties filed a proposed order regarding the sealing of briefing and exhibits related to this motion.  (Dkt. No. 191.)  The Court hereby **GRANTS** the parties' stipulation.

[3]  The government's motion for leave to file the opposition brief with excess pages is **GRANTED**.  (Dkt. No. 150.)  Therefore, Dkt. Nos. 121, 137, 139, 140, 152, 164, 165, and 178 are terminated as moot.

Defendants contend that the warrants leading to the June 2024 searches of their residential homes and the premises of California Waste Solutions ("CWS") were unlawful because they were based on affidavits that included material omissions, and that evidence obtained therefrom should be suppressed.  Defendants also challenge the June 2024 warrants on the basis that the affidavit did not sufficiently allege a "nexus" between the places to be searched (defendants' residences, vehicles, and persons) and the crimes committed.  Finally, defendants challenge the February, March, and May 2024 warrants for being impermissibly overbroad.

**B.    FACTUAL OVERVIEW**

The United States alleges violations of 18 U.S.C. Sections 371, 666(a)(2), 1349, 1341, 1343, 1346, and 1001(a)(2).  Defendants deny all charges.

**1.    Pre-June 2024 Warrants**

Prior to the government's interview of Juarez in June of 2024, two magistrate judges had already issued five separate search warrants for defendants' iCloud accounts, email accounts, and location data for their cell phones.[4]  These warrants were granted based on affidavits of FBI Special Agent Duncan Haunold.  Haunold has been employed as a Special Agent of the Federal Bureau of Investigation ("FBI") since June 2021.  (Dkt. No. 152-3, Ex. 1 ["February Warrant"] ¶ 4.)

**2.    The Residence and Rollover Warrants**

After interviewing Juarez, the government sought the two additional search warrants which defendants challenge in full.

With respect to the first, the government sought a warrant for a search of defendants' residences and the premises of CWS. (Dkt. No. 152-8, Ex. 6 ["Residences Warrant"].)  The supporting affidavit included much of the same documentary evidence that had supported the previous warrants and, in addition, provided statements Juarez made to the government that purported to corroborate the existence of defendants' bribery scheme.  The affidavit noted that

---

[4]  Dkt. Nos. 152-3, 152-4, 152-5, 152-6, 152-7, Exhibits 1-5 to the Declaration of AUSA Abraham Fine in support of the United States' Oppositions ["Fine Decl."].

United States District Court
Northern District of California

Juarez's statements were included merely for "context and completeness," and explicitly informed the magistrate judge that these statements were not necessary for a finding of probable cause. The affidavit also included a lengthy footnote disclosing information relevant to Juarez's credibility.

With respect to the second, the government sought a rollover warrant for additional items at the residences of Andy and David Duong, based upon an affidavit of FBI Supervisory Special Agent Ethan Quinn. (Dkt. No. 152-9, Ex. 7 ["Rollover Warrant"].)

## II.    LEGAL STANDARD

In *Franks*, the Supreme Court held that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. 154 (1978).

A party moving for a *Franks* hearing bears the burden of proof and must make a substantial showing to support the elements entitling a defendant to a *Franks* hearing. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002); *see also United States v. Allen*, 481 F. App'x 308, 309 (9th Cir. 2012) (finding defendant was entitled to a *Franks* hearing because he "properly alleged that the police knowingly or recklessly withheld material information from the affidavit that, if included, would sufficiently undermine [the] reliability [of the witness relied upon by the affiant] to vitiate probable cause.").

The parties do not dispute the legal standard: defendant bears the burden of making a substantial preliminary showing that the affidavit underlying the search warrant (1) contained intentionally or recklessly false statements or misleading omissions, and (2) that any false statements or omitted information was material, such that the reviewing judge could not have found probable cause supporting the warrant had the magistrate judge been apprised of the false statements or omissions. A defendant's showing must challenge the veracity of the *affiant*, not that of the informant.

"All data necessary to show probable cause . . . must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir.

