Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHENG THAO, et al.,<br><br>Defendants. | No. CR 25-0003 YGR<br><br>**REPLY IN SUPPORT OF DEFENDANTS' OPPOSITION TO ADMISSION OF CERTAIN COCONSPIRATOR STATEMENTS** |

The Ninth Circuit has repeatedly emphasized that the "in furtherance" requirement of Rule 801(d)(2)(E) is "strictly construed." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (citing *United States v. Foster*, 711 F.2d 871 (9th Cir. 1983) and *United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981)). The court has drawn a firm line between statements that actually intend to advance a conspiracy's objectives and those that simply relate to the conspiracy. "Mere conversations between coconspirators, or merely narrative declarations

among them, are not made 'in furtherance' of a conspiracy." *Nazemian*, 948 F.2d at 529. The government's response seeks to skirt this strict requirement by asking the Court to assume that statements unrelated to the charged conspiracy should be admitted because the Court either should assume they carry unspoken threats to end the conspiracy or should follow a long chain of inferences to connect them to the charges here. That is not the law.

The defense does not dispute that the Court must examine "the context in which [a statement] is made" to determine whether it "tends to advance the objectives of the conspiracy[.]" *United States v. Layton*, 720 F.2d 548, 557 (9th Cir. 1983). But the fact that a statement was made by an alleged coconspirator during the time of the charged conspiracy is not sufficient context for this purpose. The Court must evaluate the statement itself—not unsupported assumptions about the statement—to determine whether it advanced a goal of the conspiracy. Even a clear connection to the conspiracy's subject matter is not enough. The government must show more: that the statement was in fact intended to advance the scheme. *See United States v. Bibbero*, 749 F.2d 581, 584 (9th Cir. 1984) (in a marijuana conspiracy conviction, error to admit statement that attributed ownership of marijuana to the defendant because it did not further the conspiracy); *United States v. Moore*, 522 F.2d 1068, 1077 (9th Cir. 1975) (coconspirator's admission of guilt to his common-law wife was inadmissible as "nothing more than a casual admission of culpability" because it did not further the conspiracy's objectives). Here, most of the statements do not even relate to the subject matter of the charged conspiracy; the government just asks the Court to assume they do.

Second, despite the fact that it gave notice of its intent to admit all of these statements for their truth as non-hearsay under Rule 801(d)(2)(E), the government now argues that each statement should be admitted *not* for its truth. The defense addresses those arguments below. [1]

---

[1] The defense filed its motion partially under seal to prevent potential jurors from being exposed to information that may be excluded at trial. Despite the pendency of the defense sealing motion, the government filed its opposition on the public docket. It thereby revealed the information the defense sought to seal, which was then extensively covered in the press. Because the government's filing mooted the sealing application, the defense will refile its motion without redactions and withdraw the application. The defense will address the implications of the

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

**1) Request for bus sponsorship**

In order to justify its characterization of a message about sponsoring transportation for a parade as a coconspirator statement, the government asks the Court to infer vast amounts of incriminating subtext. A message relaying that Ms. Thao asked for help paying for a bus becomes an effort "to prompt further action on the part of the conspirators by encouraging A Duong and D Duong to make further payments to ensure that she carried out her end of the corrupt bargain." Opp., 13. But a statement intended to "prompt further action on the part of the coconspirators" is admissible only if that "further action" is in service of the conspiracy. Sponsoring a bus for the Black Joy Parade is not.

Because nothing about this statement furthers the conspiracy, the government asks the Court to presume it carries an unspoken threat: that Thao would not "carry out her end of the corrupt bargain" unless the Duongs paid for the bus. Opp., 13. The government offers no evidence or argument to support this claim. That is simply not what the statement says, and no fair reading of it suggests the ultimatum the government insists it contains. Indeed, the exchange indicates the opposite. David Duong's response is to ask how it would benefit the Duongs to pay for the bus—not a question he would ask if he understood that paying was a required part of a bribery conspiracy.

The government's additional relevance arguments are equally strained. It says this statement should be admitted because it shows David Duong considers paying for the bus to be "only beneficial if he can get something in return," which the government says supports its allegation that he participated in a bribe. Opp., 12. Everyone weighs the benefits when asked to spend money, and the fact that David Duong did so here is not nefarious and does not suggest participation in any bribery scheme.

