Winston Y Chan (SBN 214884)
Christine A. Bonomo (SBN 364178)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8362
Facsimile:  (415) 393-8306
Emails: wchan@gibsondunn.com
cbonomo@gibsondunn.com

W. Douglas Sprague (SBN 202121)
**COVINGTON & BURLING LLP**
415 Mission St., Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile:  (415) 591-6091
Email: dsprague@cov.com

Erik Babcock (SBN 172517)
**LAW OFFICES OF ERIK BABCOCK**
420 3rd Street, Suite 250
Oakland, California 94607
Telephone: (510) 452-8400
Facsimile:  (510) 201-2084
Email: erik@babcocklawoffice.com

Attorneys for Defendant Andy Hung Duong

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:25-CR-00003-YGR |
| Plaintiff, | |
| v. | **DEFENDANT ANDY DUONG'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS (RULE 404(B) EVIDENCE)** |
| SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG, | |
| Defendants. | Hearing Date: August 14, 2026 |
| | Hearing Time: 9:00 a.m. |
| | Judge:  Hon. Yvonne Gonzalez Rogers |
| | Courtroom:  1, 4th Floor |

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................................1

II.     ARGUMENT .................................................................................................................................1

        A.      EVIDENCE RELATED TO OTHER ALLEGED BRIBERY SCHEMES SHOULD BE EXCLUDED ...1

                1.      *Former San Leandro City Councilman Bryan Azevedo* .......................................1

                2.      *Other Public Officials* ........................................................................................4

        B.      EVIDENCE RELATED TO THE MAY 3, 2024, ALTERCATION SHOULD BE EXCLUDED .........6

        C.      EVIDENCE OF INAPPROPRIATE ALLEGED CONDUCT ON THE TRIP TO VIETNAM SHOULD
                BE EXCLUDED .................................................................................................................8

III.    CONCLUSION ..............................................................................................................................9

DEFENDANT ANDY DUONG'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF OTHER
CRIMES, WRONGS, OR ACTS (RULE 404(B) EVIDENCE)
CASE NO. 4:25-CR-00003-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Anderson*,
741 F.3d 938 (9th Cir. 2013)................................................................................................2, 3

*United States v. Charley*,
1 F.4th 637 (9th Cir. 2021) ......................................................................................................8

*United States v. DeGeorge*,
380 F.3d 1203 (9th Cir. 2004)..................................................................................................8

*United States v. King*,
200 F.3d 1207 (9th Cir. 1999)...................................................................................................3

*United States v. Edwards*,
26 F.4th 449 (7th Cir. 2022) .....................................................................................................3

*United States v. Perry*,
438 F.3d 642 (6th Cir. 2006).....................................................................................................3

**Other Authorities**

Federal Rule of Evidence 403 ...........................................................................................3, 4, 8, 9

Federal Rule of Evidence 404(b) ........................................................................................1, 3, 4, 5

## I.      INTRODUCTION

The government charged four defendants in an alleged conspiracy to bribe the mayor of one city.  To prove that conspiracy, the government claims it needs to introduce evidence of an unrelated alleged bribery scheme involving only one of the charged defendants and one councilperson from a different city, uncharged allegations of "potential" bribery and blackmail of "other public officials," a story about an alleged physical altercation, and allegations of tawdry conduct engaged in by uncharged individuals overseas.  Despite refusing to do so during the meet-and-confer process, the government now agrees not to introduce some of this "evidence."  Defendant Andy Duong respectfully requests that the Court exclude the rest.  Specifically, for the reasons articulated in Andy Duong's Motion as well as the reasons stated herein, Andy Duong respectfully requests that this Court exclude (1) evidence related to other alleged bribery schemes, namely one involving Bryan Azevedo and others involving "other public officials," and any allegations of blackmail and campaign contribution violations related thereto; (2) evidence of an alleged "assault" on May 3, 2024, and the related watch and chain found seven weeks later; and (3) evidence of alleged salacious conduct on the trip to Vietnam.

## II.      ARGUMENT

### A.      Evidence Related to Other Alleged Bribery Schemes Should be Excluded

#### 1.      *Former San Leandro City Councilman Bryan Azevedo*

The Court should exclude any evidence of an alleged bribery scheme that took place between Andy Duong, Mario Juarez, and Bryan Azevedo.  By introducing this evidence, the government attempts to present an entirely separate alleged scheme as propensity evidence: if Andy Duong engaged in a separate bribery scheme to bribe one official, it's more likely he engaged in the charged bribery scheme.

