MARK GOLDROSEN (CSBN 101731)
255 Kansas Street, Ste 340
San Francisco, CA 94103-5154
Tel: 415-565-9600 | Fax: 415-565-9601
Email: markgoldro@aol.com

SHAWN HALBERT  (CSBN 179023)
217 Leidesdorff Street
San Francisco, California 94111
Tel: (415) 515-1570
Email: shawn@shawnhalbertlaw.com

Attorneys for Defendant ANDRE JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff<br><br>vs.<br><br>ANDRE JONES,<br><br><br>      Defendant. | Case No. 25-cr-0003 YGR<br><br>REPLY TO UNITED STATES' OPPOSITION TO DEFENDANT JONES'S MOTION FOR SEVERANCE FROM CO-DEFENDANTS ANDY DUONG AND DAVID DUONG PURSUANT TO F.R.CRIM. P. RULES 8(b) AND 14(a)<br><br>DATE: August 14, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Yvonne Gonzalez Rogers |

## I.    Introduction[1]

Defendant Andre Jones seeks a severance of his trial from that of Andy Duong based on misjoinder under Federal Rules of Criminal Procedure, Rule 8(b) and from both Andy and David Duong based on prejudicial joinder under Federal Rules of Criminal Procedure, Rule 14(a).

With respect to misjoinder under Rule 8(b), the government is incorrect that the false statements charge against Andy Duong arose from the same series of acts or transactions as the bribery conspiracy scheme charged against all defendants. All of the charges are not part of one big conspiracy and there is not a substantial overlap in the evidence.

[1]Like other defendants, Jones filed his motion partially under seal pursuant to the Protective Order and to prevent potential jurors from being exposed to prejudicial information that may be excluded at trial. Despite the pendency of the defense sealing motion, the government filed its opposition on the public docket. It thereby revealed the information the defense sought to seal. Because this information has now been revealed and the reply brief discusses the same information, Jones will not seek to file the reply brief under seal.

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                                       1

With respect to prejudicial joinder under Rule 14(a), the government is incorrect that Jones has not shown that prejudice resulting from joinder will preclude him from receiving a fair trial or prevent the jury from accurately assessing his guilt or innocence. Evidence of the other bad acts allegedly committed by Andy and David Duong will not be admissible against Jones at a separate trial. At a joint trial, the jury will be unable to accurately assess Jones's guilt or innocence because of the spillover prejudice resulting from his association with the Duongs.

In addition, there is nothing improper about Jones waiting until 18 months after the unsealing of the indictment to file this motion, as the opposition suggests. Opp., 1. The motion was filed in accordance with the court's pretrial scheduling order that all "other trial-related motions" be filed by July 10, 2026. In addition, a severance motion based on prejudicial joinder under Rule 14(b) is typically filed close in time to the trial after the defense learns the scope of the evidence that the government intends to admit against the co-defendants. Here, it was not until the government filed its disclosures on May 19, 2026, that Jones became aware of the extent of the evidence that the government was seeking to admit under Rule 404(b) or as "inextricably intertwined" with the charged conspiracy.[2]

**II.    The False Statements to a Government Agency Charge Against Andy Duong Is Not Part of the Same Series of Acts or Transactions as the Bribery Conspiracy Charge Against All Defendants, and Therefore the Defendants Are Misjoined under Rule 8 (b).**

In *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999), the Ninth Circuit explained that "in determining whether two or more offenses are part of the 'same series of acts or transactions constituting an offense,' Fed.R.Crim.P. 8(b), this court looks for a 'logical relationship' between the offenses." *Id*. at 975. That "logical relationship" may be shown by "the

---

[2]In a footnote, the government accuses Jones of "seek[ing] a strategic advantage" with respect to his trial partner, by filing a motion to sever from the Duongs, but not Sheng Thao. Opp., 11, n. 1. But the misjoinder with Count Eight involves Andy Duong alone and the bulk of the irrelevant evidence that will prejudice Jones was allegedly committed by the Duongs. The evidence that Thao allegedly asked David Duong to kill a negative story about the Vietnam trip is also prejudicial but no so prejudicial on its own that it would provide an adequate basis for seeking severance from Thao. Finally, the fact that Thao has not sought severance from the Duongs is of no relevance to the legal analysis of whether Jones's motion should be granted.

