Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>SHENG THAO, et al.,<br>Defendants. | No. CR 25-0003 YGR<br><br>**DEFENDANT'S JOINT MOTION IN LIMINE No. 5 TO EXCLUDE EVIDENCE OF PRIOR ALLEGED BAD ACTS; [PROPOSED] ORDER** |

Defendants move *in limine* to exclude Exhibit 540, the video of Mario Juarez's toast on October 5, 2022, and evidence regarding other allegations of bad acts that the government has not noticed under Rule 404(b). The probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and undue consumption of time. Fed. R. Evid. 403.

## I. Introduction

On May 19, 2025, pursuant to the Court's order, the government gave notice of prior "bad acts" evidence it seeks to introduce under Rule 404(b). The government also gave notice of evidence that it argues is inextricably intertwined with the charged conduct, including Exhibit 540, a video of a toast on October 5, 2022 in which Juarez made statements that he will say concerned past incidents of bribery.[1] In addition to that video, the government seeks to introduce other allegations Juarez has made about prior bad acts by the Duongs. These claims, which principally concern supposed "millions of dollars" in bribes, are unrelated to the charged scheme. None involves Evolutionary Homes, Sheng Thao, or Andre Jones. Some are so vague as to make it impossible to understand who was allegedly involved or when the supposed bribes occurred. Where the defense can discern a time period, the claims date to when CWS won the Oakland recycling contract in 2014—eight years before any conduct at issue in this case. The government seeks to introduce this evidence as inextricably intertwined with the charged conduct and as relevant to Juarez's relationship with the Duongs. But this evidence is not inextricably intertwined, and the government will have ample opportunity through text messages, recordings, photographs, and testimony from Juarez himself to present evidence of the relationship between the Duongs and Juarez that is relevant to the case but not unfairly prejudicial. The prior bad acts evidence thus serves no valid purpose, and what the jury will infer from it is exactly what the rules of evidence prohibit—that because the Duongs and Juarez supposedly committed bribery before, they must have done so in this instance. To rebut these allegations, the defense would need to call at least the seven individuals named by Juarez, creating a series of mini-trials that would waste considerable time and confuse the issues the jury must decide here. The Court should exclude this evidence.

---

[1] The government also seeks to introduce this video (Exhibit 540) as a coconspirator statement under Rule 801(d)(2)(E). A defense motion to exclude it on those grounds is pending. The defense does not object to admission of Exhibit 541, the video of the second toast on October 5, on grounds other than those asserted in the defense motion regarding coconspirator statements.

## II. Bad act evidence the government seeks to admit

The government intends to introduce many of Juarez's allegations of prior bad acts by the Duongs or CWS, chiefly those regarding supposed acts of bribery that have nothing to do with the allegations in this case. The defense seeks to exclude Exhibit 540, the video of Juarez's toast, and evidence related to the following allegations in 302s:

Allegations of bribery unrelated to the charged conduct:

1) "The Duongs' campaign donations are a drop in the bucket compared to the amount of cash they give public officials." OAK-0014014.

2) "Duong has told Juarez before that the Duongs have given millions of dollars in cash to elected officials. D. Duong would use A. Duong to give the cash to the elected officials." OAK-0014014.

3) "Juarez knew the Duongs had paid bribes to public officials in the past. It was just how they did business, similar to other businesses that operate in Oakland. Juarez knew his own role in his relationship with the Duongs was to help facilitate bribes to public officials." OAK-0488904.

4) "Influence with politicians is part of the Duongs' business plan. Influence came from the money they doled out and from the video evidence they kept." OAK-0123462.

5) "Juarez saw a line of people at the CWS office waiting to be paid cash from D. Duong. [Individual 1] was paid $300,000 in cash in a black gym bag. Juarez knew the amount of cash because Juarez helped count the money. The cash to [Individual 1] was definitely for his help in obtaining the CWS contract; D. Duong told [Individual 1] something to the effect of 'congratulations, we got the contract, here is your money.'" OAK-0014014.

6) "[Individual 2], associated with [business], was paid $50,000 in cash. Juarez knew how much [Individual 2] was paid because Juarez counted the money out. The cash was given to [Individual 2] in a black gym bag, like with [Individual 1]. [Individual 2] was angry he only got $50,000; [Individual 2] wanted more money." OAK-0014014.

7) "[Individual 3] was paid $12,000 in cash at her chicken restaurant in Oakland on Broadway. The restaurant is still there but the name has since changed. The owner of that restaurant, [Individual 4], was paid cash for generally obtaining support from the City Council." OAK-0014014.

8) "[Individual 5] got $100,000 for being a lobbyist for the Duongs and CWS. The Duongs also paid [Individual 6] $100,000 for being a lobbyist for CWS. [Individuals 5 and 6] did not report the money they received from the Duongs." OAK-0014014.

9) "In another such instance of bribing an official, Juarez was involved with paying the opponent of then-city [official]. D. Duong and A. Duong gave Juarez $20,000 to give to [Individual 7], who was running [for city office] at that time. Juarez gave the money to [Individual 7] in front of a Starbucks." OAK-0123462.

Other allegations:

10) "Juarez has seen the Duongs delete 'evidence' from this security system on at least one occasion. Michael Duong has control of the camera system." OAK-0013619.

11) "Duong has blackmail on a lot of people. A. Duong used blackmail often." OAK-0014014.

