MARK GOLDROSEN (CSBN 101731)
255 Kansas St Ste 340
San Francisco, CA 94103-5154
Tel: 415-565-9600 | Fax: 415-565-9601
Email: markgoldro@aol.com

SHAWN HALBERT (CSBN 179023)
217 Leidesdorff Street
San Francisco, California 94111
Tel: (415) 515-1570
Email: shawn@shawnhalbertlaw.com

Attorneys for Defendant
ANDRE JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG

Defendants.

CASE NO. 25-CR-0003-YGR

MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF INTERACTIONS BETWEEN ANDRE JONES AND CITY EMPLOYEES ON JUNE 20, 2024; [PROPOSED] ORDER

Hearing Date: September 11, 2026
Hearing Time: 9:00 a.m.
Court: Hon. Yvonne Gonzalez Rogers

Defendants move in limine to exclude evidence the government seeks to elicit that on June 20, 2024, Andre Jones entered Sheng Thao's office before she returned, allegedly refused to leave when told to do so, and was escorted out of City Hall by City Administrator Jestin Johnson. This testimony is anticipated to be elicited from witnesses Johnson and/or Francis Zamora but could also theoretically be elicited from Leigh Hanson or Zach Goldman.[1] By way of background, earlier on the morning of June

[1] The 302s of Goldman and Hanson do not contain these questions but they were purported to be present for part or all of the event. The 12/6/24 302 of Francis Zamora states that on June 20, 2024, the morning of the FBI search warrants executed at locations including Jones's and Thao's home, Jones and Thao were in the mayor's office together and then left, and that Jones returned, knocking at the mayor's office door and then "bl[owing] past" Zamora into the office. Zamora said he could not be there but Jones did not leave and said he was looking for Goldman and Hanson. Zamora stated that he was "uncomfortable" and called Hanson, who was with Ryan Richardson from the City Attorney's Office.

20, 2024, Jones and Thao were awoken at 6:00 a.m. by armed federal agents executing a federal search warrant at their home. Newspeople and cameras were at their home. The testimony the government seeks to offer concerns later that day, after Jones and Thao left their home that morning and went to Thao's office at City Hall before leaving together, when Jones returned prior to Thao's office before she returned. The proffered testimony should be excluded because it does not support the government's argument for relevance, and even if it were minimally relevant, that would be outweighed by its unfair prejudicial effect because it will cause jurors to draw negative inferences about Jones's character and potentially to want to punish him.

Federal Rule of Evidence 402 excludes evidence that is irrelevant. Evidence is relevant if it has "any tendency to make a material fact more or less probable" and if it is "of consequence in determining the action." Fed.R.Evid. 401. Under Rule 403, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice." F.R.Evid. 403.[2] The advisory committee note to Federal Rule of Evidence 403 defines unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Evidence is "unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citation omitted).

During the parties' meet and confer, the government claimed that the evidence is relevant because "it shows [Jones's] access to City Hall and Sheng Thao's office there, despite the fact that he had no formal role in city government." Further, the government argued that "[t]he fact that he refused to leave and his demeanor when others asked him to leave after news of the search warrants became

Zamora claims that they told Zamora that Jones needed to leave and Jones said he was not going anywhere, and that eventually Johnson and Richardson came and escorted Jones out of the building. The 7/16/23 FBI 302 of Johnson stated that Johnson said he was in a meeting with Hanson at the City Attorney's Office when someone called Hanson to say that Jones was in the mayor's office and would not leave. Johnson stated that he, Hanson and Goldman went to the mayor's office and Johnson told him to leave. Jones said something to the effect of "So you're telling me I can't be here?" to which Johnson responded affirmatively and escorted him out of City Hall.

[2] The government does not contend that this evidence is admissible under Federal Rule of Evidence 404(b) and has not offered it for that purpose.

public is relevant to show how he viewed his access to City Hall. The fact that he went to City Hall is also relevant to show his state of mind once he became aware that he was being investigated – he went directly to a place very relevant to the charged scheme."

