Winston Y. Chan (SBN 214884)
Christine A. Bonomo (SBN 364178)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8362
Facsimile: (415) 393-8306
Email: wchan@gibsondunn.com

W. Douglas Sprague (SBN 202121)
Bryanna Walker (SBN 345454)
**COVINGTON & BURLING LLP**
415 Mission St., Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dsprague@cov.com

Erik Babcock (SBN 172517)
**LAW OFFICES OF ERIK BABCOCK**
420 3rd Street, Suite 250
Oakland, California 94607
Telephone: (510) 452-8400
Facsimile: (510) 201-2084
Email: erik@babcocklawoffice.com

Attorneys for Defendant Andy Hung Duong

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG,<br><br>Defendants. | Case No. 4:25-CR-00003-YGR<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 2 TO PRECLUDE IMPERMISSIBLE EXPERT TESTIMONY**<br><br>Hearing Date: September 11, 2026<br>Hearing Time: 9:00 a.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

## NOTICE

**PLEASE TAKE NOTICE** that on September 11, 2026, at 9:00 a.m., before the Honorable Yvonne Gonzalez Rogers, that defendants will and hereby do move in limine to preclude impermissible expert testimony regarding how alleged public corruption schemes operate or campaign finance law, or regarding legal terms that will be defined in the Court's jury instructions. This motion is based on the instant notice, the attached memorandum of points and authorities, the files and records in this matter, and such evidence and argument as may be presented at the hearing.

DATED: August 27, 2026

Respectfully submitted,

By: */s/ W. Douglas Sprague*
W. Douglas Sprague
Bryanna Walker
COVINGTON & BURLING LLP

Winston Y. Chan
Christine A. Bonomo
GIBSON, DUNN & CRUTCHER LLP

Erik Babcock
LAW OFFICES OF ERIK BABCOCK

Attorneys for Defendant Andy Hung Duong

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 9, 2026, the Court ordered affirmative expert disclosures by May 29, 2026. ECF No. 173. On May 29, 2026, the government provided expert witness disclosures for two witnesses: (1) FBI Supervisory Special Agent Alexandra Bryant and (2) Forensic Examiner Michael Kan.

As part of the discovery produced in this case, the government provided reports from interviews conducted by federal law enforcement officers of potential witnesses, including alleged co-conspirator Mario Juarez and others. The government has represented they intend to call Juarez as a witness in their case-in chief to "testify about his involvement in the charged conspiracy, his experience as a founder of Evolutionary Homes, and his relationship and interactions with Sheng Thao, Andre Jones, David Duong, Andy Duong, California Waste Solutions, and other related individuals." ECF No. 253 at 5. In review of reports of prior interviews of Juarez, defense counsel identified numerous occasions where Juarez's potential testimony crosses the line from lay witness testimony to expert witness testimony, despite the government not disclosing him as an expert witness.

Specifically, federal law enforcement officers recorded the following information provided by Juarez, which amounts to impermissible expert testimony:

- "It was common practice in Oakland politics for a politician's spouse to be used as an intermediary to get around conflict of interest issues."[1]
- "Juarez understood it was against the law for him to be coordinating the IE with Thao. Independent Expenditures (IEs) are supposed to be independent of a candidate's campaign, but in reality they are coordinated with campaigns all the time, even though it is not allowed. It was important the money be paid to Thao through Jones as a 'consultant' for [Evolutionary Homes] because that's how it's done in Oakland to backchannel payments to the government official."[2]
- "Straw donations are different from bundled donations, which are common in campaign fundraising. Bundled campaign contributions are when an individual gathers campaign

[1] ECF No. 303-6 at 5.

[2] *Id*. at 6.

donations from other people and that individual gives the donation to the campaign. Straw donations are illegal . . . ."[3]

- "The 'cool off period' Juarez referred to is a local campaign finance law that prohibits donations to a candidate from City contractors for 90 days after the public official took an official action affecting the contract. Juarez's wife could give a donation because she was not a contractor."[4]

## II. LEGAL STANDARD

This Court has broad authority in ruling on a motion in limine. "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017); *see Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials"). Motions in limine serve as a useful "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).

