CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3717
FAX: (510) 637-3724
Abraham.fine@usdoj.gov
Molly.priedeman@usdoj.gov
Lloyd.farnham@usdoj.gov
Brandon.moore@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, AND<br>ANDY HUNG DUONG,<br><br>Defendants. | CASE NO. 4:25-cr-0003-YGR<br><br>**UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE NO. 2 TO PRECLUDE IMPERMISSIBLE EXPERT TESTIMONY OF MARIO JUAREZ** |

## INTRODUCTION

Mario Juarez has pleaded guilty to engaging in a bribery conspiracy with Defendants Sheng Thao, Andre Jones, David Duong, and Andy Duong, and the government intends to call him to testify in its case in chief. Before pleading guilty, Juarez was involved in East Bay politics for decades, twice running for local office, serving on Alameda County Democratic Central Committee, and otherwise working in a political consultant role.

Based on four cherry-picked quotations from FBI 302s summarizing Juarez's interviews with the government, Defendants assert that his potential testimony has crossed the line from lay testimony to expert witness testimony. Not so. Nothing about Juarez's potential testimony is based on scientific, technical, or other specialized knowledge, as is required for expert testimony under Rule 702. Rather, among other items, Juarez will testify about his long-term relationship and interactions with Defendants, which is informed as his background in East Bay politics. To the extent Juarez's testimony veers into opinion testimony at all regarding his knowledge and experience in East Bay politics, or he testifies regarding the political landscape in Oakland and its players in order to explain his conduct or the conspiracy, it is proper lay opinion testimony under Rule 701.

## LEGAL STANDARD

Under Federal Rule of Evidence 701, a lay witness may provide opinions "rationally based on the witness's perception" that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) ("Rule 701 allows a lay witness to offer opinions that are (a) rationally based on the witness's perception, (b) helpful to the jury, and (c) not based on scientific, technical or other specialized knowledge within the scope of expert testimony.") (citation omitted). Only opinion testimony requiring special "knowledge, skill, experience, training, or education" is subject to the requirements of Federal Rule of Evidence 702, and the disclosure requirements of Federal Rule of Criminal Procedure 16. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Whether evidence is more properly offered by an expert or a lay witness depends on the basis of the opinion, not its subject matter. If the basis of a witness's opinion is technical or specialized knowledge, then that opinion falls within Rule 702. But if the basis of the opinion is just familiarity with the subjects, then it

is proper lay opinion under Rule 701." *United States v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025) (citations omitted).

**ARGUMENT**

Defendants' motion cites four quotations from FBI 302s summarizing Juarez's interviews with the government and claims each of them constitutes expert testimony. As an initial matter, these are interview summaries not necessarily a summary of Juarez's anticipated testimony. However, even if Juarez were to testify consistent with the statements in the 302s, none of the selected excerpts from the interview memoranda constitutes expert testimony within the meaning of Rule 702.

***First***, Defendants cite to a portion of an FBI 302 from Juarez's June 6, 2024, interview that states: "It was common practice in Oakland politics for a politician's spouse to be used as an intermediary to get around conflict of interest issues." Nothing about this statement is expert testimony, as it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rather, to the extent Juarez testifies about common practices he has witnessed during his decades of involvement in East Bay politics, such testimony will be based on his general "familiarity with the subject[]" and thus it is "proper lay opinion under Rule 701." *Holmes*, 163 F.4th at 560.

***Second***, Defendants cite to a portion of an FBI 302 from Juarez's June 6, 2024, interview that states: "Juarez understood it was against the law for him to be coordinating the IE with Thao. Independent Expenditures (IEs) are supposed to be independent of a candidate's campaign, but in reality they are coordinated with campaigns all the time, even though it is not allowed. It was important the money be paid to Thao through Jones as a 'consultant' for [Evolutionary Homes] because that's how it's done in Oakland to backchannel payments to the government official."

As an initial matter, the government does not intend to elicit a legal conclusion from Juarez. However, Juarez's general lay understanding that IEs are not supposed to coordinate with political campaigns is relevant to the pending charges and is not expert testimony. Specifically, trial evidence will show that in October of 2022, Juarez had several phone calls with Andre Jones, during which they discussed the negative mailer campaign Juarez's IE was producing to help Thao's campaign. Despite Juarez and Jones actively discussing strategy for the negative mailers on phone calls, when Juarez sent Jones a text message regarding the mailers, Jones responded: "My understanding is if I help with that

part I would be 'coordinating.' Can you run it by someone else?" The government expects Juarez will testify that he interpreted this text message from Jones to mean he did not want anything about his involvement in the IE or the mailers to be in writing (as they had already discussed those items on the phone). Juarez's general understanding that IEs and campaigns are not supposed to coordinate is relevant to his understanding of the nature of the corrupt bargain and the intended benefit to Thao (i.e. that she would reap the benefit of the mailer without any fallout associated with any negative reaction to the mailer), and to explain his actions, and the statements and actions of defendant Jones and others. It does not constitute expert testimony.

In addition, as discussed in prior briefing, a key item of evidence in the government's case is a March 26, 2023, Apple note Juarez composed summarizing the illicit agreement made by Thao, Jones, David Duong, Andy Duong, and Juarez (Trial Exhibit 1808). Juarez sent the note to Andy Duong, who confirmed his understanding of the agreement and confirmed it had been shared with "David." One of the line items in that Apple note states, regarding the negative mailers: "Take political hit and not in coordination – Mario Juarez sole source of PAC and funds." Juarez's testimony about what he meant in this line item regarding "coordination" is relevant to the meaning of the note and goes directly to the benefit provided to Thao, and nothing about Juarez's description is based on scientific, technical, or other specialized knowledge, such that it would be expert testimony within the scope of Rule 702.

***Third***, Defendants cite to a portion of an FBI 302 from Juarez's July 19, 2024, interview that states: "Straw donations are different from bundled donations, which are common in campaign fundraising. Bundled campaign contributions are when an individual gathers campaign donations from other people and that individual gives the donation to the campaign. Straw donations are illegal." This statement does not cross the line into expert testimony (perhaps with the exception of the last sentence if it is construed to be a legal conclusion). Nevertheless, the government has represented to the Court and to the defense that it does not intend to elicit testimony regarding straw donations in its case in chief, unless the defense somehow opens the door to such testimony.

***Fourth***, Defendants cite to a portion of an FBI 302 from Juarez's February 10, 2025, interview that states: "The 'cool off period' Juarez referred to is a local campaign finance law that prohibits donations to a candidate from City contractors for 90 days after the public official took an official action

affecting the contract. Juarez's wife could give a donation because she was not a contractor." Similar to the previous quotation, this statement does not cross the line into expert testimony. Instead, it is Juarez's view of a prohibition that was central to explain his conduct as part of the conspiracy and explain the conduct of other defendants. He is not opining on the legal standard; he would be offering his lay witness understanding of what he believed was permitted under Oakland ethics rules.

**CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court deny Defendants' Motion in Limine Number 2 regarding alleged improper expert testimony by Mario Juarez.

DATED: September 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorneys