CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
Abraham.Fine@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, and<br>ANDY HUNG DUONG<br><br>Defendants. | Case No. 25-CR-00003 YGR<br><br>UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* NUMBER 3 TO EXCLUDE EVIDENCE OF ANDRE JONES' FINANCIAL CONDITION |

# I. INTRODUCTION

In a joint motion *in limine*, filed by Andre Jones' counsel on behalf of all defendants, the defendants seek an *in limine* ruling precluding certain evidence related to Andre Jones' financial condition, including bank records, a rent payment statement, and three text messages.

One of the issues at the center of this case is the defendants' agreement to pay and accept a bribe, and an important aspect of the proof of that agreement consists of the evidence that Andre Jones received a total of $95,000 pursuant to the alleged bribery scheme. Evidence relating to Jones' finances, including his bank records, are specifically and inextricably related to allegations in the indictment and that the government must prove at trial. Jones' financial records are relevant in a number of ways, including the following: (1) to prove that Jones received the bribe payments and how those funds flowed to and from his accounts, (2) to show that Jones and Thao shared living expenses such as rent and utilities, such that a payment to Jones was a benefit to Thao, (3) to show Jones' changed behavior in paying rent while he was receiving the bribe payments, corroborating other evidence that Thao knew Jones had been paid by the Duongs, and (4) to show that at the time that Thao and Jones solicited a payment to Jones, Thao and Jones needed this money to pay rent and bills. In short, these records document part of the crime (paying and accepting bribes), are relevant to show Thao benefited from the "thing of value" paid by the Duongs and show that Thao and Jones were motivated to solicit these bribery payments because they needed the money.

For the reasons discussed below, financial records documenting relevant transactions beginning in October 2021 and continuing through June 2024 are relevant, are not offered for some improper or legally-barred purpose, and the probative value outweighs any minimal prejudice.

# I. DISCUSSION

## A. Proffered Evidence at Issue

Jones lists and objects to three government exhibits that consist of bank statements for two accounts controlled by Jones:

> Exhibit 1344 – Statements from Jones' account at Bank 1, account ending 8848, including statements from December 14, 2023 to July 16, 2024

> Exhibit 1346 – Statements from Jones' account at Bank 1, account ending 8848, including statements from April 27, 2022 to February 13, 2024

> Exhibit 1507 – Statements from Jones account at Bank 2, account ending 2306, including statements from December 25, 2019 to April 25, 2022.[1]

These two accounts appear to be the primary accounts that Jones used during this time, account ending 2306 (until about April 2022), and account ending 8848 (from April 2022 to at least July 2024).

Jones also objects to the government Exhibit 1250 (Halbert Decl. Ex A), which is a tenant payment statement for the house that Jones and Thao rented, documenting the rent payments made to the property management company by Jones and Thao from October 15, 2021 (when it appears the lease began) to June 4, 2024.

Finally, Jones objects to three text messages exchanged between Jones and Thao, all contained in Exhibit 30:

> (1) an April 3, 2022 text from Thao being unable to pay the rent herself due to a $1,000 energy bill and an $800 water bill; (Halbert Decl. Ex B)
>
> (2) a March 23, 2023 text from Thao stating Jones has not made payments on an auto loan; (Halbert Decl. Ex C) and
>
> (3) a November 14, 2023 text from Thao asking that he not turn on the heater or lights because of a $3,000 energy bill. (Halbert Decl. Ex D)

The government intends to offer the bank records to support the testimony of a law enforcement agent who reviewed and will summarize the records.

**B. These Records are Not Offered Under Rule 404 and are Not Barred by the Rule**

Jones first argues that the evidence objected to is not admissible under Rule 404(b), implying that it could be barred as inadmissible character evidence that does not fall under an appropriate exclusion. But Jones is ultimately correct that the government does not intend to offer this evidence under Rule 404 at all, because the evidence does not show prior acts used "to prove [Jones'] character in order to show that on a particular occasion [Jones'] acted in accordance with the character." Fed. Rule Evid. 404(b). The rule has no applicability here, as also recognized by a case cited by Jones. *See United States v. Mitchell*, 172 F.3d 1104, 1107 (9th Cir. 1999).

