Winston Y. Chan (SBN 214884)
Christine A. Bonomo (SBN 364178)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 393-8362
Facsimile: (415) 393-8306
Email: wchan@gibsondunn.com

W. Douglas Sprague (SBN 202121)
Bryanna Walker (SBN 345454)
**COVINGTON & BURLING LLP**
415 Mission St., Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dsprague@cov.com

Erik Babcock (SBN 172517)
**LAW OFFICES OF ERIK BABCOCK**
420 3rd Street, Suite 250
Oakland, California 94607
Telephone: (510) 452-8400
Facsimile: (510) 201-2084
Email: erik@babcocklawoffice.com

Attorneys for Defendant Andy Hung Duong

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG,<br><br>Defendants. | Case No. 4:25-CR-00003-YGR<br><br>**DEFENDANTS' OPPOSITION TO THE UNITED STATES' MOTION *IN LIMINE* NO. 1 TO ADMIT CHRONOLOGICAL SUMMARY EXHIBIT UNDER FEDERAL RULE OF EVIDENCE 1006**<br><br>Hearing Date: September 11, 2026<br>Hearing Time: 9:00 a.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

## NOTICE

**PLEASE TAKE NOTICE** that on September 11, 2026, at 9:00 a.m., before the Honorable Yvonne Gonzalez Rogers, Defendants will and hereby do oppose the United States' Motion in Limine No. 1 to Admit Chronological Summary Exhibit Under Federal Rule of Evidence 1006 (ECF No. 287), on the grounds that (A) Exhibit A to the Priedeman Declaration is an argumentative and inaccurate timeline crafted by the prosecution, and (B) the government cannot contrive "voluminous" records from its own exhibit list to smuggle in a de facto closing argument.

This opposition is based on the instant notice, the attached memorandum of points and authorities, the files and records in this matter, and such evidence and argument as may be presented at the hearing.

DATED: September 3, 2026

Respectfully submitted,

By: */s/ Winston Y. Chan*

Winston Y. Chan
Christine A. Bonomo
GIBSON, DUNN & CRUTCHER LLP

W. Douglas Sprague
Bryanna Walker
COVINGTON & BURLING LLP

Erik Babcock
LAW OFFICES OF ERIK BABCOCK

Attorneys for Defendant Andy Hung Duong

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government asks this Court to admit, as substantive evidence under Federal Rule of Evidence 1006, an argumentative exhibit that compiles and characterizes nearly every category of evidence in its case-in-chief, from text messages, WhatsApp messages, emails, and phone records to bank records, calendar entries, Apple Notes, photographs, and videos. *See* ECF No. 287 (Government's Motion in Limine No. 1); ECF No. 288-3 (Exhibit A to Priedeman Declaration) (hereinafter "Compilation Exhibit"). One of the proposed exhibit's own headers—apparently an inadvertent drafting comment—betrays the government's actual intent: not to present a factual summary of voluminous records, but to hand the jury its closing argument in written form. *See* Compilation Exhibit at 21 ("decide order of messages"). This proposed exhibit should not be admitted for at least two reasons. First, it is an inadmissible argumentative tool rather than a neutral compilation of the underlying evidence. Its section headers assert as fact matters that only the jury may resolve, its event descriptions substitute the government's own characterizations for neutral descriptions of what the exhibits show, and its juxtaposition of disparate categories of evidence invites connections and inferences that the underlying exhibits do not themselves support. Second, the proposed exhibit does not serve the purpose of Rule 1006. Rather than condensing a discrete category of genuinely voluminous and unwieldy evidence, it stitches together virtually every category of proof in the case toward the single end of proving the conspiracy and bribery charges themselves. That the government intends to introduce nearly all of the underlying records anyway is answer enough that this volume is the government's own contrivance. Defendants respectfully request that the Court deny the government's motion and preclude the proposed exhibit's admission.

