United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**SHENG THAO, ET AL.,**<br>Defendants. | Case No. 4:25-cr-0003-YGR-1<br>Case No. 4:25-cr-0003-YGR-2<br>Case No. 4:25-cr-0003-YGR-3<br>Case No. 4:25-cr-0003-YGR-4<br><br>**PRETRIAL ORDER NO. 3 REGARDING MOTIONS IN LIMINE; GOVERNMENT'S SUPPLEMENTAL PROFFER**<br><br>Re. Dkt. Nos. 287, 289, 290, 292, 294, 295, 296, 297, 298, 299, 300, 302, 303, 304, 308, 349 |

Pending before the Court are six motions *in limine* filed by the government, five motions *in limine* filed jointly by the defendants, two motions *in limine* filed by defendant Sheng Thao, and one motion *in limine* filed by defendant Andy Duong. The government has also filed its supplemental proffer as to the relevance of the Nikki Fortunato Bas call recording pursuant to Pretrial Order No. 2. Having carefully considered the papers submitted, the filings in this case, and for the reasons stated more fully on the record at the pretrial conference held on September 11, 2026, the Court hereby **ORDERS** as follows:

## I. MOTIONS *IN LIMINE* RELATED TO MARIO JUAREZ

First, the Court analyzes the government's motion *in limine* number 2 (Dkt. No. 289) in conjunction with defendants' joint motions *in limine* numbers 2 and 5 (Dkt. Nos. 298, 310-1[1]), as these three motions concern interrelated issues regarding Juarez's testimony.

[1] Defendants initially filed their joint motion *in limine* number 2 at Dkt. No. 304 bearing incorrect footnote citations and then subsequently filed a corrected version at Dkt. No. 310-1. Accordingly, this Order **TERMINATES** Dkt. No. 304.

**Government MIL No. 2: To Preclude Inadmissible Cross-Examination of Juarez**[2]

The motion is **DENIED IN PART, GRANTED IN PART, AND DEFERRED IN PART**.

The government moves to preclude cross-examination of Juarez into civil lawsuits that did not result in judgments on the merits, fraud allegations, prior arrests or charges that did not result in convictions, and other matters under Rules 608, 611, and 403. Defendants argue that Rule 608(b) permits inquiry into specific acts that are probative of Juarez's "character for truthfulness or untruthfulness," regardless of litigation posture, timeframe, or lack of criminal conviction. *See* Fed. R. Evid. 608(b). Further, although defendants concede that Rule 608(b) prohibits admission of extrinsic evidence, they argue that extrinsic evidence of certain prior acts is admissible under Rule 404(b) and as inextricably intertwined with the charged conduct.

Having reviewed the alleged conduct that defendants seek to raise during the cross-examination of Juarez—which is briefed in defendants' opposition to the motion as well as in their supplemental briefing and *ex parte* filing[3]—the Court finds that such instances are generally appropriate for inquiry under Rule 608(b) because they are probative of Juarez's character for truthfulness or untruthfulness. Accordingly, the motion is generally denied on this ground.

However, defendants have not laid sufficient foundation to show that the alleged incidents are probative of any motive, intent, *modus operandi*, or other permissible purpose under Rule 404(b). For example, defendants' proffer that Jaurez lies or otherwise fabricates allegations and makes threats to deflect from his misbehavior are not sufficiently distinctive to constitute *modus operandi*. As such, although defendants may inquire into specific instances of conduct that are probative of Juarez's character for truthfulness or untruthfulness, they may not introduce extrinsic evidence regarding the same.[4] The Court further notes that such instances may be more or less

[2] The government's motion for leave to file motion in limine number 2 with two excess pages (Dkt. No. 290) is **GRANTED**.

[3] Defendants' request to submit further impeachment material *ex parte* and under seal (Dkt. No. 348), which was thereafter filed at Dkt. No. 349, is **GRANTED**.

[4] One exception is the government's request to limit "cross-examination relating to allegations that Juarez misappropriated money from Evolutionary Homes." Dkt. No. 289 at 10 (government's proposed order). This request is overbroad and, in any event, evidence of such allegations is inextricably intertwined with the charged conspiracy and probative of Juarez's

probative given their age and the gaps in timing. As such, the Court will entertain Rule 403 objections to the extent the cross-examination becomes unfairly prejudicial or cumulative.

Lastly, the Court will discuss with the parties' the government's request for an order that defendants shall provide the government with advanced notice of any extrinsic acts or prior activity they intend to raise on cross-examination of Juarez. The parties shall meet and confer on the topic in advance of the next pretrial conference.

As to the government's request to inquire into the June 9, 2024 shooting during its direct examination of Juarez, the Court defers ruling until after the tentative close of the direct examination. At that point, defendants shall immediately indicate whether they seek to inquire about the shooting and related issues during cross. If so, the government may then continue its direct examination on this topic *only*, if necessary.