United States District Court
Northern District of California

2006) (en banc) (quotation and citation omitted). "A magistrate judge's finding of probable cause is entitled to great deference," and, upon review, courts "will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) (quoting *United States v. Clark*, 31 F.3d 831, 834 (9th Cir.1994)). "[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)) (cleaned up).

## III.    ANALYSIS

Defendants argue that the government's affidavits (1) omitted material information regarding Juarez; (2) failed to offer sufficient evidence to support a significant nexus between the places to be searched and the alleged crimes; and (3) are insufficient to support the "overbroad" warrants issued in February, March, and May 2024.

The government responds that there were no omissions and that the affidavits supporting prior warrants, which predated the government's interview of Juarez, were sufficient to establish probable cause to search the residences and business premises.

### A.    OMISSIONS OF MATERIAL FACTS

#### 1.    Intentional or Reckless False Statements or Omissions

Defendants allege that the challenged affidavits failed to disclose information (1) about Juarez's history of "defrauding business partners, including by falsifying documents, and of accusing those same business partners of crimes or other misconduct in an effort to avoid paying debts"; and (2) available to the affiant regarding the falsity of Juarez's statements regarding the alleged shooting.

*First*, defendants assert that the government "failed to disclose" Juarez's "decades-long track record of defrauding business partners," citing various examples of publicly available information[5], including approximately 33 civil fraud lawsuits that prior business partners have

_____

[5] Defendants cite to many examples of incidents in Juarez's past that the affidavit did not discuss, including that the City of Oakland sued Juarez for bad faith and breach of contract (Dkt.

4

United States District Court
Northern District of California

brought against Juarez. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to crossexamine (sic). There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an order of proof." *Franks* at 171.

Here, Haunold has testified that he was not aware of the various examples cited by defendants. (See Dkt. No. 152-10, Declaration of Duncan Haunold in Support of United States' Opposition ["Haunold Decl."].) Defendants do not cite any authority for the proposition that affiants must include any or all court records related to civil lawsuits against an informant. In fact, the Ninth Circuit has held that even where "[i]t might have been prudent for the federal agents to check on [the informant's] background and criminal record, [] their failure to do so is not reckless disregard." *United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1985).

Defendant Thao's motion adds that none "of the aforementioned incidents [] were recounted in Agent Haunold's affidavit despite being publicly available to the government (and anyone with access to the Internet)." (Dkt. No. 136 at 8-9 ["Thao Mtn."].) This list includes a then-pending 2024 check fraud charge against Juarez, amongst a bullet point list of alleged omissions from the warrant. However, the Residences Warrant includes more than a full page describing the facts underlying the alleged check fraud and it explicitly disclosed that in 2024 the Alameda County District Attorney's Office charged Juarez "with a violation of California Penal Code § 476A(A) (passing a check with insufficient funds greater than $950), a felony, for the bad checks he wrote to VICTIM-1. Those charges are currently pending."

Thao also cited a 2016 charge of grand theft and forgery to which Juarez pled no contest to a misdemeanor. However, the record makes clear that the incident described resulted not in a

---

No. 121-18, Ex. 14); that Juarez surrendered his real estate license after being accused of fraud (Dkt. No. 121-21, Ex. 17); a 2012 news article that referenced a judgment against Juarez (Dkt. No. 121-8, Declaration of Neal J. Stephens in support of David Duong's Motion to Suppress, Ex. 6), a single default judgment (Dkt. No. 121-9, Ex. 7), a 2013 notice of stay of proceedings relating to a bankruptcy petition involving Juarez (Dkt. No. 121-12, Ex. 9), a Court of Appeal decision in which Juarez prevailed (Dkt. No. 121-14, Ex. 11), an application for the renewal of a judgment related to a 2006 complaint (Dkt. No. 121-16, Ex. 13), and a 2015-2016 money laundering investigation into Juarez that was closed with no arrests or charges.

conviction, but in a deferred entry of judgment, which means that the case was dismissed after Juarez met certain conditions. This was not on Juarez's rap sheet; therefore, the Court finds defendants have not met their burden to demonstrate Haunold recklessly disregarded it. *See Untied States v. Martinez-Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005) (affiant did not demonstrate intentional or reckless dishonesty by relying in good faith on criminal history, even if flawed)