**2) Niagara movement donation**

As with the bus donation, the government's argument that Mr. Jones's text to Mr. Duong stating "$5,000 Niagara Movement Foundation" is in furtherance of the conspiracy requires the

government's unilateral decision to ignore the defendants' sealing requests and the ensuing inflammatory press articles in jury selection and other motions if necessary.

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

Court to assume a veiled threat for which there is no evidence. In the government's reading, this was not a request for a donation to an organization that Ms. Thao and Mr. Jones supported. Instead, it was a demand "made both to further participation in the group's activities and to prompt further action on the part of the coconspirators by encouraging the Duongs and Juarez to make further payments to ensure that Thao carried out her end of the corrupt bargain." Opp., 20. Not a single element of the government's rationale is supported by anything in the statement, its context, or any other evidence. What "activities" of the group did this request further? What "further action" was encouraged beyond the donation itself? How does a request to David Duong, in which Juarez played no role, encourage Juarez to make a payment? And where is there any support for the notion that this payment would "ensure that Thao carried out her end of [a] corrupt bargain" when that is not mentioned or even hinted at in the statement? The government's only support for these many inferences is that the message was sent "in the middle of the conspiracy." Opp., 20. That satisfies Rule 801's requirement that the statement be made "during" the conspiracy, but it does nothing to meet the "in furtherance" requirement.

The government's fallback argument that this donation request was "part of the conspiracy" fails as well. The government charged a conspiracy to pay for negative mailers and to hire Mr. Jones in exchange for official action. It cannot now expand the charged conduct to include an entirely different transaction, months after the deal it charged was allegedly struck. If that were the case, there would be no need for Rule 801 at all, as the government could simply claim that every interaction between alleged coconspirators is part of the charged conspiracy on no more than the government's say so.

### 3) Recorded call between Ms. Thao and Andy Duong

The government's argument for admitting the recorded call between Andy Duong and Ms. Thao follows the same pattern in asking the Court to assume an implied threat to terminate the conspiracy. In the government's telling, when Ms. Thao expressed frustration that the Duongs held an event and invited people with whom she did not get along, what she meant was that "if the Duongs wanted her to further the objectives of the conspiracy, they needed to

prioritize her demands and political interests, including not inviting other City Councilmembers she did not like." Opp., 14. If Ms. Thao had said anything like what the government claims, there would be no dispute: such a statement would further a conspiracy. But she said none of those things, and the Court should not admit a statement that did nothing to further the conspiracy simply because the government chooses to read into that statement a nefarious conspiratorial intent.

**4) Andy Duong's statement regarding the timing of a police report**

Here again, the government reads far more into a statement it seeks to introduce than its text or its context support, calling this statement a "message ... about filing a false police report." Opp., 16. If the statement suggested a plan was to file a false report, the government would have a point. But it does not. Andy Duong simply wrote "one of my personal OPD will contact me tomorrow around 11-12 to come to do report," and later "around 11-12 OPD can come office make report." A statement about when an officer will take a report about actions of an alleged coconspirator does not further the conspiracy in any way.

The government's theory is that the Duongs "made a false police report alleging that Juarez had attacked them in an attempt to discredit his allegations about the bribery scheme." Dkt. 235, 5. But the government's belief that the report Andy Duong made the following day was not true is not a basis to conclude that Andy Duong's statement the day before —which is not about the content of the report but about its timing—was in furtherance of any conspiracy.

As with other statements, the government also claims here it does not seek to admit this statement for the truth. Instead, it says, it will admit the statement only to show "the fact that A. Duong communicated his belief … that an Oakland Police Department Officer would take a report." Opp., 16-17. The government does not explain the relevance of Andy Duong communicating his belief about the timing of the officer's arrival, and the defense can see none.

**5) Statement to Gallegos regarding Vietnam trip**

The government seeks to admit Juarez's statement to Gallegos telling him about the trade delegation trip to Vietnam and saying that he would hear from the mayor's office about an

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

invitation. This statement furthers the conspiracy, the government argues, only by virtue of a lengthy chain of inferences: Juarez was trying to communicate that he "helped secure the invitation" and thus "curry favor and illustrate to Gallegos his close alignment with Thao and D. Duong," which he hoped might "prompt further action" by Gallegos, which action could at some point "help move" forward the city's purchase of housing units. Opp., 19. But Juarez did not say he had secured the invitation for Gallegos. He said nothing about the Duongs. He did not ask Gallegos to do anything. And he did not mention housing. If such a lengthy chain of unspoken inferences and assumptions is sufficient to show that a statement furthers a conspiracy, almost any statement by a conspirator will meet the standard. That is not the law. *See Nazemian*, 948 F.2d at 529 ("Mere conversations between coconspirators, or merely narrative declarations among them, are not made 'in furtherance' of a conspiracy.").