The government argues the alleged bribery scheme involving Azevedo is inextricably intertwined with the charged conspiracy or is otherwise admissible pursuant to Rule 404(b).  ECF No. 235 at 21.  The government claims the evidence is inextricably intertwined with the charged conduct because of a temporal connection, the involvement of two (out of five) alleged co-conspirators, and the reflection of a "broader effort" to bribe politicians for the benefit of Evolutionary Homes.  The government also now claims that the scheme involving Azevedo is inextricably intertwined because it

1

demonstrates Andy and David Duong and Juarez executing on directives from Sheng Thao to legitimize Evolutionary Homes by acquiring broader support. Finally, the government points to Azevedo's presence in Vietnam as embedding the bribery allegations within the charged conspiracy.

*Evidence of an Alleged Bribery Scheme Involving Azevedo is Not Inextricably Intertwined*

The evidence of the alleged scheme involving Azevedo is not inextricably intertwined with the charged conspiracy. The charged conspiracy involves five alleged co-conspirators: Thao, Jones, David and Andy Duong, and Juarez. The alleged objective of the charged scheme was to bribe Thao, via Jones, so Thao would take official actions to benefit Evolutionary Homes and California Waste Solutions ("CWS"). The charged conspiracy does not allege a broader intent to bribe numerous public officials for the benefit of Evolutionary Homes, and the government cannot now claim that the charged conspiracy covers such far-reaching, uncharged efforts.

There are reasons the government charged Azevedo in a wholly separate case. The conduct Azevedo pleaded guilty to has nothing to do with Thao, Jones, or David Duong; the government does not allege that any of those three were involved in or even aware of the alleged conduct the government seeks to have Azevedo insert into this trial. The government concedes as much, arguing that "A[ndy] Duong and Juarez engaged" in a scheme "similar to the one they engaged in with Thao and Jones…" ECF No. 235 at 17. These are two wholly separate alleged schemes, neither part of the charged conspiracy nor inextricably intertwined with it.

The claim that Azevedo's presence in Vietnam embeds allegations of a separate bribery scheme in the charged conspiracy is also unpersuasive. The government's own briefing describes the Azevedo scheme as beginning approximately a month after the trip to Vietnam. *Id*. at 4 ("As described in detail below, shortly after the Vietnam trip, A[ndy] Duong and Juarez engaged in a bribery conspiracy with Azevedo.").

The government cites to *United States v. Anderson*, 741 F.3d 938 (9th Cir. 2013), to support its argument that the evidence is inextricably intertwined. In *Anderson*, the court admitted evidence of a later in time sale of counterfeit Adobe software because (1) it "help[ed] explain Anderson's business operations," (2) the context helped the government to prove knowledge, and (3) the later in time sale in *Anderson* also "explained the circumstances leading up to [defendant's] arrest." *Id*. at 950. When

2

the government "would encounter little difficulty in presenting the evidence relevant to its case against the defendant without it, the evidence is not admissible as being intrinsic to the charged offense." *Id*. (citing *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999)).  Here, not admitting evidence of the Azevedo bribery allegations would not impede the government's ability to present any evidence of the charged conspiracy.  The alleged bribe to Azevedo does not explain or provide context to any portion of the charged conspiracy; rather, it is classic propensity evidence offered to suggest to the jury that if Andy Duong allegedly bribed one official, it's more likely he bribed the charged official.

After determining the evidence was intrinsic, the court in *Anderson* weighed the evidence under Rule 403, finding that "evidence of software sales does not have a strong prejudicial impact because there is nothing inherently wrong with selling software, which is usually sold legally." *Id*.  The evidence at issue in this case—a separate bribery scheme involving alleged sexually explicit conduct by the bribe recipient and wholly unsupported insinuations of potential (yet never conducted) blackmail—is inflammatory and highly prejudicial, vastly outweighing any probative value.  Fed. R. Evid. 403.

*Evidence of an Alleged Bribery Scheme Involving Azevedo is Not Admissible Pursuant to Rule 404(b)*

The government also argues the alleged scheme is admissible under Rule 404(b) to prove intent. The government's proffered evidence, however, does not speak to any broader intent; rather, it is classic character propensity evidence and should be excluded.  The government attempts to rebut this by arguing the evidence is not relevant as propensity evidence, but that it demonstrates a "distinctive manner" in which Andy Duong and Juarez conspired to route bribery payments through a romantic partner (hardly "distinctive" in connection with public corruption allegations).  The government cites a Seventh Circuit case to support its argument for introduction of the alleged bribery scheme as proof of modus operandi, but the facts in that case are far afield from those here.  ECF No. 235 at 22.  In that case, *United States v. Edwards*, the court admitted modus operandi evidence of other bank robberies in part because the defendant "put his identity at issue during the trial," and the characteristics of the robberies together established a "signature" for how the defendant committed the crimes.  26 F.4th 449, 455 (7th Cir. 2022).  The second case cited by the government for the same proposition, *United States v. Perry*, is similarly distinguishable—admitting evidence of another bank robbery where the identity

DEFENDANT ANDY DUONG'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS (RULE 404(B) EVIDENCE)
CASE NO. 4:25-CR-00003-YGR

of the robber was a key issue at trial.  438 F.3d 642, 648 (6th Cir. 2006); ECF No. 235 at 22–23.