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                    2

existence of a common plan, scheme, or conspiracy." *Id*. at 976.

Here, a conspiracy allegedly existed with respect to the bribery scheme charged against all the defendants. However, that conspiracy did not include Andy Duong making false statements to FBI agents when they were executing a search warrant at his home. That crime was an individual act allegedly committed by Andy Duong alone. Jones did not participate, directly or indirectly, in the making of the false statements or have any knowledge that Andy Duong would choose to lie to the agents. Thus, this is not a case "in where all the criminal activities logically fall under the umbrella of one big conspiracy." *Ibid*.

The government contends that Andy Duong's allegedly false statements are related to the bribery scheme because they were made to conceal the conspiracy and, therefore, in furtherance of it. Opp., 8. Yet, the indictment fails to include Andy's false statements as one of the overt acts committed to further the conspiracy. Dkt. # 1 at 15-16. More important, Andy's false statements are not included in the government's disclosure of the coconpsirators statements it intends to introduce at the trial.

*Sarkisian* also held that a "logical relationship" may be shown by a "substantial overlap in the evidence" to be presented to prove the separate charges. Here, there will be some overlap because Andy Duong's statements concerned Jones's connection to Evolutionary Homes. However, this overlap will not rise to the level of "substantial," which is defined by the Merriam-Webster dictionary as "considerable in quantity" or "significantly great."[3] Proof of the false statements charge will require additional evidence regarding the FBI interview of Andy Duong on June 20, 2024 and what he said in response to the FBI's questions.

The government also argues that joinder is proper because evidence relating to the counts alleging conspiracy, bribery, and fraud is necessary to explain why Andy Duong would make false statements to a federal agent. Opp., 10. However, the case law and the cases cited by the government do not support this expanded definition of "the same series of acts or transactions,

---

[3]https://www.merriam-webster.com/dictionary/substantial

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                3

constituting an offense or offenses." For example, the government relies on *United States v. Hoelker*, 765 F.2d 1422 (9th Cir. 1985), but that case did not even involve a motion to sever co-defendants for misjoinder under Rule 8(b). Rather, Hoelker made two other severance motions. First, he moved to sever from his co-defendant under Rule 14, alleging that his co-defendant would provide exculpatory testimony at a separate trial. *Id*. at 1425. In addition, under Rule 8(a), he moved to sever the Hobbs Act counts and the narcotics counts charged against him. In affirming the denial of this latter motion, the Ninth Circuit noted that the different counts were related because "Hoelker's need for funds explained why Hoelker became involved in plans to sell cocaine and to coerce Lang into signing and insurance policy on his life naming Hoelker as the beneficiary." *Ibid*. Thus, *Hoelker* provides no support for the government's position.

The other cases cited by the government in support of its "necessary context" justification for joinder are *United States v. Felix-Guiterrez*, 940 F.2d 1200 (9th Cir. 1991) and *United States v. Ford*, 632 F.2d 1354 (9th Cir. 1980). While these cases did involve Rule 8(b) motions for severance of co-defendants, neither differed from *Sarkisian* in their discussion of what circumstances will establish a "logical relationship" allowing joinder of defendants with different charges. Neither holding was based on the necessity of jointly-charged counts providing context for the count charged separately against one co-defendant. In *Felix-Guiterrez*, the Ninth Circuit affirmed joinder because "[t]he charges against [the three defendants] occurred during a brief time span, involved many of the same participants, and were connected in many areas by overlapping proof." *Felix-Guiterrez* at 1209.