12) "The Duongs and CWS started using vague consultant contracts to launder money to various individuals. Juarez knew money had been paid to [Individual 1], [Individual 8], and Brian Azevedo." OAK-0014014.

## III. The Court should exclude evidence of alleged prior bribes.

Evidence is inextricably intertwined in two situations: where it "constitutes a part of the transaction that serves as the basis for the criminal charge" or where it is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). Conduct allegedly occurring eight years before the conspiracy and involving different people is not "part of the transaction that serves as the basis" for the charge here.

That leaves only the argument that the jury would not understand the government's case without this evidence. *DeGeorge* provides an illustrative counter-example where prior bad act evidence was admissible because it "had an important factual connection to several counts contained in the indictment." *DeGeorge*, 380 F.3d at 1220. There, the defendant was charged with inflating the value of a yacht, obtaining insurance at the inflated value, and then sinking the yacht. *Id.* at 1207. To explain why the defendant engaged in sham transactions to conceal his identity when obtaining insurance for the boat, the government presented evidence that he had previously lost three other insured vessels at sea. On appeal, the Ninth Circuit held this evidence was admissible even though it risked "imply[ing] a propensity to defraud insurance companies" because, without it, the jury "would not have understood the relevance of the transactions and concealment" that were part of the charged conspiracy. *Id.* at 1220.

Here, there is no comparable need to introduce prior bad acts evidence. The charged transaction is straightforward: the Duongs and Juarez allegedly offered Ms. Thao money (through Mr. Jones) in exchange for certain actions by the City of Oakland. The jury will easily

understand the allegations without hearing about unrelated bribes supposedly made almost a decade earlier to different individuals for a different purpose. Indeed, the lack of a factual connection to anything in the indictment means this evidence would confuse the narrative rather than clarify it. And the risk identified by *DeGeorge*—that the evidence will "imply a propensity" to commit the charged crimes—is great. The jury will inevitably conclude that if the Duongs and Juarez engaged in bribery in 2014, they are more likely to have done so in 2022. This is, of course, impermissible under Rule 404(b)(1). The defense would also be forced to counter this evidence by calling to the stand at least the seven individuals named by Juarez to refute his allegations. This would consume inordinate amounts of the jury's and the Court's time and would needlessly confuse the issues. This evidence should be excluded.

The government seeks to offer the Juarez toast video (Exhibit 540) to introduce references to alleged bribes from years earlier, and for the reasons discussed above, it too should be excluded under Rule 403. The government has a further theory about the relevance of this video, however. As the Court may recall, Juarez made two toasts, which were recorded in Exhibits 540 and 541. The government argues that the "retake" in Exhibit 541 is relevant because it shows efforts to conceal. The theory is that Juarez first made a toast referencing prior bribes and then was told to "keep it PG," an instruction the government claims was intended "at least in part, to omit reference to payments to city officials." Dkt. 237, 6. That the second video was "sanitized" of references to bribes, the government says, "explain[s] how and why the statements in the first video relate to and further the conspiracy." *Id.* at 8. But Juarez told the government that the second video was not made to omit references to bribes but because "the Duongs wanted Juarez to make a toast without cursing." OAK-0488904. And indeed, although the government does not mention it, another individual can be heard on the second video telling Juarez "minus the profanity" immediately before the toast. Exh. 541. There is thus no relevance to the "sanitization" of Exhibit 540 in the second video. This further diminishes Exhibit 540's already minimal probative value, which is clearly outweighed by the danger of unfair prejudice.

## IV. The Court should exclude the evidence of other alleged bad acts.

The government seeks to introduce Juarez's allegations that the Duongs at some point deleted footage from a security system, that Andy Duong "used blackmail often," and that the Duongs lauder money through "vague consultant contracts." The Court should exclude this evidence under Rule 403. None of this evidence is relevant. There are no allegations of destruction of evidence, blackmail, or money laundering in the indictment, and none of these allegations is tied in any way to the facts of this case. These vague, unspecific allegations thus serve no valid purpose, but their unfairly prejudicial nature is obvious. Allowing Juarez to levy unsubstantiated accusations of obstruction, blackmail, and money laundering will only confuse the issues and encourage the jury to conclude that the Duongs are bad people and therefore likely guilty. The defense would again be required to call witnesses, including the individuals described in statement #13 above, to counter these allegations. Because the minimal probative value of this evidence is substantially outweighed by unfair prejudice, confusion of the issues, and undue consumption of time, the Court should exclude it.

## V. Conclusion

These alleged prior bad acts are not inextricably intertwined with the charged conduct, are unfairly prejudicial, and would result in a series of mini-trials that would consume time and confuse the jury. The defense thus respectfully requests that the Court exclude testimony and other evidence concerning these alleged prior bad acts claimed by Juarez, as well as any similar allegations that the government might seek to elicit from Juarez at trial.

Dated: August 25, 2026

Respectfully submitted,

/s/

Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Duong

**[PROPOSED] ORDER**

For the reasons set forth in Defendant's Motion in Limine No. 5, the government is not permitted to introduce the following:

1) Exhibit 540;
2) testimony or other evidence regarding the 12 enumerated allegations set forth in Defendant's Motion in Limine No. 5 at page 3-4; and
3) absent leave of Court, testimony or other evidence regarding any other previously unnoticed allegations of prior misconduct by the defendants.

IT IS SO ORDERED.

Dated: __________________

__________________________
Hon. Yvonne Gonzalez Rogers
Chief United States District Judge