The government's first argument that Jones's actions on June 20, 2024 show "his access to City Hall and Sheng Thao's office" fails because the evidence shows the opposite – Jones was *not* permitted to remain in Thao's office to wait for her, and he did not have access to her office (he was, of course, permitted to be in City Hall itself, although Johnson says he escorted Jones out of the building). Further, the government's theory of the case is not that Jones had *physical* "access to City Hall;" rather, the theory is that Jones accepted payments on behalf of Thao, with whom he lived. Second, the government's related argument that Jones's aggressive demeanor when others asked him to leave is relevant to show how he *viewed his access to City Hall* is similarly flawed: The government's theory is not that Jones believed he could physically go into the mayor's office alone whenever he wanted (the government does not contend that he had done this before in the prior year and a half); again, the government's theory is rather that Jones was a conduit for payments to Thao. Thus, the proffered evidence is irrelevant to the government's actual theory of the case and thus to any material fact.

The government's final argument, that Jones's actions were relevant to his "state of mind" because he "went directly to a place very relevant to the charged scheme," is almost nonsensical. The alleged scheme did not have a "location." None of the alleged payments and none of the alleged meetings occurred at City Hall.

It is also important to note that this event occurred after the end of the conspiracy (as marked by the government's execution of the federal search warrant on June 20, 2024). Even if the government's theory had been that Jones had physical access to Thao's office, the government should be able to show such physical access at a time during the alleged conspiracy from October 2022 to the morning of June 20, 2024. The government ignores the elephant in the room, which is that the more obvious and reasonable explanation was that on an emotional and stressful day, Jones was upset that he could not wait for his partner to return to her office, a private place, in light of the very public nature of the execution of the search warrant at their home. How Jones allegedly reacted to not being able to wait for Thao in her office on the day the search warrant was executed is not relevant to anything he

allegedly did during scope of the conspiracy.

The evidence the government seeks to offer is also unfairly prejudicial character evidence. It portrays Jones as having a temper, being disrespectful, disobeying an order from the City Administrator, and having to be "escorted out" (which suggests potential danger or violence, particularly in light of Zamora's comment that Jones made him "uncomfortable"), among many other highly negative qualities about Jones that jurors may infer from this interaction. This is inadmissible character evidence, as many jurors may improperly conclude among other things that Jones is not a good person, that he is potentially dangerous or at least rude, disruptive, a bully and/or entitled, and will judge him for this behavior. Jurors may also impermissibly conclude that because he would not follow a directive from the City Administrator, he was willing to break other rules. Jones was understandably upset by the events of the day and sought privacy while waiting for Thao. But the jury will be provided with an unfair and negative account that has no probative value. *Compare United States v. Hands*, 184 F.3d 1322, 1328 (11th Cir. 1999) (in cocaine prosecution, excluding under Rule 403 evidence that defendant had physically assaulted his wife); *United States v. Drummond*, 2010 U.S. Dist. LEXIS 29981, *9-10 (M.D. Pa. 2010) (excluding evidence of domestic violence by defendant because "[k]nowledge that Defendant is a domestic abuser poses significant risks of provoking an emotional reaction from jury members that Defendant is a bad, violent person, deserving of a criminal conviction.")[3]

For the foregoing reasons, the defense requests that the Court exclude the above-referenced testimony regarding Jones's interactions with City staff on June 20, 2024.

Dated: August 27, 2026

/s/__________________
SHAWN HALBERT
MARK GOLDROSEN
Counsel for Andre Jones

[3] These cases are not directly on point because they involve domestic violence; the defense has not been able to find a case on all fours with the instant one, as alleged intimidation by a defendant offered by the government usually occurs in different kinds of cases, but the Court does not need citations to appreciate that proffered testimony about anger and putative potential danger such that a person has to be escorted off the premises is prejudicial.

[PROPOSED] ORDER

For good cause shown, IT IS HEREBY ORDERED that the government is not permitted to elicit or introduce evidence concerning defendant Andre Jones's interactions with City of Oakland employees on June 20, 2024, specifically that Jones entered Sheng Thao's office before she returned, refused to leave when told to do so, and was escorted out of City Hall.

IT IS SO ORDERED.

Dated: __________________, 2026

_________________________________
Chief Judge Yvonne Gonzalez Rogers
United States District Court