The Federal Rules of Evidence govern the admissibility of evidence at trial, including witness testimony. Federal Rule of Evidence 701 "allows a lay witness to offer opinions that are (a) rationally based on the witness's perception, (b) helpful to the jury, and (c) not based on scientific, technical or other specialized knowledge within the scope of expert testimony." *United States v. Holguin*, 51 F.4th 841, 865 (9th Cir. 2022) (citation and internal quotation marks omitted); Fed. R. Evid. 701. A lay witness is not permitted to testify as to a legal conclusion. *See United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001).

Federal Rule of Evidence 702 permits expert opinion testimony when a witness is "qualified as an expert by knowledge, skill, experience, training, or education" if the court determines it is "more likely than not" that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

---

[3] ECF No. 303-5 at 14.

[4] ECF No. 303-7 at 8.

expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

An expert's opinion may be based on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, an expert may not state an opinion regarding the defendant's mental state or condition that reaches an element of the charged crime or a defense. Fed. R. Evid. 704(b). The Court "must perform a gatekeeping role [to] ensur[e] that the [expert] testimony is both relevant and reliable." *United States v. Valencia-Lopez*, 971 F.3d 891, 897–88 (9th Cir. 2020) (internal quotations omitted).

Testimony must also meet all other standards for admissibility. Therefore, the Court should preclude irrelevant testimony (Federal Rule of Evidence 402) or testimony where the prejudicial effect substantially outweighs the probative value (Federal Rule of Evidence 403).

## III. ARGUMENT

Juarez's purported expert testimony should be excluded because (1) the proposed testimony is not properly admitted as lay witness opinion testimony, (2) the government did not provide notice of Juarez as an expert witness, and (3) Juarez's proposed testimony is impermissible expert testimony.

A lay opinion must result from reasoning processes familiar to the average person. Fed. R. Evid. 701(c), Advisory Committee Notes to 2000 Amendments (explaining that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." (internal quotations omitted)).

The testimony the government seeks to introduce through Juarez goes beyond proper lay opinion because it is not based on reasoning familiar to an average person. Specifically, testimony as to the "common practice in Oakland politics" of using a politician's spouse as an intermediary[5] or payments to a romantic partner as a consultant "because that's how it's done in Oakland to backchannel payments to the government official"[6] clearly goes beyond an average person's understanding and therefore is improper lay witness opinion testimony. Similarly, proposed testimony about the legality

---

[5] ECF No. 303-6 at 5.

[6] ECF No. 303-6 at 6.

of certain actions[7] goes beyond the bounds of permissible lay witness testimony as the opinion is not based on reasoning "familiar in everyday life." *See id*. A lay witness also may not testify "as to a legal conclusion." *See Crawford*, 239 F.3d at 1090.

If the government seeks to introduce the testimony as expert witness testimony, the government must abide by the disclosure rules associated with expert witness testimony. Federal Rule of Criminal Procedure 16 requires written expert disclosure that includes the witness's qualifications and "a complete statement of all opinions that the government will elicit from the witness" as well as "the bases and reasons for them." Fed. R. Crim. P. 16 (a)(1)(G)(iii). As noted previously, the government disclosed two experts but did not disclose Juarez as an expert.

Finally, even if the government had noticed Juarez as an expert witness, the proposed testimony would be inadmissible. As the first phase of gatekeeping, the Court must determine if Juarez is qualified as an expert witness. "An expert may be qualified to give expert testimony by knowledge, skill, experience, training, or education . . . which need only exceed the common knowledge of the average layman." *Holguin*, 51 F.4th at 854 (internal quotations omitted). In order to do so, the government's provision of Juarez's qualifications is essential, as required for any expert witness.

After qualifying an expert witness, the Court must also determine that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See United States v. Bash*, 2025 WL 51210 at *8 (E.D. Cal. Jan. 8, 2025) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)); *see also Holguin*, 51 F.4th at 854 ("[A] district court must find that an expert's testimony is reliable – an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)). The Court must "make an explicit reliability finding." *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183 (9th Cir. 2019) (internal quotations omitted).