The rule also has no applicability because even if financial condition evidence or financial

[1] The government agrees that statements preceding October 2021 for this account are not relevant to the upcoming trial and agrees to mark a new exhibit that excludes those earlier statements. The account statements from October 2021 to July 2024 are relevant.

records could be construed as "prior acts," the evidence here is being offered as evidence of the crime itself, and evidence that is inextricably intertwined with the crime, and not to prove some other act.

**C. The Bank and other Financial Records are Relevant and Admissible**

The financial records and communications at issue in Jones' motion are relevant to several key issues at trial. As an initial matter, financial records that contain and document the financial transactions that were part of the charged financial crime are routinely and regularly admitted as relevant evidence in criminal trials. Here, the indictment alleges that Jones was paid $95,000 in installments over the course of the bribery scheme, and he deposited those payments in two bank accounts, numbered 8848 and 2306. The bank records for these same accounts and the rent statement show that Jones used that money in part to benefit Thao, by paying the full rent on their house for the 16 months following the first alleged bribe payment. There should be no question that the financial records reflecting the payment of the alleged bribes and the use of those funds are relevant. What they are not going to be used for to show is to show any defendant's "poverty" (as Jones concedes they do not show anyway) or that the defendants' financial condition or financial needs alone is sufficient proof of the crime. But these records are significant for other reasons also, as discussed below.

First, the bank statements and rent payment statement are relevant to show that Jones and Thao shared living expenses such as rent and utilities, and that in the months leading to the bribery scheme Thao paid a larger share of the rent and utilities. This evidence is relevant to show that a payment to Jones was also a benefit to Thao, and a benefit that she intended to accept as part of the bribery scheme.

Second, the proffered evidence is also relevant to show Jones changed his behavior within days after receiving the first alleged bribe. The bank records and the record of rent payments are documentary evidence that shows that in the months leading up to the agreement to pay Jones (October 2021 to December 2022), both Jones and Thao often contributed to the rent payments, and that in some of those months Thao paid most or all of the rent. Then, within days after Jones received the first payment from Mario Juarez in connection with the corruption scheme, Jones paid the balance due on rent and began paying the entire monthly rent.[2] The first payment to Jones from the arrangement, in the

[2] Jones does not dispute this timeline but instead argues that Jones would have been able to make the rent payment he made to the property manager in December 2022 even without the checks with

form of a check for $2,500 from a Ciudad Holdings account controlled by Mario Juarez, was dated December 14, 2022. Within days of that check, on December 19, 2022, Jones made a payment of $3,050 to the property management company for rent, to pay the balance due. *See* Halbert Decl., Ex. A at p. 4. That timing is significant, and the records at issue are the proof of that timing. After the abrupt change in behavior in December 2022, Jones continued to pay the entire rent amount each month until at least June 2024.

Finally, the financial records show that before and during the conspiracy Thao and Jones needed this money. This need for money is a motive that both explains Thao's actions and is relevant to her and Jones' criminal intent in entering the arrangement with the Duongs to exchange a benefit for a promise of official acts.

The cited text messages also illustrate a pattern of Thao telling Jones that she was having difficulty paying high utility bills and rent in the months leading up to the payment of the first alleged bribe payments and continuing in the first few months of the conspiracy. The messages show an important dynamic that is relevant to the criminal intent for both Jones and Thao, namely that Thao expected Jones to share expenses for the house. The bank records and property payment records offered also corroborate these statements and show Jones and Thao did actually share house expenses.

Thao texts Jones on November 14, 2023 asking that he not turn on the heater or lights because of a $3,000 energy bill—then, the financial records show, a few days after this text Jones deposits another alleged bribery check from Evolutionary Homes, for $35,000, into his account ending 8848. This is relevant to the crime charged; it shows intent, existence of the bribery agreement and conspiracy, and documents and explains the timing and flow of money within the charged scheme.