## II. LEGAL STANDARD

"[I]t is critical to distinguish between charts or summaries *as evidence* and charts or summaries *as pedagogical devices*." *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) (emphasis in original) (quoting *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 431 (5th Cir. 1985)); *see also United States v. Laurienti*, 611 F.3d 530, 550 (9th Cir. 2010). Rule 1006 permits the introduction of the former if the summary is "offered to prove the content of voluminous admissible writings, recordings, or

photographs that cannot be conveniently examined in court," Fed. R. Evid. 1006(a), but only if the summary is "accurate and nonprejudicial." *Staley v. U.S. Bank Nat. Ass'n*, No. 1:10-CV-00591-BLW, 2013 WL 393166, at *5 (D. Idaho Jan. 31, 2013) (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)). Courts in the Ninth Circuit routinely exclude argumentative summaries or those depicting a party's characterization of the evidence. *See, e.g., United States v. Hussain*, No. 16-CR-00462-CRB, 2018 WL 3619797, at *32 (N.D. Cal. July 30, 2018); *Allison v. Dolich*, No. 3:14-CV-1005–AC, 2018 WL 834919, at *11 (D. Or. Feb. 12, 2018). Moreover, pedagogical devices for "testimony or documents already admitted into evidence" should not themselves be admitted or "otherwise . . . used by the jury during deliberations." *Wood*, 943 F.2d at 1053 (collecting cases); *see also United States v. Young*, No. 2:24-CR-00176-JNW, 2026 WL 1953130, at *1 (W.D. Wash. July 6, 2026) (noting that "illustrative aid[s]" should not go back with the jury absent party consent or good cause under new Fed. R. Evid. 107(b)).

## III. ARGUMENT

### A. The proposed exhibit is inadmissibly argumentative.

This proposed exhibit is not a summary presentation of raw evidence under Rule 1006 but an argumentatively curated cheat sheet for the government's closing argument of the entire case. It achieves this non-evidentiary purpose by (1) characterizing the evidence through argumentative section headers, (2) including exhibit descriptions that state the government's own factual conclusions of what the corresponding exhibit shows rather than neutrally displaying the contents, and (3) juxtaposing disparate categories of evidence to conjure connections and inferences that the underlying exhibits do not make on their own. Each of these tactics usurps the jury's fact-finding function.

**1. The section headers impermissibly characterize and argue the evidence rather than describe it.** The proposed exhibit's bolded section headers do not describe the exhibits but instead state the government's own factual conclusions and characterize the significance of the curated set of exhibits that follow. "Although such editorializing may help provide context for the underlying data, it does not arise from that data" and is therefore a preclusive defect. *United States v. Graham*, No. CR 13-37-M-DWM, 2013 WL 6383169, at *2 (D. Mont. Dec. 5, 2013); *see also Bray*, 139 F.3d at 1110 (noting that summaries cannot be "embellished by or annotated with the conclusions or inferences

drawn by the proponent" through "labels, captions, highlighting techniques, or otherwise"). Several of these headers also argumentatively link disparate events without any proof of their connection.

- **"Juarez and Thao Text, Juarez and Duongs at CWS."** Inherent in this header are several factual conclusions that are the province of the jury, not the government, including that Mario Juarez and Sheng Thao sent the text messages at issue, images and videos show Juarez and the Duongs, and that the location depicted in these images and videos is CWS. The government needs to elicit testimony from witnesses to prove these points; it cannot simply argue them as facts in what should be a neutral summary exhibit. The section header also implies a connection between Juarez and Thao texting and Juarez and the Duongs meeting at CWS that the raw evidence itself does not, on its own, establish.
- **"Communications between Juarez, Andy Duong, Andre Jones, Julie Wedge, Chris Wedge, and Samari Johnson."** This header inaccurately implies that Andy Duong and Andre Jones communicated with Samari Johnson, the print shop owner who processed the negative mailers against Thao's opponents. As even the exhibit descriptions indicate, they did not—only Juarez did. By grouping Andy Duong's and Jones's communications with Juarez's separate communications with Johnson under a single heading, the government argumentatively (and inaccurately) implies that the two sets of communications are connected.
- **"Payments to Andre Jones."** This header could, at most, introduce a chronological list of checks made out to Jones. Instead, the government places under it text messages between Juarez and Jones and between Juarez and Andy Duong that the government is plainly using to imply a connection between the texts and the payments and argue Andy Duong's knowledge of them. This pushes beyond factual description into argument.
- **"Sheng Thao Inauguration," "Larry Gallegos Meeting with Duongs," "VABA Annual Gala," "Vietnam trip begins," "Vietnam trip ends," "Sheng Thao Visits Evolutionary Homes," and "Jestin Johnson Visits Evolutionary Homes."** All these headers impermissibly describe and characterize the events that the government will argue the images depict and text messages describe. These are all factual conclusions for the jury to make after hearing from witnesses. They cannot be drawn by the government outside of argument.

- **"Skates on the Bay Meeting – decide order of messages."** This header—apparently left in by mistake—shows that the government's intent is not to present a factual sequence of events but an argumentatively selective ordering of the evidence. Compilation Exhibit at 21.

**2. The event descriptions prejudicially characterize rather than present the raw evidence.** Numerous entries in the proposed exhibit's "Event" column are not neutral descriptions of or quotations from the underlying exhibits but the government's own characterizations of what it believes those exhibits show. Such factual finding should be left to the jury, whereas the proposed exhibit's conclusive "interpretation[s] of the evidence" are "part of [the government's] argument on the merits" and inadmissible as evidence. *Razaghi v. Razaghi*, No. 2:18-CV-01622-EJY, 2024 WL 4696658, at *3 (D. Nev. Oct. 10, 2024) (quoting *Nw. Env't Advocs. v. United States Env't Prot. Agency*, 745 F. Supp. 3d 1150, 1169 (D. Or. 2024)). For example, entries describing photographs or videos as depicting "Juarez and the Duongs at CWS" assume facts that only a witness with personal knowledge could establish—that they actually show the Duongs, and that the environs are CWS's offices. Descriptions of audio recordings as between "Andy Duong and Kevin Jenkins," "Mario Juarez and members of the Duong family," "Sheng Thao and Andy Duong," and "Andy Duong and Bryan Azevedo" similarly require personal knowledge of witnesses who can testify that those are indeed the alleged speakers' voices. Until the government produces such testimony, these descriptions are merely its "characterization[s]." *Allison*, 2018 WL 834919, at *11. Multiple entries state that a pictured check "cleared [the] bank" even though the indexed exhibit includes no such information about whether or when the deposit cleared. *E.g.*, Government Exhibits 1420 (OAK-0268865), 1423 (OAK-0268870), and 1425 (OAK-0268872). And the government describes Exhibit 1337 (OAK-0000029) as "IE Mailers Delivered to Post Office," but this too states a factual conclusion: the exhibit itself comprises postal receipts; whether those show the mailers were delivered to the post office is an inference the government must elicit from a witness, not a description of the document itself. The government has failed to show, as it must, that the proposed exhibit "accurately summarizes the materials involved by not referring to information not contained in the original." *Graham*, 2013 WL 6383169, at *2 (citation omitted).

Riddled with these factual inferences and conclusions extrinsic to the exhibits themselves, the

proposed exhibit reinforces its argumentation with prejudicial stylistic "techniques." *Bray*, 139 F.3d at 1110. Key government cooperator Juarez's name appears in green while the Duongs' names appear in red, colors respectively associated with good and bad—inviting an argumentative inference through color-coding. On one page alone, the government switches the color-coding of "Larry Gallegos" three times to make its point: first in black text, then in red text when listed alongside David Duong, and then finally in green text when listed alongside Juarez and Stewart Chen. Compilation Exhibit at 18.

**3. The juxtaposition of unrelated evidence creates a narrative the underlying exhibits do not support.** The proposed exhibit places disparate categories of evidence—communications, financial transactions, calendar entries, photographs, and videos—into a single sequential narrative that invites the jury to draw connections and inferences the underlying exhibits do not make on their own. Those connections are for witnesses to draw and the jury to weigh at trial, not for the government to build into a summary exhibit where the context of each of these events and communications is removed. Furthermore, nothing is preventing the government from presenting certain exhibits side by side to elicit testimony from a witness connecting them for the jury. And nothing prevents the government from arguing such connections during closing argument. But slipping this proposed exhibit in as an admitted exhibit reduces the government's burden to prove its case as all cases must be proven: by introducing the facts through presentation of evidence and arguing them at the close of trial.

- **Andy Duong/Juarez October 7, 2022, Texts and Juarez's "Deal Points" Note.** The proposed exhibit places Juarez's October 7, 2022, text messages with Andy Duong ("She will buy 100 units," "If mayor," "Guarantee," "$30 million contract") immediately before Juarez's imprecisely dated "Deal Points" note. Compilation Exhibit at 2–3. In doing so, it weaves the two into a single narrative. But the proposed exhibit itself lists a range of over five weeks (September 30 to November 6, 2022) for when the note could have been created, and the government otherwise provides no evidence establishing that Juarez actually drafted the note's contents as they appear in the proposed exhibit on the chosen date.
- **Bank Records Placed Beside Communications.** The proposed exhibit places several images of checks directly beside texts and phone calls. This implies that the purported check payments immediately followed or preceded those conversations—even though the images themselves

contradict this inference. For example, Government Exhibits 1423 and 1424 correspond with images of checks from Ciudad Holdings, LLC dated "10/13/2022." Yet the government "decide[d]" to "order" them in the timeline under the bolded header "Payments to Andre Jones" alongside phone call logs between Jones and Juarez more than two months later. Compilation Exhibit at 13–14.

- **Phone Calls Placed Beside Text Messages.** The proposed exhibit includes dozens of phone calls, particularly between Jones and Juarez, immediately alongside text messages, implying that the calls concerned the same subject matter as the surrounding texts. *See, e.g.*, Complication Exhibit at 13. But it should be witness testimony, not the government's say-so, providing the evidence of what was said on those calls.

### B. The government's proposed exhibit summarizes "voluminous" records because it lays out its entire theory of the case.

The government's proposed exhibit is different from a summary of the contents of a particularly unwieldy exhibit or set of esoteric exhibits. In each of the Ninth Circuit cases cited by the government, the court admitted summary exhibits of discrete types of evidence, not timelines of the proponent's entire case in chief, as the government would have here. *Rizk* involved a chart summarizing the real estate transactions at issue in the alleged fraud scheme; *Anekwu*, a chart summarizing foreign bank records; and *Meyers*, a chart summarizing the phone calls and events observed by surveillance teams on a single day in a drug distribution case. *United States v. Rizk*, 660 F.3d 1125, 1130–34 (9th Cir. 2011); *United States v. Anekwu*, 695 F.3d 967, 981–82 (9th Cir. 2012); *United States v. Meyers*, 847 F.2d 1408, 1411–12 (9th Cir. 1988). Here, the government's proposed exhibit weaves together bank records, text messages, call logs, emails, calendar entries, photos, and videos—all toward the ultimate end of proving the conspiracy and bribery charges themselves rather than some constituent factual component. At bottom, the proposed exhibit is a summary of the government's case, incorporating 232 of the government's top 500 exhibits.

The government contends that presenting each underlying record "individually, without a summary connecting the dates and events reflected across the various sources, would consume substantial trial time and make it unnecessarily difficult for the jury to understand the chronological

relationship among those events." ECF No. 287 at 3. Not so. First, there is nothing particularly complex about the vast majority of the underlying exhibits, which comprise written communications, images, and videos requiring no expert analysis or distillation other than excerpting, which the government can easily do (and has done). Second, the government is already planning to "admit most of the underlying records reflected on the timeline" anyway. *Id.* at 4.[1] It cannot simultaneously present these straightforward exhibits while claiming that doing so would be inconvenient or consume substantial time. Third, there is nothing stopping the government from presenting these individual exhibits in whatever order or manner it pleases, including chronologically, across various devices and accounts, or by addressing certain exhibits side-by-side to elicit the testimony necessary for the jury to make its own inferences. Finally, the government's stated purpose—"a summary connecting the dates and events reflected across the various sources"—is what closing argument is for; the government cannot use Rule 1006 as an end run to introduce a summary of its closing argument as an exhibit. The government can certainly use a non-misleading pedagogical device during closing arguments, mooting any suggestion that the jury will be overwhelmed by the evidence without one. However, the jury cannot bring such a device with them for deliberations. *See Wood*, 943 F.2d at 1053; Fed. R. Evid. 107(b).

## IV. CONCLUSION

Defendants respectfully request that the Court deny the government's Motion in Limine No. 1 and preclude it from introducing the timeline attached as Exhibit A to the Priedeman Declaration.

---

[1] The only underlying exhibits the government does not plan to introduce are toll and financial records. ECF No. 287 at 4. Even these are not "voluminous" just because they derive from underlying *discovery* that is voluminous. The government could present straightforward excerpts of these exhibits, a far less drastic approach than adding them to an omnibus summary exhibit. *See Sec. & Exch. Comm'n v. Davenport*, No. 8:21-CV-01427-PD, 2024 WL 5317310, at *2 (C.D. Cal. Sept. 19, 2024) (finding that Rule 1006 did not apply to a video summation of 16 videos because "Defendants could have selected a subset").

DATED: September 3, 2026

Respectfully submitted,

By: */s/ Winston Y. Chan*
Winston Y. Chan
Christine A. Bonomo

GIBSON, DUNN & CRUTCHER LLP

W. Douglas Sprague
Bryanna Walker
COVINGTON & BURLING LLP

Erik Babcock
LAW OFFICES OF ERIK BABCOCK

Attorneys for Defendant Andy Hung Duong