**Defendants' Joint MIL No. 2: To Preclude Impermissible Expert Testimony**

The motion is **DENIED IN PART AND EVIDENCE EXCLUDED IN PART, ON OTHER GROUNDS, WITH INSTRUCTIONS**.

Defendants jointly move to preclude testimony by Juarez on the following topics, namely whether (1) it is common practice in Oakland for a politician's spouse to be used as an intermediary to get around conflict of interest issues; (2) Juarez understood that it was against the law for him to coordinate independent expenditures with Thao; (3) straw donations differ from bundled donations; and (4) a cool-off period prohibits donations to a candidate from city contractors for 90 days after the public official action regarding the contract. Defendants argue that Juarez would be offering testimony that goes beyond an average person's understanding of Oakland politics, and therefore he should be deemed an "expert." According to defendants, such expert testimony would be improper given the government's failure to provide a written expert

---

possible bias or motivation in testifying. Accordingly, extrinsic evidence is permitted on this issue.

To the extent defendants seek to admit other extrinsic evidence during Juarez's cross examination that they contend is inextricably intertwined with the charged conspiracy—including evidence that Juarez allegedly defrauded Butterfly Printers—they must raise the issue with the Court by making a specific proffer as to what evidence they seek to introduce prior to presentation to the jury.

disclosure, Juarez's lack of qualification as an expert, and the lack of any basis for deeming his expert testimony relevant and reliable. Defendants also contend that Juarez's testimony regarding general political practices applicable to Oakland as a whole are conclusory and unreliable. The government opposes the motion, arguing that Juarez is offering lay testimony based on his general familiarity with "common practices he has witnessed during his decades of involvement in East Bay politics" and his personal "understanding of what he believed was permitted under Oakland ethics rules." (Dkt. No. 323 at 2, 4.)

By way of background, lay testimony must be "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *accord United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022). A proper lay opinion's foundation is general "familiarity with the subjects" of the proposed testimony. *United States v. Holmes*, 163 F.4th 547, 560 (9th Cir. 2025). In contrast, expert testimony requires "knowledge, skill, experience, training, or education" in a specific subject. Fed. R. Evid. 702.[5]

As to the defendants' request to preclude testimony on the other three topics, the Court finds that Juarez is offering lay testimony rationally based on his perception, experience, and familiarity with conducting the alleged bribery scheme with the Duongs. Defendants have not identified any such specific expert area applicable here. Thus, the Court cannot find that Juarez has specialized knowledge, skill, experience, training, or education in the arena of federal, state, or municipal campaign finance laws. The motion on those grounds is denied.

That said, the Court is not inclined to allow evidence beyond the scope of the indicted conduct unless appropriate under the rules of evidence. Here, the government has not provided any foundation on Juarez that would demonstrate that he possesses familiarity or perception of Oakland politics beyond the charged conspiracy. Accordingly, Juarez's testimony regarding generalized, undefined political practices involving the generic use of spouses as intermediaries, independent expenditure coordination, and the need for a cool-off period, is excluded. The

[5] At the hearing, the government stated that it does not intend to elicit testimony from Juarez as to straw donations. Accordingly, the motion as to that evidence is denied as moot.

government is instructed to limit Juarez's testimony on these three topics only to the operations of the charged bribery scheme and conspiracy.

**Defendants' Joint MIL No. 5: To Exclude Evidence of Prior Alleged Bad Acts**

The motion is **DENIED**.

Defendants jointly seek to exclude all of Juarez's past statements and testimony regarding: (1) Exhibit 540, a video of Juarez's toast on October 5, 2022 where he makes comments as to past incidents of bribery conducted by himself and the Duongs; (2) statements numbered 1–9 regarding other purported briberies conducted by himself and/or the Duongs; (3) statement 10 regarding the Duongs' deletion of evidence from a security system; (4) statement 11 regarding A. Duong's prior blackmail attempts; and (5) statement 12 regarding the usage of "vague consultant contracts" to launder money to three individuals, including Bryan Azevedo. Defendants argue that this evidence is unrelated to the charged scheme and would prejudice the jury into believing that defendants have a propensity to commit bribery or have poor moral character. The government disagrees, contending that nine statements describing past briberies deliver context for the claims made in Juarez's toast video. According to the government, Juarez's statements and testimony regarding defendants' prior use of blackmail and deletion of security camera footage provide proper context for the jury to understand the altercations, discussions, photographs, and videos at issue in the charged bribery scheme. Lastly, the government contends that Juarez's testimony into the Duongs' usage of consultant contracts to allegedly launder money to Azevedo provides insight into the Duongs' bribery scheme with Azevedo.

Under Ninth Circuit law, evidence of prior bad acts may be necessary to "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the [alleged] crime," even if it is not directly connect to the charged act. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). This includes "other act testimony . . . intended to establish" a witness's relationship of trust with a defendant. *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).

*First*, in Pretrial Order No. 2, the Court denied defendant's motion to exclude Exhibit 540.

For the same reasons, the Court also denies defendant's instant motion to exclude Exhibit 540.

*Second*, given that the alleged conspiracy begins around the October 2022 timeframe of Exhibit 540, the jury will ultimately decide whether Juarez's statements reveal truth or not. Excluding them in their entirety does not serve that purpose. Rather, cross-examination commensurate with the extent to which the government opens the door to these topics is the more appropriate course. Therefore, the motion as to statements 1 through 9 is denied. Whether, and the extent to which, the government pursues the issue remains uncertain.

*Third*, testimony regarding deletion of camera footage by the Duongs is directly relevant to the "absence of surveillance footage from the [alleged] May 3, 2024 assault of Juarez at CWS," (Dkt. No. 328 at 6), which the Court has held is inextricably intertwined with the charged conspiracy. Accordingly, the motion as to statement 10 is denied.

*Fourth*, A. Duong's alleged taking of photographs and videos of politicians such as Azevedo, Gallegos, and Thao so that he could later use the material as blackmail is another central aspect of the charged conspiracy. Further testimony from Juarez regarding A. Duong's purported use of blackmail is therefore relevant to the government's case. Accordingly, the motion as to statement 11 is denied.

Lastly, in Pretrial Order No. 2, the Court denied defendants' motion to exclude evidence of the Duongs' bribery scheme with Azevedo. Testimony and statements by Juarez as to the consultant contracts that allegedly laundered money to Azevedo in this bribery scheme are therefore relevant. Accordingly, the motion as to statement 12 is denied.

## II. GOVERNMENT'S REMAINING MOTIONS *IN LIMINE*

Next, the Court considers the government's remaining motions *in limine*. (Dkt Nos. 287, 292, 294, 295, 296.)

**No. 1: To Admit Chronological Summary Exhibit Under F.R.E. 1006**

The motion is **DENIED**.

The government moves to admit a chart containing a summary of evidence under Federal Rule of Evidence 1006. That rule permits the Court to "admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or

United States District Court
Northern District of California

photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence." Fed. R. Evid. 1006(a). Defendants argue that the chart, which is attached as Exhibit A to the declaration of Molly Priedeman in support of the motion, is inadmissible on the grounds that it is (1) impermissibly argumentative and (2) does not serve the purpose of the rule by stitching "together virtually every category of proof in the case toward the single end of proving the conspiracy and bribery charges themselves." (Dkt. No. 331 at 1.)

For the reasons stated more fully on the record, the Court agrees with the defense and finds that the chart is argumentative because it does not neutrally present the evidence. Examples include section headers and event descriptions that characterize the evidence, the colors of certain text, and the ordering of certain events in ways that support the government's narrative. An exhaustive chronology of the government's case in chief is also unnecessary and transforms the chart into an impermissible "pedagogical device[]." *See United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991). For these reasons, the motion is denied.

**No. 3: To Admit Certain Statements as Non-Hearsay**

The motion is **GRANTED IN PART AND DENIED IN PART**.

The government moves to admit various written out-of-court statements identified by Bates number that it claims are admissible for a non-hearsay purpose or under a hearsay exception. The Court considers each statement individually, as each requires independent analysis.

**OAK 184249-250:** The government seeks to admit a March 10, 2023 text exchange between Thao and Leigh Hanson—Thao's purported chief of staff at the time[6]—in which Hanson conveyed information regarding the contemplated appointment of Larry Gallegos to a City position. The message at issue also conveys a statement by the former City Administrator Harold Duffey. The Court finds that the messages are being offered for a non-hearsay purpose to show Thao's state of mind and knowledge with respect to the Gallegos appointment. Moreover, Duffey appears on the government's witness list and thus may testify as to his own perspective. (*See* Dkt.

[6] Because defendants do not contest that Hanson was Thao's chief of staff, the government has also made a sufficient proffer to establish that Hanson was acting as Thao's agent when making the statements at issue in this motion.

No. 253.) Accordingly, the motion is granted as to these messages.

**OAK 184263-264:** The government seeks to admit July 4, 2023 text messages between Thao and Hanson regarding invoices for the trip to Vietnam. The Court finds that these messages are admissible as evidence regarding Thao's state of mind as to who was paying for the trip and subsequent actions she took to ensure that such payments were set up correctly. Moreover, defendants' Rule 401 and 403 objections lack merit. The relevance of the Vietnam trip is explained in greater detail in the Court's Pretrial Order No. 2, and the issue of how it was financed is probative of the charged conspiracy. Accordingly, the motion is granted as to these messages.

**OAK-0290627-629:** The government seeks to admit emails from July 3 and 4, 2023 involving Hanson, D. Duong, and Teresa Hoang wherein Hanson and Hoang discuss whether the Vietnamese American Business Association ("VABA") would be paying for the people invited on the Vietnam trip. The government asserts that Hanson's statements are admissible against Thao as statements of her agent, which defendants do not dispute. The government also asserts that Hoang's statements are admissible against D. Duong as statements of his agent, which defendants dispute for lack of foundation. The government further argues that the emails constitute an admissible business record under Rule 803(6) and, in any event, are offered for the non-hearsay purpose of showing that Thao and D. Duong knew that the VABA would arrange and pay for travel for Thao's invited guests.

Without more foundation as to whether the emails at issue were "kept in the course of a regularly conducted activity of a business" and that "making the record was a regular practice of that activity," the Court finds that there is insufficient evidence to conclude that these emails constitute an admissible business record. *See* Fed. R. Evid. 803(6). Moreover, although the Court finds that the government has laid a proper foundation for establishing that Hanson's statements are admissible against Thao as statements of her agent, the Court lacks sufficient evidence with respect to Hoang's statements as to D. Duong. There also is insufficient evidence before the Court to establish that D. Duong personally reviewed the emails to show either his knowledge or constructive knowledge. Accordingly, the Court denies the motion as to this evidence without prejudice to reconsider if the government can lay the proper foundation. If needed, a limiting

United States District Court
Northern District of California

instruction will be provided.

**OAK-0290786-788:** The government moves to admit emails from September 13 and 15, 2023 involving D. Duong, Hoang, and Kristina Duong in which K. Duong and Hoang discuss payments of travel costs for those that attended the Vietnam trip. As with the emails described above, the government has not made a sufficient proffer to establish that the emails constitute a business record nor that Hoang's statements are admissible as statements of D. Duong's agent. The government also has not laid a sufficient foundation to establish that the emails show D. Duong's knowledge or "explain the subsequent actions by Thao, D. Duong, and others regarding the trip." (Dkt. No. 292 at 3.) Accordingly, the motion as to this evidence is denied without prejudice to reconsider upon laying a proper foundation.

**OAK-0185435-436:** The government moves to admit a text conversation between Former City Administrator Jestin Johnson and Thao in January 2024[7] regarding Thao's request for Johnson to "set up a time to go tour the modular units with Essential Homes." (Dkt. No. 292 at 4.) The Court finds that Thao's statements here are admissible against her as a party admission. However, the government has failed to proffer sufficient evidence to establish that Johnson's statements are admissible as statements of Thao's agent, nor has the government adequately established that Thao's response to Johnson qualifies as an adoptive admission. Regardless, the Court finds that Johnson's statements are admissible to show Thao's knowledge and potentially her subsequent actions in allegedly working to secure a contract between the City and Evolutionary Homes. Accordingly, the motion is granted as to these messages.

**OAK-0485068-079:** The government moves to admit an email conversation involving D. Duong, A. Duong, Juarez, and others dated April 20 to 24, 2024[8] regarding disputes between the Duongs and Juarez. Defendants object only on prejudice grounds. Upon review, the Court

---

[7] The government's brief erroneously describes these text messages as taking place in 2023. The underlying exhibit reflects that they were exchanged in 2024.

[8] The government's brief erroneously describes these emails as taking place in both 2023 and 2026. Defendants' opposition also erroneously describes these emails as taking place in 2023. The underlying exhibit reflects that they were exchanged in 2024.

United States District Court
Northern District of California

disagrees that the emails are as prejudicial as defendants argue, especially given their theory that Juarez repeatedly lies or exaggerates the truth. Accordingly, the motion is granted as to these emails.[9] That said, the Court will entertain a request for limited redactions under Rule 403.

**COO_0003912_0001:** The government seeks to admit a March 10, 2023 text message sent by Duffey to Emily Weinstein, a former City of Oakland employee, regarding the appointment of Gallegos. Given the content of the messages provided in the government's exhibit and the people involved, the Court finds that this message is presumptively an admissible business record under Rule 803(6). However, the government must lay a proper foundation for admitting it as such. The motion is therefore tentatively granted as to this message, and the Court declines to address the parties' other argument regarding this evidence.

**OAK-0184318:** The government seeks to admit a group text message involving Duffey, Thao, and Hanson in which Duffey sent a message on March 13, 2023 regarding the appointment of Gallegos. The Court finds that this statement is admissible to show Thao's knowledge of Gallegos' appointment process. The motion is therefore granted on this ground. To the extent the government lays a proper foundation, the message may also be admissible as a business record under Rule 803(6) or to explain subsequent actions. However, on the record before it, the Court concludes that the government has not laid a proper foundation to establish that the message is a present sense impression.

**No. 4: To Exclude Impermissible Cross-Examination of Johnson, Duffey, Hanson, and Harami**

The motion is **GRANTED IN PART AND DENIED IN PART.**

The government moves to limit cross-examination of four witnesses—Johnson, Duffey, Hanson, and Brandon Harami—on the following topics: (1) text messages sent by Johnson and Duffey in or around 2024 describing female colleagues and subsequent employment actions taken by their respective employers; and (2) lawsuits filed by Hanson and Harami filed against the City

[9] The Court also notes that A. Duong previously argued that evidence of the May 3, 2024 altercation that followed these emails was not inextricably intertwined with the charged conspiracy, in part, because there was other evidence to explain the falling out between Juarez and the Duongs—notably, the email at issue here. *See* Dkt. No. 258 at 7.

of Oakland following their employment terminations, which include allegations that Hanson wrote a racially derogatory note. The government argues that cross-examination on these topics should be excluded because (1) they are irrelevant under Rules 401 and 402; (2) there is substantial risk of prejudice, confusion of the issue, undue delay, and time wasting under Rule 403; and (3) this evidence is not probative of the witnesses' characters for truthfulness or untruthfulness under Rule 608(b). Defendants respond that they are entitled to examine the witnesses' possible racial and/or gender biases—which are relevant to their interactions with certain defendants and others involved in the case—and that Rule 608(b) does not bar introduction of extrinsic evidence that tends to show bias.

At the hearing, defendants stated that they do not oppose the government's motion with respect to Harami's cross-examination. Accordingly, the motion as to that evidence is granted.

As to the government's request to exclude cross-examination into possible biases held by Johnson, Duffey, and Hanson, the Court finds that this evidence is relevant and not unfairly prejudicial because it will help the jury evaluate the witnesses' credibility and their motivations in interacting with certain defendants and others involved in the case. Nor is evidence of bias barred by Rule 608(b). *See United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) ("Rule 608(b) does not bar introduction of evidence to show that the witness is biased."). Accordingly, the motion is denied as to cross-examination regarding the text messages and the note, without prejudice for the government to reraise a Rule 403 objection if the cross-examination becomes unnecessarily cumulative. Moreover, because defendants stated that they do not plan to elicit testimony regarding the firings and/or related litigation involving these witnesses unless the government opens the door, the motion as to that evidence is denied as moot. However, defendants must confirm that the Court agrees the door has been opened before seeking to elicit such testimony.

**No. 5: To Preclude Unfounded Arguments and Testimony Regarding Politicization**

The motion is **GRANTED**.

The government moves under Rules 401, 403, and 103 to preclude defendants from arguing that the prosecution of this case or the investigative steps leading to the prosecution were the result of political bias, politicization, or other improper motives, including to alter the outcome

United States District Court
Northern District of California

of the election to recall Thao in November 2024. The government also seeks to preclude defendants from soliciting testimony on these issues without obtaining leave of the Court after establishing the testimony has a foundation, is relevant, and is admissible. Defendants oppose the motion as vague and overbroad. Although they concede that they "may not argue any potential political bias or motive without a factual basis," they argue that they may present "politically charged facts and evidence [that] are relevant to any potential defenses to the government's allegations." (Dkt. No. 337 at 1.)

For the reasons stated more fully on the record, defendants have not proffered sufficient evidence to support any argument that this particular investigation and the prosecution of this case was politically motivated or otherwise improper. The timing of the recall or the fact that a government witness voted in favor of the recall does not suffice. Without more, such argument is without foundation and therefore would be unfairly prejudicial. Accordingly, the motion is granted as to any argument regarding the conduct and motivations of the prosecutors and federal agents involved in this case. However, evidence of the recall itself is not covered by the Court's ruling here.

**No. 6: To Exclude Evidence of D. Duong's Good Character and Acts**

The motion is **DENIED IN PART AND GRANTED IN PART**.

The government moves to exclude evidence of David Duong's good character under Rules 401, 403, and 404(a), including (1) testimony regarding his 2026 documentary titled *The King of Trash*; (2) reference to awards, accolades, and commendations he has received for community projects; and (3) reference to his donations to community causes. The government also argues that specific instances of D. Duong's good conduct should be excluded under Rule 405(b) because "no trait of character is an 'essential element of a charge, claim, or defense' in this case." (Dkt. No. 296 at 2 (quoting Fed. R. Evid. 405(b)).) D. Duong opposes on the grounds that the evidence is admissible for non-propensity purposes, including to rebut allegations of D. Duong's corrupt intent, and would not result in jury confusion.

As to the government's request to exclude testimony regarding *The King of Trash*, the motion is denied as moot because D. Duong states that the "defense does not intend to offer

evidence concerning this film." (Dkt. No. 335 at 1 n.1.)

As to the other broad categories of evidence described in the motion, D. Duong has not clearly articulated how such evidence would be introduced, especially if he chooses not to testify. Accordingly, although the Court generally agrees that evidence which helps rebut the government's *quid pro quo* theory is admissible, even if it incidentally reflects positively on D. Duong's character, the motion is granted without prejudice to reconsider upon a proffer of how the specific evidence that the government seeks to exclude would be introduced.

## III. DEFENDANTS' REMAINING MOTIONS *IN LIMINE*

Next, the Court addresses defendants' remaining motions *in limine*. These include four of defendants' joint motions (Dkt. Nos. 297, 302, 303), two motions by Thao (Dkt. No. 300, 308), and one motion by A. Duong (Dkt. No. 299).

### A. DEFENDANTS' REMAINING JOINT MOTIONS

#### No. 1: To Exclude Reference to Evidence Having Been Obtained by "Warrant" or With "Court-Authorization"

The motion is **DENIED.**

Defendants jointly move to exclude all references to evidence having been obtained by "warrant" or with "court-authorization." Defendants argue that these references would "insinuate[] to the jury that a federal judge made a credibility finding as to the evidence," which could prejudicially lead the jury to believe that a federal judge has decided a defendant's guilt. (Dkt. No. 303 at 2.) The government opposes this motion, contending that such references do not indicate or infer a defendant's guilt, and that exclusion of these references could "affirmatively mislead the jury about the circumstances in which evidence was obtained," leaving the jury "with the mistaken impression that investigators acted without legal authorization." (Dkt. No. 325 at 1.) Furthermore, the government states that it will not elicit extensive testimony about the process by which it obtained warrants.

"The government does not have to prove that [evidence gathering] was properly authorized by a judge to establish that [that the evidence is] true, accurate, and authentic." *United States v. Brooks*, 508 F.3d 1205, 1211 (9th Cir. 2007). At-length discussions about an authorization process

could imply "that the government and courts were monitoring" a defendant's activity and had already determined guilt. *Id*. at 1210; *accord United States v. Wells*, Case No. 21-30121, 2022 WL 17668096, at *2 (9th Cir. Dec. 14, 2022). However, concise discussions regarding these court authorizations do not constitute impermissible vouching if the prosecution does "not suggest that any government attorneys, judges, or other officials believed that [the defendant] was guilty." *United States v. Pedregon*, 324 F.App'x 573, 575 (9th Cir. 2009).

Minimal references to standard processes are not overly prejudicial. The Court will balance potential prejudice to defendants with the government's need to demonstrate to the jury that its searches and seizures were undertaken with legal permission. Here, the government has proffered that it will not be "disclosing the content of the warrant applications, describing in detail the approval process by which they obtained the warrant, or suggesting that judicial authorization is indicative of the [d]efendants' guilt." (Dkt. No. 325 at 2.) Accordingly, the motion is denied. However, to the extent that the government elicits more extensive testimony about court authorization of these warrants that may suggest defendants' guilt, the Court will entertain Rule 403 objections.

**No. 3: To Exclude Evidence of Andre Jones's Financial Condition**

The motion is **DENIED WITH INSTRUCTIONS**.

Defendants jointly move to preclude testimony or other evidence regarding Jones's financial condition, including the following trial exhibits:

1. Exhibit No. 30, pages 2258, 2845–2847, and 3239 (text messages from Thao to Andre Jones on April 3, 2022, March 23, 2023, and November 14, 2023).
2. Exhibit No. 1250 (Toro Property tenant statement for Thao and Jones from October 15, 2021 to June 4, 2024).
3. Exhibit No. 1344 (statements from Jones's Bank Account No. 8848 from December 14, 2023 to July 16, 2024).
4. Exhibit No. 1346 (statements from Jones's Bank Account No. 8848 from April 27, 2022 to February 13, 2024).
5. Exhibit No. 1507 (statements from Jones's Bank Account No. 2306 from December

United States District Court
Northern District of California

25, 2019 to April 25, 2022).

Defendants argue that proof of Jones's financial condition constitutes inadmissible character evidence under Rule 404(b) and does not indicate whether he had a desperate need for money or an unexplained and abrupt improvement in financial status. The government disagrees, stating that the testimony, financial records, and text messages prove Jones's alleged receipt of bribe payments, that Jones and Thao shared living expenses and needed extra money to pay the bills, and that Jones changed his financial behavior after receiving payments from Juarez. The bank statements, apparently consisting of hundreds of pages, have not been provided to the Court.

In general, evidence of financial condition that purely demonstrates "poverty is not admissible to show motive, because it is of slight probative value and would be unfairly prejudicial to poor people charged with crimes." *United States v. Mitchell*, 172 F.3d 1104, 1107 (9th Cir. 1999); *see also United States v. Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1989) (holding the same). However, a court may admit evidence of financial condition to demonstrate motive where the evidence demonstrates an urgent need for money paired with an "unexplained and abrupt change in [financial] status for the better." *Mitchell*, 172 F.3d at 1109. Evidence of need includes a defendant's inability to "pay for things he needed to have done," "living beyond his means," falling "behind in [owed] payments," and losing money after an "unsuccessful investment." *Jackson*, 882 F.2d at 1449–1450. Such evidence also includes owing "substantial sums." *United States v. Feldman*, 788 F.2d 544, 577 (9th Cir. 1986).

At the hearing, the government stated that it will strike Exhibit No. 1507 as an error. Accordingly, the motion as to Exhibit No. 1507 is denied as moot.

As to the other contested evidence, the Court agrees with the government that Rule 404(b) does not apply. Jones's financial records and text messages plausibly indicate shared living expenses with Thao, an urgent need for money to pay these expenses that was beyond the couple's means, and sudden receipt of installment payments from Juarez that abruptly improved Jones's financial condition. The subsequent and sudden usage of these payments to cover shared rent, utility, and other bills provide a plausible motive for Jones's and Thao's participation in the alleged crime. Accordingly, the Court denies the motion as to potential testimony related to

United States District Court
Northern District of California

Jones's financial condition and Exhibit Nos. 30, 1250, 1344, and 1346, which appear to be limited in scope given the extent of the financial recorders produced. However, as to Exhibit Nos. 1344 and 1346, the government is instructed to admit and annotate only those bank records that are relevant to the charged bribery scheme. The parties are ordered to meet and confer on the scope of these bank records to be admitted and annotated.

**No. 4: To Exclude Evidence of Interactions Between Jones and City Employees on June 20, 2024**

The motion is **GRANTED**.

Defendants jointly seek to prohibit the government from eliciting or introducing evidence concerning Jones's interactions with City of Oakland employees on June 20, 2024, specifically that Jones entered Sheng Thao's office before she returned, refused to leave when told to do so, and was escorted out of City Hall. Defendants argue that this testimony is irrelevant to the government's theory of the case, occurred after the alleged conspiracy had expired, and would prejudice the jury into thinking of Jones as arrogant or rude. The government disagrees, contending that the testimony will demonstrate Jones's perception of his access to Oakland City Hall and involvement in Thao's mayoral affairs.

Evidence is relevant if it has "any tendency to make a fact more or less probable." Fed. R. Evid. 401. The Court must balance the probative value of evidence with the danger of "unfair prejudice," Fed. R. Evid. 403, which "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (internal citations omitted).

The government seeks to demonstrate that Jones used his proximity to Thao to advance the charged bribery scheme. Proof of Jones having easy access to Thao's office would be relevant to this argument. However, the June 20, 2024 incident demonstrated the opposite: that Jones lacked unfettered access to Thao's office and needed the permission of Thao's staff to enter. Therefore, the June 20, 2024 incident is irrelevant to the alleged conspiracy. Meanwhile, descriptions of Jones's behavior during the incident could lead the jury to interpret Jones as "potentially

dangerous or at least rude, disruptive, a bully and/or entitled." (Dkt. No. 302 at 4.) Potential prejudice to Jones clearly outweighs the probative value of the evidence. Accordingly, the motion is granted.

**B. SHENG THAO'S MOTIONS**

**No. 1: To Preclude Evidence of Uncharged Ethics Conduct**

The motion is **DENIED**.

Thao moves to preclude Exhibits 1141 through 1152 from use in the government's case-in-chief, in any rebuttal case, or through the testimony of government witness Jelani Killings. Thao also moves to preclude use of Exhibits 1141–1152 as extrinsic proof on cross-examination under Federal Rule of Evidence 608. The government argues that these exhibits all involve Thao's training on and knowledge of ethics rules and laws within Oakland, which demonstrate that she understood the illegality of her alleged conduct in the charged bribery scheme. Thao disagrees, claiming that the material covered in the ethics trainings and forms do not encompass the alleged crime and would prejudice the jury into believing that Thao acted unethically while in office.

At the hearing, the government stated that it does not intend to elicit evidence or testimony regarding Exhibit 1151. Accordingly, the motion as to that evidence is denied as moot.

As for the remaining exhibits, evidence that an elected public official violated ethics rules they were trained on is "probative of lack of mistake and lack of accident" and speaks to the "intent and motive of the crimes charged." *United States v. Kelly*, Case No. 21-402 (RS), 2023 WL 4032011, at *5 (N.D. Cal. June 14, 2023) (*aff'd United States v. Kelly*, Case No. 24-1825, 2025 WL 2375215, at *2) (9th Cir. Aug. 15, 2025)). The remaining exhibits all contain or regard admonishments to Thao to refrain from engaging in bribery, misuse of city resources, and accepting gifts in exchange for influence, legislation, or prospective employment. All of this conduct that the City of Oakland allegedly trained Thao to avoid is relevant to the charged bribery scheme. Accordingly, the motion as to Exhibits 1141–1150 and 1152 is denied.

**No. 2: To Preclude Evidence of Staff Pay Issues**

The motion is **DENIED**.

Thao seeks to preclude the government from introducing testimony concerning pay issues

raised by her former staff, including (but not limited to) potential testimony from Julie Caskey, Leigh Hanson, Harold Duffey, and Noah Finneburgh. Thao argues that there is no connection between the independent campaign expenditures made on her behalf in the alleged bribery scheme and the compensation paid to her campaign staff, and that any insinuation that the two are connected would prejudice the jury against Thao. Thao also contends that because the testimony regarding staff pay is unconnected to the alleged bribery, the government has not offered a valid non-propensity purpose for its admission under Rule 404(b). The government disagrees, stating that Thao's lack of "sufficient financial resources to pay campaign expenses" led to her alleged decision to seek the $75,000 negative mailer from the Duongs and Juarez against her primary opponent. (Dkt. No. 327 at 1.)

As the Court held in its ruling on defendants' joint motion *in limine* number 3, evidence of financial condition can be admitted to prove motive for a financial crime if it demonstrates that defendants were falling behind on payments for necessary items and experienced an "unexplained and abrupt change in [financial] status for the better." *Jackson*, 882 F.2d at 1449; *see also Mitchell*, 172 F.3d at 1109–10 (holding the same). Testimony regarding Thao's purported inability to pay her campaign staff may demonstrate that Thao had serious need for money to cover her political operations. This could reveal her motivations for allegedly accepting $75,000 in independent campaign expenditures from the Duongs, who funded negative mailers against her opponents. Accordingly, the motion is denied.

### C. ANDY DUONG'S MOTION

**No. 1: To Exclude Irrelevant and Prejudicial Evidence and Non-Noticed Evidence of Other Crimes, Wrongs, or Acts**

The motion is **DENIED**.

A. Duong moves to exclude two categories of evidence he contends are irrelevant, prejudicial, and non-noticed evidence of other acts under Rule 404(b): (1) testimony regarding an alleged cash payment from A. Duong to Bryan Azevedo during the COVID-19 pandemic and (2) portions of a recorded conversation between A. Duong and Oakland City Councilmember Kevin

United States District Court
Northern District of California

Jenkins.

In opposition, the government states that it "does not intend to introduce the separate COVID-era payments identified in Duong's motion." (Dkt. No. 326 at 1.) Accordingly, the motion as to the first category of evidence is denied as moot.

As to the second category, the government opposes exclusion on the grounds that the entire recording is direct evidence of the charged conspiracy to secure City Council support for Evolutionary Homes and thus does not implicate Rule 404(b).

Upon review, and for the reasons explained in greater detail on the record and in the Court's Pretrial Order No. 2, the Court agrees with the government. The challenged portions of the recording are admissible because they are intrinsic to and probative of the charged conspiracy. Notably, they link potential benefits and political leverage with A. Duong's contemporaneous pitch for Evolutionary Homes to the Councilmember. Such background is important for understanding the full context of the alleged pitch. Moreover, the fact that there is gratuitous language in the recording is not reason to exclude it because the jury is entitled to know the natural ways in which these individuals speak**.** Accordingly, the motion as to the second category of evidence is also denied.

## IV. NIKKI FORTUNATO BAS CALL RECORDING

Lastly, in Pretrial Order No. 2, the Court deferred ruling on A. Duong's motion to exclude a recording of his phone call with Fortunato Bas and ordered the government to supplement its proffer as to the call's relevance. The government has now filed its proffer and argues, *inter alia*, that the "phone call was in furtherance of the conspiracy because it was intended to help achieve one of its goals, namely helping CWS with its land deal." (Dkt. No. 358 at 2.)

Having reviewed the proffer and the transcript of the recording provided therein, the Court finds that the recording is inextricably intertwined with the charged conduct. Accordingly, A. Duong's motion to exclude this evidence (Dkt. No. 219) is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Government's Motion *In Limine* No. 1 is **DENIED**.

United States District Court
Northern District of California

- Government's Motion *In Limine* No. 2 is **DENIED IN PART, GRANTED IN PART, AND DEFERRED IN PART**.
- Government's Motion *In Limine* No. 3 is **GRANTED IN PART AND DENIED IN PART**.
- Government's Motion *In Limine* No. 4 is **GRANTED IN PART AND DENIED IN PART.**
- Government's Motion *In Limine* No. 5 is **GRANTED**.
- Government's Motion *In Limine* No. 6 is **DENIED IN PART AND GRANTED IN PART**.
- Defendants' Joint Motion *In Limine* No. 1 is **DENIED**.
- Defendants' Joint Motion *In Limine* No. 2 is **DENIED IN PART AND EVIDENCE EXCLUDED IN PART, ON OTHER GROUNDS, WITH INSTRUCTIONS**.
- Defendants' Joint Motion *In Limine* No. 3 is **DENIED WITH INSTRUCTIONS**.
- Defendants' Joint Motion *In Limine* No. 4 is **GRANTED**.
- Defendants' Joint Motion *In Limine* No. 5 is **DENIED**.
- Thao's Motion *In Limine* No. 1 is **DENIED**.
- Thao's Motion *In Limine* No. 2 is **DENIED**.
- A. Duong's Motion *In Limine* No. 1 is **DENIED**.
- A. Duong's Motion to Exclude Evidence of Other Crimes, Wrongs, or Acts (Rule 404(b) Evidence) as to the Fortunato Bas call recording is **DENIED** as inextricably intertwined.

With respect to all rulings, any change in circumstance may be raised with the Court to consider whether the evidence should be offered to the jury.

This Order terminates Docket Nos. 287, 289, 290, 292, 294, 295, 296, 297, 298, 299, 300, 302, 303, 304, 308, 349.

**IT IS SO ORDERED.**

Dated: September 21, 2026

**YVONNE GONZALEZ ROGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**