Finally, Thao argues the government selectively edited a text message exchange between Juarez and defendant Andy Duong to hide that Juarez has a documented racial animus. The full exchange reads as follows:

> Juarez: Thinks it works like that
>
> Juarez: When we put the plans together for $ and otherwise
>
> Juarez: Stupid black shit *(Omitted message)*
>
> Juarez: Don't think how things get done *(Omitted message)*
>
> A. Duong: Well he wants that access better get to work . . . Aint nothing free or front cuz we did all that to help her ass win

The government responds that (1) this exchange was presented in the same edited form in all prior warrants, including those targeting Juarez before he became a cooperating witness; and (2) the exchange was edited for the purpose of focusing "on the actual hard evidence against [Juarez], rather than the potentially racially-charged language." Because the same edited exchange was presented in prior warrants targeting Juarez, the allegation that the agent's motive to mislead the magistrate judge with regard to Juarez's credibility does not persuade. Therefore, the Court finds Thao's racial animus argument cannot support a finding of intentional or recklessly false statements.

Next, defendant Andre Jones' motion cites an Alameda County District Attorney's Office warrant affidavit that he alleges the government omitted with reckless disregard, and asserts "there is a reasonable inference that SA Haunold knew or should have known additional and important information as to those allegations against [Juarez] at the time he signed and submitted the search warrant affidavit." (Jones Mtn. at 7.) However, the Alameda County warrant affidavit was dated

6

July 17, 2024, *more than a month after* Magistrate Judge Westmore signed the warrant at issue. (*See* Haunold Decl. ¶ 20; Dkt. No. 152-12, Ex. B.)  That Jones fails to recognize that key fact undermines the motion.

*Second*, defendants argue that there was evidence available to the affiant that contradicted Juarez's accounting of the alleged June 9, 2024 shooting.  However, a defendant seeking a *Franks* hearing must challenge the veracity of the *affiant*, not that of an informant.  Defendants offer no evidence that suggest Haunold was aware of inconsistencies in Juarez's accounting other than those he noted in the affidavit.[6]

Defendants present no credible evidence that the government intended to deceive or acted with reckless disregard.  Therefore, they have failed to satisfy the first step in the analysis to make a substantial preliminary showing that the affidavit underlying the search warrant contained intentionally or recklessly false statements or misleading omissions.  The motion is deniable on this basis alone.

### 2.     The Alleged Omissions Were Not Material

Even if defendants had credible evidence that the government intended to deceive or acted with reckless disregard, they still fail to show how the alleged omissions were material given the context of the whole.  As the government lays out, most of the information provided in the June warrants was presented in support of the five prior warrants, which predated Juarez's interview. Therefore, the question of materiality centers on two points, whether: (1) the alleged omissions were accompanied by sufficient context; and (2) the information upon which the prior warrants were based would be insufficient to support the June warrants.

As to context, the Court has already noted that the new information provided regarding Juarez in the June warrants was accompanied by affiant statements qualifying Juarez's credibility. *See supra* 2-3.

The first warrant, issued in February 2024, relied on approximately 45 pages of evidence

---

[6]  For example, the affidavit includes a footnote identifying that Juarez gave inconsistent statements regarding the time of the incident.  Residences Warrant, n. 16.

United States District Court
Northern District of California

of probable cause. Subsequent warrants added additional information resulting from further investigation, such that the fifth warrant, issued in May 2024, included over 50 pages of evidence of probable cause, much of which was repeated throughout all seven warrant applications. The Court will not recount all relevant evidence here, but it includes significant documentary evidence tying David Duong, Andy Duong, Thao, Jones, and Juarez to the alleged corruption scheme, including messages and notes from Juarez's iCloud account, financial records showing the allegedly corrupt payments, phone records showing significant communication regarding those payments, and other documentary evidence relating to the scheme.[7] Thus, upon review of all this evidence, the Court finds that any of the alleged omissions would not be material.

## B.    NEXUS TO PREMISES TO BE SEARCHED

A magistrate judge may issue a warrant for a residence if a "reasonable nexus" exists between the residence and the evidence sought; that is, the magistrate judge "need only find that it would be reasonable to seek the evidence there." *United States v. Chavez–Miranda,* 306 F.3d 973, 978 (9th Cir. 2002) (citation omitted). In making this determination, the magistrate judge must make a "practical, common-sense" decision. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). "The magistrate's probable cause determination should be paid great deference by reviewing courts. Review is limited to ensuring that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal citation omitted). "Additionally, issuing judges may rely on the training and experience of affiant

---

[7] For example, the May 7, 2024 warrant relied on the following evidence: (1) text messages between Andy Duong and Juarez describing the alleged bribery scheme (Ex. 5 ¶ 56) ("Meet with Sheng . . . She will buy 100 units . . . Sheng is going to call you re $$"); (2) an Apple iPhone note describing the alleged illegal bribery scheme (*id.* ¶ 93) ("Deal Points for Sheng Thao :: Election :: Post Election :: We will invest $75k cash to hit voters with mailers – CWS . . . For: The Purchase of 300 of our modular units at a price point of $300k flat"); (3) text messages between Andy Duong and Juarez regarding the 2022 election suggesting illegal activity (*id.*, ¶¶ 74-75) ("Juarez stated, 'So we may go to jail… But we are $100 million dollars richer.' A. Duong replied 'Money buys everything'"); (4) text messages between David Duong and Juarez describing a negotiated agreement to fund the housing project at the center of the alleged bribery scheme (*id.* ¶¶ 79-80); (5) text messages and phone records supporting an inference that Thao met in person with the alleged co-conspirators multiple times (*see, e.g. id.* ¶¶ 113-115); and (6) payments by the Duongs to Juarez, followed by payments by Juarez to Jones (*see, e.g. id.* ¶¶ 46, 60, 65, 99).

United States District Court
Northern District of California

police officers." *Chavez–Miranda,* 306 at 978.

Subjects in white-collar and fraud cases often keep relevant documentary and electronic evidence at their residences and such assertions in an affidavit are sufficient to establish nexus. *See United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999) (rejecting a similar nexus argument where the affiant "stated his experience and belief that operators of businesses that involve paperwork typically maintain and carry business records into and out of their offices, in their cars and to and from their residences."); *see also United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) ("One does not need Supreme Court precedent to support the simple fact that records of illegal business activity are usually kept at either a business location or at the defendant's home. Likewise, personal financial records are also usually stored at a person's home or place of business. Defendant's claim that these were conclusory statements based on the affiant's 'meager experience' misses the mark."); *Kvashuk*, 29 F.4th at 1085 ("the nexus between the items to be seized and the place to be searched can rest on normal inferences as to where a criminal would be likely to hide evidence of his crimes.").

Defendants argue that there was insufficient probable cause to support a warrant for the defendants' residences, noting that no evidence was offered that computers at the residences were likely to contain evidence. However, defendants rely on caselaw that is inapposite.[8]

The warrants at issue identified that defendants lived at the residences to be searched and explained that cell phone location data showed three of the defendants' (Thao, Jones, and Andy Duong) cell phones at their location in the days leading up to the warrant. The affidavit stated that David Duong's phone displayed a location on the East Coast in the days before the search

---

[8] In *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988), the portion of the warrant affidavit describing nexus was not sent to the magistrate judge due to a stenographer's error. *Id*. at 139. By contrast, the affidavit at issue here tied each defendant to the residences to be searched. In *United States v. Grant*, 682 F.3d 827 (9th Cir. 2012), the affidavit to search the defendant's residence for a murder weapon was based solely on allegations that his sons participated in the crime and did not link the defendant *or* his residence to the crime. *Id*. at 832-33. Here, the affidavit described each defendant's role in the scheme as well as the items expected to be found at the residences searched. Defendants also cite *United States v. Seybold*, 726 F.2d 502 (9th Cir. 1984) in which the Ninth Circuit held the affidavit *did* sufficiently establish nexus and rejected the defendant's suppression argument.

warrants, but that his iCloud indicated he had a medical appointment in the East Bay on June 21, 2024, and was thus likely to be in the East Bay before that date. The affidavit also described in detail what investigators expected to find at the residences.

The Residences Warrant was executed just after 6:00 a.m. on June 20, 2024, when it was reasonable to expect that all defendants were present. The affidavit also described, based on the affiant's training and experience, the various types of relevant records and electronic devices expected to be found at the residences, and specifically stated that individuals like the defendants often keep such records at their residences.

Further, defendants have not offered any compelling evidence to overcome the deference this Court must give to a magistrate judge's probable cause determinations.

### C.    WARRANTS WERE NOT IMPERMISSIBLY OVERBROAD

Defendants[9] assert that the February 2024 iCloud warrant, March 2024 cell-site warrant, and May 2024 email warrants were partially overbroad in that they permitted seizure of items beyond what was discussed in the warrant affidavit.

#### 1.    March 2024 cell site warrant

Defendants argue the March 2024 warrant was overbroad because it authorized seizure of "subscriber identities and addresses; billing and payment information; account start and service records; device and instrument identifiers; and complete connection/session records, including IP addresses, sector information, and timing-advance data."

The Ninth Circuit has explained that "a defendant has no expectation of privacy in IP addresses or basic subscriber information because internet users should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *United States v. Rosenow*, 50 F.4th 715, 737-38 (9th Cir. 2022) (citing *Forrester*, 512 F.3d at 510) (internal citations omitted).

---

[9] Defendants do not have standing to challenge warrants that did not cover their accounts or property. David Duong filed a joinder in Andy Duong's motion to partially suppress the February and May warrants (Dkt. No. 142), but he does not have standing to challenge the February warrant because it did not cover his accounts. Defendants are cautioned to be more exacting in their motions.

Moreover, the affidavit explained that this information "may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephones users and may assist in the identification of co-conspirators and/or victims." (Dkt. No. 152-4, Ex. 2 to Fine Decl., ¶ 86.)

### 2. February 2024 iCloud Warrant and the May 2024 Email Warrants

Defendants argue that these warrants were overbroad because they authorized seizure of evidence dated before December 1, 2021, and permitted seizure of communications between CWS employees (including David and Andy Duong) and state and local government officials other than those specifically named in the affidavit.

Yet the iCloud and email affidavits contain significant relevant facts dating back to July 2021 and earlier. For example, the affidavit describes that the CWS project at the former Oakland Army Base was an essential part of defendants' bribery scheme and discusses evidence regarding that project, which dates back to as early as July 2021.

Thus, the Court finds that the warrants were not overbroad.

### D. THE GOOD FAITH EXCEPTION

Suppression is not appropriate if the evidence is "obtained as a result of nonculpable, innocent police conduct." *Davis v. United States*, 564 U.S. 229, 240 (2011). The defendant must demonstrate either (1) the officer who obtained the warrant was dishonest or reckless in presenting information to the issuing court, or (2) the warrant was so clearly deficient that the officer "could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). As discussed above, the Court finds that the warrants were not obtained by presenting dishonest or reckless information to the magistrate judges.

In *Leon*, the Supreme Court created a good faith exception to the exclusionary rule for objectively reasonable law enforcement activity. *Id. Leon* created a presumption that when an officer relies upon "a warrant issued by a magistrate," that "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id.* at 922.

There are two relevant exceptions to the *Leon* good faith exception. First, the good faith exception does not apply if the affiant misleads the judge. *Id.* at 923 ("Suppression . . . remains an

appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."). Second, the good faith exception does not apply if the judge "wholly abandoned [her] judicial role" where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (internal quotation marks omitted).

Here, neither applies. As the Court discussed above, there is no evidence that the magistrate judges were misled by the affiants or that the affidavits clearly lacked indicia of probable cause. Therefore, even if probable cause were lacking, the good faith exception would apply.

For the foregoing reasons, the motions are **DENIED**.

This Order terminates Dkt. Nos. 119, 121, 136, 137, 138, 139, 140, 141, 150, 152, 164, 165, 178 & 191.

**IT IS SO ORDERED.**

Dated:   April 27, 2026

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

12