If not offered for its truth, the statement has no relevance. The government argues that it shows that the appointment of Gallegos "was a key aspect of the corrupt arrangement." Opp., 19. But the statement was made after Gallegos's appointment and does not reference it, nor does Juarez ask Gallegos to do anything that would demonstrate why his appointment was important to the alleged conspiracy.

**6) Andy Duong statements re recording**

The government seeks to admit an alleged statement by Andy Duong that "he records politicians and keeps the recordings for potential blackmail." Opp., 21. The government proffers no evidence as to when this supposed statement was made, nor does it suggest that the recordings related to the alleged conspiracy in any way. The government writes that it has evidence that Andy Duong made a recording on a specific occasion to further the conspiracy. Opp., 21. It is entitled to seek to introduce that piece of evidence. But just because this statement purports to show Andy Duong's admission to making the same type of recordings in the past does not mean that the proffered statement furthers the conspiracy.

In *Moore*, *supra*, a case involving a conspiracy to steal and resell government-owned tools, the district court admitted a codefendant's statement at a tool swap-meet that "if he went

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

legitimate, he would have to get out of business." 522 F.2d at 1074. Despite the fact that this statement related to exactly the conduct at issue in the conspiracy, the Ninth Circuit found error, because there was no evidence the statement was intended to induce participation in the conspiracy. It was "nothing more than [the defendant's] casual admission of culpability to someone he had individually decided to trust." *Id.* at 1077. Similarly, in *Bibbero*, *supra*, a case involving a marijuana smuggling conspiracy, a witness testified that he saw one of the conspirators unloading the marijuana, and the conspirator told him it belonged to the defendant. 749 F.2d at 584. The Ninth Circuit held it was reversible error to admit this statement under Rule 801, even though the conspirator "was laboring on behalf of the conspiracy when he spoke to [the witness]," because the statement merely informed the witness "of the marijuana's ownership" without doing anything to further the conspiracy. *Id.*

So too here. This supposed statement is, at most, a casual admission by Andy Duong, and it is devoid of any connection to the charged scheme. The government does not suggest that it induced Juarez to participate in the conspiracy or that it in any way furthered the bribery scheme, only that it "explained to Juarez" why Andy Duong would take videos of people who "he hoped would further the objectives of the conspiracy." Opp., 21. But a statement that narrates past conduct without furthering the conspiracy is not admissible.

### 7) Juarez toasts

Similarly, the Juarez toasts purport to narrate past events; even if those purported events are similar to the charges here (in that the government alleges Juarez was describing past bribes), that is not enough to show that they furthered the conspiracy.

Despite having originally offered it as non-hearsay, the government now claims it does not seek to admit Juarez's statements about supposed past bribes for the truth "that the Duongs in fact made payments to individuals after securing the City of Oakland recycling contract." Opp., 7. Instead, this statement is somehow meant only to show the Duongs' "understanding of Juarez's corrupt intentions in forming Evolutionary Homes." This assertion cannot be squared with the government's intent to elicit testimony from Juarez "that this statement refers to the

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

Duongs giving cash to multiple public officials in exchange for their assistance in helping CWS secure the recycling contract" (*id.* at 6) or its argument that the statement must be true because otherwise those in attendance would have denied it or left the room. *Id.* at 8. Regardless, it is hard to understand how the Duongs' alleged payment of bribes related to a recycling contract in 2014 could shed light on Juarez's intentions in forming a housing company eight years later, and the government does nothing to explain the connection.

Given that the government clearly seeks to introduce this statement for its truth, it must demonstrate that it was in furtherance of the charged conspiracy. Because it cannot dispute that Juarez's statement purports to narrate unrelated past events and has nothing to do with the charged conspiracy, the government seeks to recast it as a "loyalty oath" intended to ensure the Duongs' participation in a conspiracy that Juarez did not describe or allude to in his toast. The toast is not an oath of any kind, and it is not designed to ensure future collaboration; it is a celebration of a business venture the Duongs have already agreed to join. Nor do the cases the government cites help it with this argument. Opp., 9. Even in the government's telling, Juarez's toast does not address any "current developments and problems," does not "formulate future strategies of concealment," and does not discuss "the ease with which other bribes could be solicited in the future." *Id.* (citations omitted). Juarez's toast is a purported narration of past events, and no more. Just because it concerns the supposed past acts of his alleged coconspirators does not mean that it furthers the conspiracy.

The Court should also reject the government's argument that this statement qualifies as an adoptive admission. The salient question is "whether under the circumstances an innocent defendant would normally be induced to respond." *United States v. Sears*, 663 F.2d 896, 904 (9th Cir. 1981). As the Advisory Notes explain, this "decision in each case calls for an evaluation in terms of probable human behavior." FRE 801, Advisory Committee Notes to 1972 Proposed Rules. The situation here is not one which a denial would reasonably be expected. The statement is far from explicit, and the setting (a toast celebrating a new business partnership) is not one in

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR

which an innocent person, upon hearing Juarez's ambiguous statement, would reasonably be expected to interrupt the toast or storm out, as the government argues. Opp., 8.

### 8) Juarez statements regarding the "deal" to various individuals

This category concerns Juarez's statements to three individuals regarding the alleged deal. Each told the government, without further detail, that Juarez claimed he had struck a deal with Oakland or Ms. Thao to purchase housing units. Exh. A, lines 1-3. Those statements should be excluded as they are purported narratives of past events, with no effort to recruit or otherwise further the supposed agreement.

In its opposition, the government points to more extensive text exchanges between Juarez and two of those witnesses, which encompass more than the summaries originally proffered by the government. Opp., 9-10; Priedeman Decl. Ex. D and E. The defense does not dispute that those fuller exchanges show Juarez taking steps towards a sale of housing units to the City of Oakland, including by preparing technical proposals and presentations. While there is no suggestion in those statements of an improper deal between Juarez and Ms. Thao, the defense agrees they further the business of Evolutionary Homes.

### 9) Attempt to quash a news story

The government does not address the thrust of the defense argument regarding the media attention on the Vietnam trip. The defense pointed out that the statements at issue here relate to a different alleged conspiracy, one to quash a news story about a nonconspirator's unrelated conduct on a trip to Vietnam, not one to bribe the mayor by getting a job for Mr. Jones at Evolutionary Homes. As to this category of statements, the government has failed to meet Rule 801's foundational requirement of proffering "fairly incriminating evidence" beyond the statements themselves to establish the defendants' "knowledge of and participation in [the] alleged conspiracy." *United States v. Silverman*, 861 F.2d 571, 576, 578 (9th Cir. 1988); *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) (noting that the government "must produce some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy") (citation omitted).

In its response, the government makes no effort to satisfy this requirement and offers no independent evidence to prove the existence of this second conspiracy. Instead, it seeks to expand the conspiracy in the indictment to encompass this new conduct, arguing that this supposed scheme is "directly related to" that charged in the indictment. Opp., 16. But the indictment charges a conspiracy related to negative campaign mailers and a job at Evolutionary Homes, not an effort to quash a news story. The government's argument is that the trip to Vietnam was related to the conspiracy (despite the fact that no steps in furtherance of it were taken on the trip), that Azevedo's alleged misconduct was related to the Vietnam trip, that the media attention was related to Azevedo's conduct, and that therefore an attempt to quash the news story was "directly related" to the conspiracy. Opp., 16. Whatever the connection between the two allegations might be, they cannot be said to be directly related. Simply saying so does not satisfy the government's burden of proving, by independent evidence, that this separate conspiracy existed and that all the defendants participated in it.

**Conclusion**

Based on the foregoing, the defense respectfully requests that the Court exclude the statements on Exhibit A and the statements related to the alleged conspiracy to quash the news story about the Vietnam trip.

Dated: July 31, 2026

Respectfully submitted,

_____/s/_____
Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Duong

**Defendants' Objections to Admission of Alleged Coconspirator Statements**
*United States v. Thao, et al.*, CR 25-0003 YGR