The only modus operandi the government points to here is the payment of alleged bribes to the romantic partner of a government official.  Absent that wholly non-distinctive aspect of an alleged corruption case, the separate alleged schemes do not follow a similar pattern or signature.  In the charged conspiracy, Juarez allegedly executed the deal and handled all communications and negotiations.  In the Azevedo allegations, Andy Duong allegedly handled all communications.  In the charged conspiracy, bribe payments allegedly were made by check and provided to a conspirator romantic partner, often accompanying an employment contract or invoices.  In the Azevedo allegations, Andy Duong allegedly provided the payment directly to Azevedo in cash, who then deposited funds into an account shared with Azevedo's spouse (who is not alleged to be a co-conspirator).  But for the alleged involvement of a romantic partner, the modus operandi underlying the two schemes are not similar and certainly do not amount to a "signature."

Finally, as noted above, the evidence also should be excluded under Rule 403.  Not only is the evidence highly prejudicial, but it will also devolve into a mini-trial, confusing and misleading the jury.

### 2.    *Other Public Officials*

Andy Duong moved to exclude evidence of alleged other bribery schemes involving "other members of the San Leandro City Council, the Berkeley City Council, and the Alameda County Council" noticed by the government in its Letter of Disclosures Pursuant to Federal Rule of Evidence 404(b). ECF No. 220 Ex. 1 at 8.  The government alleges this evidence includes testimony from Juarez that he and Andy Duong attempted to bribe other city officials paired with "[e]vidence recovered from Andy Duong's cell phone [that] further corroborates the existence of these additional ***potential*** bribery deals."  *Id*. (emphasis added).  In its preliminary exhibit list, the government listed approximately twenty-five videos recovered from Andy Duong's cell phone of public officials at various locations such as clubs and limousines, approximately eleven of which the government declined to exclude after meeting and conferring with counsel for Andy Duong.[1]  Letter of Disclosure of Preliminary Exhibit

---

[1] Because the government's final exhibit list will be filed the same day as this Reply, this approximation is based on the Government's Preliminary Exhibit List.  These videos include, in some instances, Azevedo.  *See* OAK-0226306, OAK-0226305, OAK-0226302, OAK-0226242, OAK-0226241, OAK-0226239, OAK-0226300, OAK-0226243, OAK-0226240, OAK-0226236, and OAK-0226234.

4

List from Craig H. Missakian, U.S. Attorney, to Defense Counsel, *United States v. Sheng Thao et al.*, No. 4:25-CR-00003-YGR (May 19, 2026) (hereinafter referred to as "Government's Preliminary Exhibit List"). Because the government does not identify which videos from Andy Duong's cell phone "corroborate[] the existence of these additional potential bribery deals," Andy Duong presumes these videos of public officials from the Government's Preliminary Exhibit List are intended to serve this purpose.

The government claims it "does not intend to introduce any videos showing public officials dancing in a limousine" in its affirmative case. ECF No. 235 at 21. While this description minimizes the prejudicial nature of the videos, the government appears to concede now (though it did not during the meet-and-confer process), that it will not seek to introduce the specific video described in Andy Duong's Motion (ECF No. 220-5 at 10).[2] Because that particular video was named in Andy Duong's Motion as an example of the types of videos included in the Government's Preliminary Exhibit List, the government's response still leaves more than ten videos of a similar nature that presumably serve only to support uncharged allegations of bribery or "potential" (never conducted) blackmail of "other" public officials. The government agreeing not to introduce this specific video fails to rebut Andy Duong's argument that the remainder of the videos in the category, as well as any testimony from or about those officials about inflammatory conduct, should be excluded.

In the government's short response on this point (ECF No. 235 at 20–21), the government appears to abandon any argument that these alleged "potential" schemes could serve as 404(b) evidence, arguing only that the evidence is inextricably intertwined with the charged conduct. The government asserts that Thao allegedly directed the Duongs and Juarez to obtain broader support for Evolutionary Homes. Though this *may* warrant admission of evidence of communications with other public officials to establish the Duongs' alleged efforts to garner such broader support, it does not justify the admission of (a) testimony about an alleged kickback scheme in connection with those other public officials or (b) inflammatory audio or video recordings involving uncharged public officials.

---

[2] When conferring with the government in advance of filing Andy Duong's Motion, the government agreed not to introduce a subset of the approximately twenty-five videos in its affirmative case. That subset did not include the video at issue in the limousine (*see* Bates-stamped video OAK-0226305).

5

Indeed, neither the charged conspiracy nor even the government's claims about uncharged activity include any allegations, let alone evidence, that Andy Duong ever attempted to blackmail anyone. Introducing evidence of alleged bribery or potential blackmail schemes involving other public officials will inevitably result in a series of mini-trials on matters that are not inextricably intertwined with the charged conspiracy and are highly prejudicial.

The government also does not engage with Andy Duong's request to exclude recordings with uncharged public officials discussing the delivery of certain checks, or evidence of cash and cash-related items as to Andy Duong, which the government previously has suggested implicates uncharged campaign contribution violations. *See* OAK-0225052, OAK-0188768, OAK-0188759, OAK-0188760, and OAK-0188762.

Perhaps the government no longer seeks to admit such evidence. The government has declined to counter Andy Duong's argument that such evidence is improper, irrelevant, and inadmissible. In any event, the Court should exclude this evidence.

**B.      Evidence Related to the May 3, 2024, Altercation Should be Excluded**

Andy Duong moves to exclude evidence related to a May 3, 2024, altercation between Juarez and the Duongs. Specifically, Andy Duong requests that this Court preclude testimony from Juarez that he was assaulted at the direction of the Duongs. Andy Duong also asks this Court to exclude all evidence related to a gold chain and watch found in Andy Duong's car during a search on June 20, 2024, including the items themselves and any images of the items taken during the search.

In its Response, the government describes the incident as a "direct effort to prevent [Juarez] from disclosing the existence of the conspiracy." ECF No. 235 at 13. The government notes that on April 24, 2024, in response to a falling out between the Duongs and Juarez over Juarez misappropriating money, Juarez wrote that if the Duongs pursued legal actions, he would make a report to law enforcement alleging criminal activity. After Juarez's threat of outreach to law enforcement failed to cause the Duongs to acquiesce to Juarez's demands to avoid explaining what he had done with invested funds, Juarez did not go to law enforcement. Instead, Juarez showed up to the Duongs' business with a firearm and threatened them. ECF No. 235 at 12. Once that threat also failed, Juarez made a false report to law enforcement, claiming to be the victim of an assault rather than the instigator.

6

Permitting the government to characterize this episode as an assault orchestrated by the Duongs will result in an unnecessary mini-trial on a wholly irrelevant yet highly prejudicial episode.

There is no dispute that some type of altercation between Juarez and the Duongs occurred at CWS on May 3, 2024.  There is no dispute that the business relationship between Juarez and the Duongs had ended by or before April 24, 2024, and certainly by May 3, 2024.  It is wholly unnecessary to have a mini-trial about the details of this he-said-they-said inflammatory and prejudicial episode even for the purported reasons the government cites in its attempts to do so: "to tell a coherent story of Juarez's falling out with the Duongs and the dissolution of Evolutionary Homes, [Juarez's] motivations for speaking with law enforcement, and the Duongs' attempts to conceal and preserve the conspiracy by preventing Juarez from speaking with law enforcement."  ECF No. 235 at 13.

The government's stated position is unpersuasive.  First, the government does not need to provide details of an alleged *assault* to present a coherent story of Juarez's falling out with the Duongs. There is no dispute that an *altercation* occurred on May 3, 2024, and there is no dispute that there had been a falling out between Juarez and the Duongs by (actually before) then.  The government's attempts to introduce evidence about an alleged physical assault are nothing more than an attempt to portray the Duongs as people who would commit or arrange physical violence.  There is no reason to conduct another mini-trial about whether an assault occurred, who started it, who threatened whom first or at all, who showed up, and so forth to provide a "coherent story" of a falling out: it is not disputed that a falling out had occurred by then.  For example, in addition to the altercation that day, as the government sets forth in its Response, Juarez penned a lengthy email dated April 24, 2024, plainly describing that any business relationship between him and the Duongs was over and irreparable.  This Court should preclude the government from introducing evidence about any alleged "assault" on May 3, 2024.

Even if the Court allows testimony from Juarez about the alleged assault, the Court should exclude evidence related to the watch and chain recovered on June 20, 2024.  There is no dispute that by the time the watch and chain were recovered, Juarez had already met with federal law enforcement on multiple occasions.  ECF No. 119 Ex. 1.  Therefore, the recovery of those items does not tend to prove any of the purposes outlined by the government:  it is irrelevant to explain either the falling out between Juarez and the Duongs or Juarez's motivations to speak to law enforcement; he had spoken to

7

them several times before the watch and chain were found.  Furthermore, introduction of that evidence is highly prejudicial, outweighing any probative value, and should be excluded.  Fed. R. Evid. 403.[3]

### C.    Evidence of Inappropriate Alleged Conduct on the Trip to Vietnam Should be Excluded

Andy Duong moved this Court to exclude all evidence of videos or discussions of sexual conduct that allegedly occurred in Vietnam, including two highly inflammatory videos, testimony that sexual conduct took place in Vietnam, and testimony alleging that such videos were made so that they might someday be used for blackmail.  In its Response, the government stated that it does not intend to introduce in its affirmative case one of the two videos.  ECF No. 235 at 11.[4]  The government did not respond to arguments to exclude the second specific video.  *See* OAK-0226260.[5]  Presumably the government also does not intend to introduce this inflammatory video for any purpose.

Nevertheless, it seems the government intends to introduce inflammatory and prejudicial evidence of this alleged conduct through Azevedo's testimony.  If so, the government fails to make any showing as to how this evidence is permissible.  Any testimonial evidence related to salacious activity on the trip to Vietnam involves none of the defendants beyond Andy Duong, and he is not alleged to have engaged in the activities that the others allegedly did.  The charged conspiracy contains no allegations of blackmail, and even the uncharged allegation appears to be that Andy Duong "might" or "could" use such evidence for such a purpose, not that he ever did or threatened anyone that he might.  Despite this, the government appears to claim that this evidence should be admitted because Thao allegedly signaled an intention to distance herself from the Duongs if a reporter released an inflammatory story.  Specifically, the government writes that Thao's "threats" to leave the conspiracy "demonstrate the nature of their relationship and the existence of the conspiracy ...."  ECF No. 235 at

---

[3] The government calls into question the applicability of *United States v. Charley*, 1 F.4th 637 (9th Cir. 2021), noting the distinguishing facts of that case.  That case addresses the introduction of evidence of an assault as 404(b) evidence, which the government has seemingly abandoned as a basis for admissibility here.  Instead, the government's case citations and arguments rely only on a claim that evidence related to the May 3, 2024, incident is inextricably intertwined as it permits the government to tell "a coherent and comprehensible story."  *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

[4] The government attached to its Response the video marked OAK-0226247.  ECF No. 235 Ex. 7.

[5] Counsel for Andy Duong will provide a copy of this video to the Court if requested.

8

11.

The government fails to posit any reason that the inflammatory and prejudicial details of a potential media story are relevant to proving the charged conspiracy. Limiting testimony to the fact that Thao indicated reporting on inappropriate conduct may lead to the termination of her relationship with the Duongs, if she indicated that, is sufficient to prove the government's point. The government also has alleged that evidence of who paid for the Vietnam trip (flights, hotels, meals, and the like) is relevant to the charged conspiracy; the government is free to claim as much. But introducing testimony regarding the details of allegedly salacious conduct during that trip, even without presenting any related audio or video recordings, serves no permissible purpose, is unduly prejudicial, and should be excluded under Rule 403.

## III.    CONCLUSION

For the reasons stated above, Andy Duong respectfully requests that the Court grant his Motion to exclude the following: (1) all evidence of uncharged alleged bribery schemes, including the purported involvement of sexualized conduct or discussions thereof, blackmail, and campaign finance violations; (2) all evidence related to an alleged assault on May 3, 2024, and the watch and chain found almost two months thereafter and weeks after Juarez had become a government informant; and (3) testimony and audio/video evidence of conduct that allegedly took place on a trip to Vietnam in 2023, including purported sexualized conduct and blackmail (that no one alleges ever occurred).

DATED:  July 31, 2026                                      Respectfully submitted,


By: /s/ W. Douglas Sprague
    W. Douglas Sprague
    COVINGTON & BURLING LLP

    Christine A. Bonomo
    Winston Y. Chan
    GIBSON, DUNN & CRUTCHER LLP

    Erik Babcock
    LAW OFFICES OF ERIK BABCOCK

    Attorneys for Defendant Andy Hung Duong

DEFENDANT ANDY DUONG'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS (RULE 404(B) EVIDENCE)
CASE NO. 4:25-CR-00003-YGR