The government also cites an unpublished Tenth Circuit case and a decision from the Eastern District of Pennsylvania as examples of cases "much closer to this case" in which joinder under Rule 8(b) was found to be appropriate. Opp., at 9. Neither case is binding precedent on this court. In addition, the government's discussion of *United States v. Johnson*, 2024 WL 1836512 (E.D. Pa. Apr. 26, 2024) omits some significant caveats regarding the decision. In *Johnson*, unlike here, the defendant charged with making false statements to the FBI sought severance from co-defendants who were not charged with that crime. *Id*. at *2.

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                    4

Furthermore, the district court noted that "Johnson's counsel made a *strong argument*" that a joint trial with defendants charged with bankruptcy fraud would be prejudicial. *Ibid* (italics added). The district court ultimately decided, however, that "at this time," it would "deny the Motion to Sever without prejudice to it being renewed when the case gets closer to trial." The trial was scheduled to being almost six months later. *Ibid.* The district court would then "revisit the issue of severance, prior to the start of trial," '[i]f .... it appears that the Government's evidence against Barger and Kane is likely to be highly prejudicial against Johnson ...." According to the court docket, Johnson did not renew his motion for severance so the district court never reconsidered its ruling. *United States v. Johnson*, E.D. Pa. Case No. 2:24-cr-00014-MMB.

The Tenth Circuit decision cited by the government, *United States v. Tynes*, 83 F.3d 434 (10th Cir. 1996), affirmed the joinder under Rule 8(b) with little analysis. It found in conclusory fashion that severance was not required "because the facts necessary to prove guilt as to the stolen oil included those needed to prove Teafatiller's perjury." *Id*. at *1. The opinion did not elaborate as to how substantial the overlap in the evidence was between the charges.

**III.    A Joint Trial Will Compromise Jones's Right a Fair Trial and Prevent the Jury from Making a Reliable Determination about Guilt or Evidence Because Jones Will Be Prejudiced by the Extensive Evidence of Other Bad Acts Allegedly Committed by Andy and David Duong; Severance under Rule 14(b) Is Therefore Appropriate.**

The government argues repeatedly in opposition to a Rule 14(b) severance that "most, if not all of that evidence would still come in if (Jones) were tried with Thao." Opp., at 12. The "evidence would largely be the same in the proposed separate trials." *Id*. at 17.

The government's contention is simply not correct. The most glaring example of other crimes evidence that would not be admissible against Jones at a separate trial is Andy Duong's alleged efforts to bribe city officials outside of Oakland for the benefit of Evolutionary Homes. The government alleges that Andy Duong and Mario Juarez paid San Leandro City Councilmember Bryan Azevedo $2,000 and had Azevedo set up a bank account to receive kickback payments. It also alleges that Andy Duong considered bribing other local politicians,

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                5

including members of the San Leandro City Council (in addition to Azevedo), the Berkeley City Council, and the Alameda County Council.

In its disclosure notice, the government argued that the bribery of Azevedo was admissible against Andy Duong under Rule 404(b). Goldrosen Dec., Exhibit A at 2-3. However, as the Ninth Circuit stated in *United States v. Erickson*, 75 F.3d 470 (9th Cir. 1996) 404(b) "evidence of a defendant's prior bad acts is admissible only against that defendant." *Id*. at 479 (9th Cir. 1996) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). Therefore, to the extent the government is seeking to admit the Azevedo bribery as 404(b) evidence, it is admissible against Andy Duong only.

In its Consolidated Opposition to Defendants' Motions to Exclude Evidence, the government disputes this point, claiming that the admissibility of other bad acts under Rule 404(b) is not limited to the defendant who allegedly committed those acts. Opp. 404(b), 18. Even if the government is correct about the law (and it is not), it does not follow that the Azevedo bribery is admissible against Jones. To be admitted to show modus operandi, the prior bad act must be sufficiently similar to the offenses charged or it will have no probative value. *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989). "[T]he similarities must be specific and detailed and clearly set the particular offense apart from the general body of such offenses." *Guam v. Shymanovitz*, 157 F.3d 1154, 1158, n. 9 (9th Cir. 1998) (overruled on other grounds in *United States v. Curtin*, 489 F.3d 935, 953 (9th Cir. 2007).)

Here, the Azevedo bribery is not sufficiently similar to charged offenses to establish the existence of a common plan. In the charged scheme, a city mayor was allegedly bribed with checks paid to her romantic partner. The checks were disguised as loans or advances in connection with a no-show job at Evolutionary Homes. The payments were made in advance of any units being bought by the city.

The alleged bribery scheme with Azevedo was very different. Azevedo was not a city mayor, but a city councilmember. The scheme did not involve giving a fake Evolutionary Homes job to Azevedo's wife to conceal the payments. Rather, Azevedo was allegedly told to open up a

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                6

bank account in his wife's name for the purpose of receiving kickback payments after San Leandro purchased housing units. It is also alleged that Azevedo was given $2,000 cash to deposit into the account to avoid banks fees while waiting for the kickback payments. No additional money was due to be paid until after the units were sold. In addition, unlike, in the charged scheme, no money was to be paid directly to Azevedo's partner. She was not a knowing participant in the scheme, as Jones is alleged to be in the charged conspiracy.

Given these differences, it cannot be said that the two bribery schemes involve the same distinctive modus operandi. One allegedly involved payments to a mayor's partner under the guise of a no-show job, in advance of any units being sold. The other allegedly involved kickbacks after units were sold, that would be paid into a bank account under the name of the councilmember's unknowing wife. The Azevedo bribery scheme is only relevant to establishing Andy Duong's propensity for bribery, and therefore not admissible as 404(b) evidence.

The government fares no better in its alternative argument, that the bribery of Azevedo is inextricably intertwined with the charged conspiracy and therefore admissible at a separate trial against Jones. According to the government's notice, the bribery of Azevedo "occurred during the charged criminal conduct and conspiracy and is part of Evolutionary Homes' broader intent to bribe public officials in exchange for government contracts." Goldrosen Dec. Exh. A at 3. That the Azevedo bribery happened to occur during the time span of the charged conspiracy does not by itself link it to the alleged scheme to bribe Sheng Thao. In addition, even if the evidence shows that Andy Duong and Mario Juarez had a broader intent to bribe public officials, it does not establish that Jones shared such an intent. The government advances no plausible theory for admitting evidence of the Azevedo bribery at a separate trial involving Jones and Thao.

The same is true with respect to the allegation that Andy Duong and Mario Juarez discussed potential bribery deals with other East Bay public officials. In the disclosure notice, the government only argued that this evidence was admissible because it was inextricably intertwined with the charged conspiracy. Goldrosen Dec., Exh. A at 8. The government's reasoning was identical to its argument regarding the Azevedo bribery. The discussions

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                7

"occurred during the charged criminal conduct and conspiracy and is part of Evolutionary Homes' broader intent to bribe public officials in exchange for government contracts." *Ibid*. But, as already discussed, the charged conspiracy did not contemplate the bribery of anyone other than Sheng Thao. Bribing officials in other municipalities was not inextricably intertwined with the conspiracy Jones allegedly joined.

Other bad acts allegedly committed by Andy Duong and David Duong suffer the same fate. They are not admissible against Jones. The government seeks to introduce evidence that on October 5 2022, Mario Juarez gave a toast in the presence of Andy and David Duong. In that toast, Juarez described how he and David paid cash to Oakland city officials after they approved the CWS recycling contact. Andy and David did not dispute Juarez's characterization of the events. According to the disclosure notice, this evidence is inextricably intertwined with the charged conspiracy because it "show[s] the nature of the relationship between Juarez and the Duong family at the time Evolutionary Homes was founded, and (is) demonstrative of their corrupt intent in regards to Evolutionary Homes." Goldrosen Dec. Exh. A at 7. Yet, the evidence has no relevance to Jones's intent. He was not involved in the CWS contract with the city and was not present during this meeting. Nor can it be argued that Jurarez's toast was made in furtherance of the charged conspiracy. On October 5, 2022, the conspiracy charged in the indictment had not yet been formed.

There is still more evidence that the government intends to introduce at a joint trial that is clearly inadmissible against Jones. The government's preliminary exhibit list includes video recordings made by Andy Duong during the Vietnam trip, and perhaps elsewhere, with sexual content that is derogatory toward women. In addition, the government will have Mario Juarez testify about Andy Duong's statement that he secretly recorded politicians in compromising positions to gain leverage over them. This evidence has no probative value with respect to Jones's involvement in the charged conspiracy. Jones did not participate or assist in these bad acts or agree that they should occur. Nor does this misconduct fall within the scope of the charged conspiracy.

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                    8

The government further argues that evidence of these other bad acts allegedly committed by the Duongs will not prejudice Jones because he will assert at the joint trial that he was not involved in them. Opp., 8. The government's argument misses the point. The prejudice to Jones will occur not because the jury will believe that Jones himself committed these other bad acts but because he is associated with the Duongs, who are alleged to have committed them. In other words, the jury's aversion for the Duongs will spillover to Jones if they are all tried together, and the jury's decision regarding Jones's guilt will be influenced by inflammatory evidence regarding other bribe schemes, sexual activities, secret recordings of politicians, and other bad acts, irrelevant to Jones.

At trial, the main issue to be decided will be Jones's state of mind in accepting payments from the Duongs. If evidence is admitted at a joint trial that the Duongs bribed, and discussed bribing, others in connection with Evolutionary Homes, the jury will likely draw the impermissible inference that the Duongs payments to Jones were bribes. In other words, if what it means when the Duongs pay people is that these people are being bribed, the jury will draw a conclusion as to Jones's state of mind based on what the Duongs allegedly always do, rather than the evidence as to what Jones actually believed.

Finally, the government contends that appropriate limiting instructions will address any undue prejudice. Opp., 14. The case law recognizes, however, that jury instructions will not always be adequate to protect a defendant's right to a fair trial when evidence of a co-defendant's wrongdoing is admitted at a joint trial. *See*, *e.g.*, *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (evidence of a co-defendant's wrongdoing "could lead a jury to conclude that a defendant was guilty"); *Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring) ("It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together."). This is especially true when evidence of a co-defendant's alleged bad acts is as powerful as it is in this case, where the other bad acts include other alleged briberies. At a joint trial, if the jury finds that the Duongs have engaged in other acts of bribery and therefore must be guilty of the charged

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                    9

bribery scheme, Jones will then likely be convicted, not because of the evidence relevant to him, but because of the unrelated conduct of his co-defendants. A severance is therefore necessary to protect Jones's right to a fair trial in which the jury can make a reliable judgment about guilt or innocence.

The government cites an unpublished Ninth Circuit decision, *United States v. Moreno*, 618 Fed.App'x. 308 (9th Cir. 2015), as being instructive. Opp., 14. *Moreno*'s holding was that the district court did not abuse its discretion in denying the motion for severance in that case. It did not hold that a joint trial is always appropriate when co-defendants are jointly charged in an indictment. Rather, it said that jointly-charged defendants should be severed when more than "some prejudice" will result from a joint trial. *Id*. at 311. Here, at a joint trial Jones will suffer more than "some prejudice." His fair trial rights will be severely prejudiced because of the grave risk that the jury will make a decision based on inflammatory evidence inadmissible against him.

## III.    CONCLUSION

For the foregoing reasons and for the reasons stated in the Motion for Severance, the Court should sever Jones from his co-defendants Andy Duong and David Duong and allow him to have a separate trial with co-defendant Sheng Thao.

DATED: July 31, 2026                                  Respectfully Submitted,


                                                     /S/ Mark Goldrosen
                                                     MARK GOLDROSEN
                                                     SHAWN HALBERT
                                                     Attorneys for Defendant
                                                     ANDRE JONES

DEFENDANT JONES'S REPLY TO UNITED STATES' OPPOSITION TO MOTION FOR SEVERANCE FROM
Case No. 25-CR-0003 YGR                    10