The government provides no basis for Juarez's conclusory statements regarding how alleged

[7] ECF No. 303-5 at 14 ("Straw donations are different from bundled donations, which are common in campaign fundraising. . . . Straw donations are illegal."); ECF No. 303-7 at 8 ("The 'cool off period' Juarez referred to is a local campaign finance law that prohibits donations to a candidate from City contractors for 90 days after the public official took an official action affecting the contract. Juarez's wife could give a donation because she was not a contractor.").

public corruption schemes operate. Nowhere in the reports of information Juarez gave to law enforcement or in Juarez's factual proffer from his guilty plea does he admit to any bribery scheme beyond the one charged here. He has no personal experience to rely upon in testifying about bribery as a general practice in Oakland. Nor does the government provide any basis for his conclusory statements about campaign finance and straw donation laws or the application of those laws. Therefore, the government provides no basis from which the Court could make a reliability finding for the statements from Juarez about public corruption schemes in the Bay Area. "[A]n expert's opinions that are without factual basis and are based on speculation or conjecture are inadmissible at trial." *United States v. Kelly*, 2023 WL 4032011, at *2 (N.D. Cal. June 14, 2023) (quoting *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 n.4 (9th Cir. 2010)) (quotations omitted).

Additionally, Juarez may not provide expert testimony about the legality of charged or uncharged conduct. "Experts may interpret and analyze factual evidence but may not testify about the law." *S.E.C. v. Cap. Consultants, LLC*, 397 F.3d 733, 749–50 (9th Cir. 2005). Therefore, even if Juarez is qualified as an expert, testimony about how straw donations work or the "cool off period" are impermissible.[8]

The government seemingly seeks to introduce both lay witness testimony and expert witness testimony from Juarez. A witness may offer both lay opinion and expert opinion. However, "the line between lay and expert opinion is significantly blurred when offered by the same witness." *Bash*, 2025 WL 51210, at *8. The blurring of these lines risks the jury affording lay opinion testimony with the heightened reliability of expert witness testimony. *See Holguin*, 51 F.4th at 862; *see also United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("The purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16."). Because of the critical role Juarez's testimony will play at trial as an alleged co-conspirator, the gatekeeping function of any purported expert witness testimony is especially important in this case.

Juarez should also be precluded from testifying as to the definition of certain legal terms that

[8] ECF No. 303-5 at 14; ECF No. 303-7 at 8.

will be the subject of the Court's jury instructions, such as "bribery" or "quid pro quo," or whether the facts in question meet such definitions. Indeed, courts have been clear that witnesses may not provide opinions "which would merely tell the jury what result to reach." Fed. R. Evid. 704, Advisory Committee's Notes; s*ee United States v. Knigge*, 832 F.2d 1100, 1109 (9th Cir. 1987), amended, 846 F.2d 591 (9th Cir. 1988) (affirming the district court's decision to step in because the witness was "being asked for a legal conclusion" on cross-examination about how he understood a "bribe"); *United States v. Jesenik*, 2025 WL 2573385, *2 n. 1 (9th Cir. Sept. 5, 2025) ("On the one occasion that a lay witness began to provide a legal definition of the term "Ponzi scheme," the district court properly halted the testimony and instructed the jury not to "take any legal definitions from" the witness."); *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (trial court properly excluded expert testimony that "inappropriately drew a legal conclusion by opining that [the plaintiff's] actions amounted to extortion"); *United States v. Reda*, 787 F.3d 625, 629 (1st Cir. 2015) (district court "demonstrated care in policing the line between conclusory and descriptive terminology. Although [the district court] overruled objections to the word 'kickback' . . . it sustained objections when the agent testified that '[a] kickback is a form of bribery' and when he described the deal as 'illegitimate finance.'").

Finally, the proposed testimony from Juarez is inadmissible because it is unduly prejudicial. Fed. R. Evid. 403. Juarez's proposed testimony about how public corruption schemes work will insinuate to the jury that any conduct aligning with Juarez's description must have been illegal. Juarez's view on the workings of public corruption schemes is not probative of the defendants' guilt and instead will only prejudice the defendants in the eyes of the jury.

## IV. CONCLUSION

For the reasons stated above, the defendants respectfully request this Court preclude impermissible expert testimony regarding how alleged public corruption schemes operate or campaign finance law, or regarding the definition of legal terms that will be defined in the Court's jury instructions.

DATED: August 27, 2026

Respectfully submitted,

By: */s/ W. Douglas Sprague*

W. Douglas Sprague
Bryanna Walker
COVINGTON & BURLING LLP

Winston Y. Chan
Christine A. Bonomo
GIBSON, DUNN & CRUTCHER LLP

Erik Babcock
LAW OFFICES OF ERIK BABCOCK

Attorneys for Defendant Andy Hung Duong