Jones relies primarily on one case to argue that financial condition evidence should categorically be excluded absent narrow exceptions, but that case does not stand for the blanket exclusion argued by Jones. In fact, that case has minimal applicability here, and does not relate to the type of financial evidence offered here, and offered for the purposes it is offered. *United States v. Mitchell* holds only that "poverty evidence without more" is not relevant to prove that a defendant committed a crime. 172

---

alleged bribes he received from Mario Juarez. Motion at 3.

F.3d 1104, 1109. But even that limited holding reflects the very different facts of that case. Mitchell was accused of bank robbery, and the government argued that it was Mitchell who committed the robbery because days before the robbery his bank account was overdrawn, and then the next day he paid his rent in cash. *Id.* at 1107. The Court of Appeals noted that Mitchell was required by his landlord to always pay his rent in cash, and concluded that this fact along with his overdrawn account was not relevant and did not support the prosecution's argument. *Id.* at 1109-10. The court also found that the prosecutor improperly used evidence of Mitchell's financial condition to show that Mitchell was "a feckless man who did not support his wife and children," and the court concluded that the prosecution's evidence that Mitchell was poor prejudiced him. *Id.* at 1110.

The narrowness of the *Mitchell* opinion is highlighted by two cases that it cites, but does not overrule, that approved of admission of financial condition to prove motive and intent. *United States v. Feldman*, cited in *Mitchell*, found no abuse of discretion where the court admitted evidence in a bank robbery trial that the defendant's account was overdrawn by $8,000, concluding that evidence that Feldman owed "substantial sums" was relevant to show motive. 788 F.2d 544, 577 (9th Cir. 1986). Similarly, in *United States v. Jackson*, also cited by *Mitchell*, the court held evidence that the defendant was "short on funds," "having financial difficulty," and borrowed money because he "couldn't pay for things he needed to have done" was properly admitted where the evidence was "more than the mere fact that the defendant is poor." 882 F.2d 1444, 1449 (9th Cir. 1989). These cases taken together show that courts can and should consider the relevancy of any financial records in the context of the case at hand, and there is no bright line bar to evidence of a defendant's financial condition.

*Mitchell* should be read narrowly, and it is not plausible that the case that stands for the proposition that financial records or financial condition evidence is always irrelevant absent certain exceptions. The "limited circumstances" that Jones claims do allow this type of evidence are really just examples of situations where such evidence is relevant, not exceptions to a rule. Here, the relevance of the proffered evidence is not to show a state of "poverty," but is relevant to significant disputed facts that tend to prove the elements of a financial crime.

**D. There is no Undue Prejudice**

As discussed above, the fact that Jones' and Thao's financial behavior changed after receiving

the bribe payments is relevant to the crime charged, and evidence that Jones did not have the money to contribute to joint living expenses prior to the alleged bribery scheme is also evidence of the crime and the motive for Thao to commit it. Given the relevance to key issues, these facts are not unduly prejudicial, and any prejudicial effect is far outweighed by the probative value under Rule 403.

Jones only makes passing references to prejudice, and only for a couple pieces of evidence.

Regarding the property management rent statement, which shows some rent checks were returned for insufficient funds, Jones argues that the document is prejudicial because "jurors may hold Jones's disorganization or sloppiness against him, may treat it as bad character evidence or indicative of some other unknown issue." Motion at 5. None of those claimed prejudicial inferences bear on a significant issue in the trial, and nothing about the document shows "bad character" or "other unknown issues" as argued by Jones. As such, Jones has not shown he would be unfairly or unduly prejudiced at trial by this document.

Jones also claims that the text from Thao about Jones being $9,000 behind on car loan payments is prejudicial. Motion at 5. The text is relevant because it shows that Thao and Jones needed money, and that Thao knew the extent to which they needed money—in other words it is relevant to motive and intent. Any minimal prejudicial effect from the fact that he was late on making these payments is outweighed by the relevance of the evidence.

## II. CONCLUSION

For the reasons above, the motion *in limine* to preclude financial records and communications about joint finances should be denied.

DATED: September 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorney