# Exhibit 2


BANK OF AMERICA
Help avoid scams
Don't trust caller ID
Don't share personal information or codes
Use caution when asked to act immediately
Beware of requests to send money to resolve fraud
Scan here to learn about the red flags of scams:
10% post-consumer content.
Protect your personal information before recycling this document.

# Exhibit 3

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

*1301 Clay Street Suite 340S*
*Oakland, California 94612*

*(510) 637-3680*
*FAX:(510) 637-3724*

May 19, 2026

**BY EMAIL**

JEFFREY TSAI
DARRYL TARVER
jeff.tsai@us.dlapiper.com
darryl.tarver@us.dlapiper.com
Counsel for Defendant Sheng Thao

MARK GOLDROSEN
SHAWN HALBERT
markgoldro@aol.com
shawn@shawnhalbertlaw.com
Counsel for Defendant Andre Jones

WINSTON CHAN
DOUGLAS SPRAGUE
ERIK BABCOCK
HANNAH STONE
CHRISTINE BONOMO
wchan@gibsondunn.com
dsprague@cov.com
erik@babcocklawoffice.com
hstone@gibsondunn.com
cbonomo@gibsondunn.com
Counsel for Defendant Andy Duong

ED SWANSON
AUGUST GUGELMANN
JEFFREY SCHENK
NEAL STEPHENS
ed@smllp.law
august@smllp.law
jbschenk@jonesday.com
nstephens@jonesday.com
Counsel for Defendant David Duong

Re: *United States v. Sheng Thao et al.*, CR 25-00003 YGR
Disclosures pursuant to Federal Rule of Evidence 404(b)

Dear Defense Counsel:

The government hereby provides this notice that it may introduce the evidence discussed in this letter at trial. We believe much of the evidence discussed below is inextricably intertwined with the charged conduct or otherwise not "[e]vidence of a crime, wrong, or other act" and therefore not subject to Federal Rule of Evidence 404(b). To the extent that any of the evidence is subject to Federal Rule of Evidence 404(b), however, we provide notice with this letter.

Federal Rule of Evidence 404(b) requires, upon a defendant's request, that the government provide reasonable notice of the nature of evidence of other crimes, wrongs, or acts that it intends to introduce. "Rule 404(b) applies solely to evidence of 'other' acts, not to evidence of the very acts charged as crimes in the indictment." *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016). The Ninth Circuit has long held that "Rule 404(b) is a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) (citing *United States v. Curtin*, 489 F.3d 935, 944

(9th Cir. 2007) (en banc)). "Under our low threshold test of sufficiency, the government need not prove Rule 404(b) evidence by a preponderance of the evidence. Instead, the government need only lay a factual foundation from which a jury could reasonably conclude that the defendant committed the allegedly-similar bad acts, and that he possessed the requisite intent in committing those bad acts." *Id*. (internal citations omitted). Rule 404(b) permits the introduction of evidence of other crimes, wrongs or acts for any purpose other than to show "action in conformity therewith," including as "proof of motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) is an inclusionary rule which admits evidence of other acts unless it tends only to prove criminal disposition. *Curtin*, 489 F.3d at 944-45. So "inclusionary" is the rule that "evidence of other crimes may be probative on issues that are not listed specifically in Rule 404." *United States v. McKoy*, 771 F.2d 1207, 1213-14 (9th Cir. 1985).

Moreover, the notice requirement, like Rule 404(b), does not extend "where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003); *accord* Fed. R. Evid. 404(b), Advisory Committee Note to the 1991 Amendment (explaining that the rule "does not extend to evidence of acts which are 'intrinsic' to the charged offense"). Evidence of other acts is inextricably intertwined when (1) it constitutes a part of the transaction that serves as the basis for the criminal charge, or (2) it helps the prosecutor offer a coherent and comprehensible story regarding the commission of the crime. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). Furthermore, the Ninth Circuit has held that uncharged transactions in a scheme should not be excluded as "other act" evidence if they are part of the same scheme or if they are inextricably intertwined with the charged conduct. *See Loftis*, 843 F.3d at 1176-78 ("even if the uncharged transactions at issue were not part of the crime charged, they would not be subject to exclusion under Rule 404(b) because they are 'part of the same transaction' as the charged transactions. The inextricably intertwined doctrine, therefore, affords a second basis for concluding the evidence should not be treated as 'other' crimes or 'other' acts evidence under Rule 404(b)."). As the Ninth Circuit explained, "[t]he policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (internal citation omitted).

The government provides this notice to the defendants that it intends to offer at trial the evidence described below. This evidence is relevant and admissible, in part for the reasons described below, and is not barred by Rule 404(a). Furthermore, much of the evidence described below is inextricably intertwined with the charged conduct, and thus not subject to Rule 404(b), and is disclosed below out of an abundance of caution. To the extent some of the evidence could be considered subject to Rule 404(b), the evidence is admissible under the applicable law on the bases and for the reasons described below.

1. **Sheng Thao and Andre Jones defrauded a property management company in October 2021 to obtain a lease by creating a fake job for Jones**

As set forth in the indictment, a key component of the government's case is that Sheng Thao, Andre Jones, David Duong and Andy Duong conspired to commit bribery and to funnel

bribe payments to Thao and Jones under the guise of a no-show job for Jones at Evolutionary Homes. Less than a year earlier, Thao and Jones used a similar modus operandi to create a fake job for Jones for their mutual benefit. In October of 2021, Thao and Jones sought to obtain a lease for their house in Oakland. To obtain the lease, however, Jones needed to have an income-paying job. Thao reached out to her sister, Phua Gilman, who owned a cannabis consulting company called Vantage Solutions, and Thao asked Gilman to write a letter falsely stating that Vantage Solutions would be employing Jones at a salary of $150,000 per year. Thao and Jones then submitted the falsified job letter to Toro Property Management as part of their lease application. A representative from Toro then contacted Gilman to confirm the job offer letter to Jones was legitimate, after which Gilman told Thao and Jones that she had verified his job offer with Toro.

The government will prove this series of events through the testimony of Gilman (who will testify that Thao instructed her to write a fake job letter for Jones), as well as text messages between Thao and Gilman explicitly discussing the falsified job letter, and emails among Thao, Gilman, and Jones showing their collective knowledge of the fake job. *See* OAK-0160914 to OAK-0160938.

This evidence is not character evidence under Rule 404(a), as it is not offered to show any defendant acted in conformity with the conduct. As to Rule 404(b), this evidence shows Thao and Jones' modus operandi of creating a fake job for Jones to mutually benefit Thao and Jones. As such, this evidence shows modus operandi, lack of mistake, motive, criminal intent, knowledge of the existence of the charged agreement and conspiracy, and the absence of mistake or accident in regards to the payments made to Jones and Thao relating to Jones' fake job with Evolutionary Homes.

**2. <u>Andy Duong and Mario Juarez bribed San Leandro City Councilman Bryan Azevedo on behalf of Evolutionary Homes</u>**

The government intends to introduce evidence, including documents and witness testimony, showing that in addition to bribing Sheng Thao and Andre Jones, representatives from Evolutionary Homes bribed San Leandro City Councilman Bryan Azevedo in the fall of 2023. Specifically, Azevedo agreed to use his power as a sitting San Leandro City Councilman to benefit Evolutionary Homes in return for a percentage of the sales price from whatever modular housing company units the City of San Leandro ultimately purchased. To help conceal the future payments Azevedo was to receive, Andy Duong instructed him to open an LLC and bank account in his wife's name for the purpose of receiving the kickback payments. Andy Duong provided Azevedo with $2,000 in cash to avoid fees on this bank account. Azevedo then took steps to benefit Evolutionary Homes in exchange for the $2,000 and the promise of future payments, including advocating for the purchase of Evolutionary Homes units by the City of San Leandro, taking city officials on tours of Evolutionary Homes, and voting for and advocating for an emergency ordinance supported by Evolutionary Homes. Azevedo has pled guilty to this conduct and is a potential witness for the government at trial in this case. *See* Case No. 25-CR-0358-YGR.

This evidence is not character evidence under Rule 404(a), as it is not offered to show any defendant acted in conformity with the conduct. The evidence is also inextricably intertwined with the evidence of the charged conduct and conspiracy as it occurred during the charged criminal conduct and conspiracy and is part of Evolutionary Homes' broader intent to bribe public officials in exchange for government contracts. Even if considered evidence under Rule 404(b), this evidence sheds light on the defendants' modus operandi of concealing bribe payments to public officials by routing those payments through the official's spouse. As such, this evidence shows motive, plan, criminal intent, knowledge of the existence of the charged agreement and conspiracy, and the absence of mistake or accident in regards to the payments made to Jones and Thao.

3. **Sheng Thao and Andy Duong discussed sensitive Oakland City Council items regarding CWS during a recorded 2019 phone call**

The government may introduce a recorded 2019 phone call between Andy Duong and Sheng Thao that was seized from one of Andy Duong's devices. *See* OAK-0399505. During this phone call, Thao provided Andy Duong with information on sensitive internal Oakland City Council deliberations (including where individual council members stood) regarding a then-pending dispute between CWS and the City of Oakland regarding CWS overcharging its customers. In the recorded call, Thao and Andy Duong discussed an upcoming lunch to talk strategy regarding the CWS overcharging issue and Thao requested that the lunch be in a private room at a restaurant and told Andy Duong that "we don't want to be seen with you guys."

This evidence shows deep and long-term relationship between Thao and the Duongs and CWS and also shows their modus operandi of conducting sensitive meetings in person and in private. Accordingly, this evidence is not character evidence under Rule 404(a), as it is not offered to show any defendant acted in conformity with the conduct. As to Rule 404(b), this evidence pertains to criminal intent, modus operandi, knowledge of the existence of the charged agreement and conspiracy, and the absence of mistake or accident in regards to the payments made to Jones and Thao, as well as the actions Thao took to benefit Evolutionary Homes and CWS.

* * *

In addition to the above-described evidence that the government may seek to introduce under Rule 404(b), the government provides notice that it may introduce evidence on the following subjects at trial. The government's position is that the evidence described below is directly relevant and material to the charged conduct and/or is otherwise inextricably intertwined with the charged conduct. As such, the government does not consider it to be Rule 404(b) evidence, and is providing notice of this evidence out of an abundance of caution.

- **Evidence regarding the Summer 2023 Vietnam Trip**: The government intends to introduce evidence, including documents and witness testimony, regarding the ten-day trip to Vietnam in July and August 2023 hosted by the Vietnamese American Business Association ("VABA"). David Duong was the Chairman of VABA, Kristina Duong was the Vice Chairwoman, and that the Duong family controlled VABA. David Duong,

Andy Duong, Sheng Thao, Andre Jones, Bryan Azevedo, Larry Gallegos, and several other public officials attended the Vietnam trip. The trip occurred in the middle of the conspiracy time period and bears directly on the charged crime. VABA appears to have paid for a portion of Thao's trip expenses, including business class airfare, hotel, and money for meals, while the Port of Oakland also reimbursed VABA for a portion of Thao's trip expenses. VABA paid for Jones and Jones' daughter to attend the trip, including business class tickets. VABA also paid for Thao's son's flight to Thailand following the Vietnam trip. VABA also paid for trip expenses for several City of Oakland employees invited by Thao. VABA paid for trip expenses for City of Oakland employee Larry Gallegos as well as former San Leandro City Councilman Bryan Azevedo. Witness testimony will further establish that Thao's staff advised her not to attend the Vietnam trip during her first year as Mayor, but she did so anyway at the urging of David Duong. The Vietnam trip is described in the indictment (¶¶ 46-47) and set forth as an overt act in furtherance of the charged conspiracy (¶ 63, h.). Evidence will also show that Thao did not disclose, in required public disclosure forms and processes or otherwise, that she, her son, Jones, or Jones' children obtained any benefit or gifts related to the trip. This evidence is inextricably intertwined with the charged conduct given that it relates to each charged defendant during the time period of the charged conspiracy and is evidence of the crime charged, as it shows a financial benefit provided by the Duongs to Thao and Jones and is evidence of the continuing conspiracy, and illustrates the nature of the continuing relationship among co-conspirators during the criminal conduct.

- **<u>Thao directed David Duong to stop a negative news story about the Vietnam trip</u>**: The government intends to introduce evidence regarding a coordinated effort involving David Duong, Andy Duong, and Thao to prevent the dissemination or publication of a negative news story about the VABA-sponsored Vietnam trip in Summer 2023. Witness testimony and text messages will show that several months after the Vietnam trip, a reporter reached out to Thao's Office to ask questions about members of the VABA Vietnam delegation, including Bryan Azevedo, engaging in inappropriate conduct during the trip. Witness testimony will show that after Thao's Office received this outreach from the reporter, in November of 2023, Thao called David Duong and was very upset about the fact that a reporter was going to write a story about inappropriate conduct on Thao's Vietnam trip because it could reflect poorly on her. On a phone call overheard by multiple Thao staffers, Thao became very upset with David Duong and told him that if the media story came out about inappropriate conduct on the Vietnam trip, Thao could no longer have a relationship with the Duong family. Specifically, according to Thao staffers who witnessed the call, Thao said something along the lines of "if this stuff happens, I can't work with you anymore" or "I can't fuck with you anymore." Thao's demands to David Duong and threats that she may no longer have a relationship with him if he did not do what she demanded demonstrate the nature of their relationship and the existence of the conspiracy that Thao threatened to end unless David Duong took steps to prevent the story from coming out and protect the ongoing conspiracy.

  Witness testimony, text messages, financial records, and recordings recovered from Andy Duong's phone will show that several weeks later, David Duong, Andy Duong, and Juarez met with an associate of the reporter at a restaurant in Livermore and gave them a

$10,000 check for the purpose of preventing the story about the Vietnam trip from coming out. The $10,000 check provided to the associate of the reporter was drawn from CWS's bank account. Azevedo drove with David Duong, Andy Duong, and Juarez to meet with the associate of the reporter, but Azevedo remained in the car during the meeting. After making the $10,000 payment, Andy Duong recorded a call with Azevedo wherein he and Azevedo discussed the fact that the article was not going to come out because of Andy Duong's actions and that they should not tell others about the arrangement. *See* OAK-0188756.

- **David Duong and Andy Duong paid $5,000 to a foundation at Sheng Thao and Andre Jones' direction and for Thao and Jones' benefit**: The government intends to introduce evidence, including financial documents, text messages, and witness testimony, regarding a $5,000 payment the Duongs made at Thao and Jones' direction. Juarez will testify that in March 2023 Thao and Jones requested that the Duongs provide them with a $5,000 check to purchase a table at an upcoming gala for the Niagara Movement Foundation. Text messages show that before obtaining the payment from the Duongs, Jones asked Thao's staff if the City of Oakland could fund her ticket to the Niagara Movement Foundation gala and Thao's staff responded that the City could not. After being told no by Thao's staff, subsequent text messages show David Duong, Jones, Andy Duong, and Juarez discussed Jones receiving a $5,000 check for the Niagara Movement Foundation and financial records show the issuance of this check. As this evidence relates to each charged defendant during the time period of the charged conspiracy, as well as items discussed during a key meeting of the conspiracy, it is evidence of the existence of the conspiracy, as it shows a financial benefit provided by the Duongs to Thao and Jones to further the goals of the conspiracy, and illustrates the nature of the continuing relationship among co-conspirators during the criminal conduct. It further shows that Thao and Jones' financial arrangement during the timeframe of the conspiracy wherein Jones would receive money meant to benefit Thao.

- **Mario Juarez gave two toasts to Evolutionary Homes on October 5, 2022, which Andy Duong recorded**: The government intends to introduce two videos recovered from Andy Duong's phone showing that on October 5, 2022, Juarez gave two separate speeches/toasts at CWS offices regarding the future of Evolutionary Homes and his partnership with the Duong family. *See* OAK-0226311-312. Present in the videos of the toasts are David Duong, Andy Duong, and other Duong family members, including Kristina Duong (CWS's CFO). During the video of the first toast, Juarez describes his longtime relationship with the Duongs and describes how he and David Duong paid cash to Oakland City officials after CWS obtained the recycling contract. During Juarez's description of these payments, none of the Duong family members in the video disputes Juarez's characterization of events. The second video (taken minutes after the first video) shows Juarez giving another toast, this time without reference to the 2015 bribe payments. At the beginning of this second video (before Juarez begins the toast), Kristina Duong audibly tells Juarez to "keep it PG please." Juarez follows by giving a toast to his partnership with the Duongs, leaving out any reference to the cash payments he and David Duong handed out. These videos are part of the same transaction that serves as the basis for the charged conduct and bear directly on the charged crimes.

Specifically, the October 2022 videos of the Juarez's toasts describing the beginning and origin of Evolutionary Homes, the Duongs' reaction to Juarez's description of the prior payments, and the second toast during which Juarez was instructed to keep it "PG," show the nature of the relationship between Juarez and the Duong family at the time Evolutionary Homes was founded, and are demonstrative of their corrupt intent in regards to Evolutionary Homes.

- **Mario Juarez and the Duongs had an altercation on May 3, 2024**: Juarez will testify that on May 3, 2024, he had an altercation with David Duong, Andy Duong, and other members of the Duong family after Juarez had been locked out of Evolutionary Homes' office. After Juarez told the Duongs that he was considering reporting their criminal behavior to law enforcement, Juarez was physically assaulted by individuals working for the Duongs and these individuals robbed Juarez of a gold chain and watch he was wearing on that date. When agents searched Andy Duong's residence on June 20, 2024, they found the gold chain and watch that had been taken from Juarez on May 3 in Andy Duong's car. (Photographs of Juarez predating the May 3 altercation show him wearing the same chain and watch that were found in Andy Duong's car.) Furthermore, toll records from the evening of May 3, 2024 (in the hours after the altercation), show David Duong and Sheng Thao appeared to communicate through an intermediary, Louansee Moua, who had a close relationship with both Thao and David Duong. On May 3, 2024, Andy Duong told other members of his family that they needed to make a police report and that one of his "personal OPD" would contact him the next day. On May 4, 2024, Andy Duong made a false report to OPD officers in an attempt to silence Juarez. The May 3 evidence is inextricably intertwined with the charged conduct, as it allows the government to tell a coherent story of Juarez's exit from the conspiracy, his motivations for speaking with law enforcement, and the Duongs' attempt to prevent Juarez from speaking with law enforcement. Moreover, the toll records indicating that David Duong appeared to communicate with Thao through an intermediary directly following the altercation raises an inference that they were discussing this significant development in their joint conspiracy relating to Juarez.

- **Andy Duong and Mario Juarez engaged in conversations with Oakland and Alameda County officials in furtherance of the charged conspiracy**: The government intends to introduce evidence, including documents, recordings, and witness testimony, showing that Andy Duong and Mario Juarez had discussions with Oakland and Alameda County elected officials, including Kevin Jenkins, Nikki Fortunado Bas, Rebecca Kaplan, and Nate Miley, in furtherance of the charged conspiracy. Specifically, one of the instructions Thao provided to David Duong, Andy Duong, and Juarez was to get other city and county officials to support Evolutionary Homes to make Thao's support seem more legitimate. As to Jenkins and Bas, the government will introduce recorded phone calls between Andy Duong and Jenkins/Bas during which Andy Duong described instructions Thao had given him, and instructions he had given to Thao, about Evolutionary Homes and CWS. *See* OAK-0188757 and OAK-0188763. As to Miley, the government will introduce evidence that Thao told the other coconspirators that she would purchase the housing units if Alameda County purchased them first, therefore testimony and evidence related to Miley is inextricably intertwined with the charged

conduct. Furthermore, text messages and Juarez's testimony will show Andy Duong and Juarez discussed Evolutionary Homes with the other public officials described above. These discussions in furtherance of the conspiracy relate directly to the charged conduct as they show Andy Duong and Juarez executing on Thao's instruction to attempt to obtain broader support for Evolutionary Homes to help obfuscate their corrupt arrangement.

- **Andy Duong and Mario Juarez discussed potential bribery deals with additional East Bay public officials in furtherance of the charged conspiracy**: Juarez will also testify that he and Andy Duong discussed potential bribery deals with other politicians regarding Evolutionary Homes (separate from Bryan Azevedo). Specifically, Juarez will testify that he and Andy Duong discussed potential kickback deals regarding Evolutionary Homes with other members of the San Leandro City Council, the Berkeley City Council, and the Alameda County Council. Evidence recovered from Andy Duong's cell phone further corroborates the existence of these additional potential bribery deals. These discussions are inextricably intertwined with the evidence of the charged conduct and conspiracy as it occurred during the charged criminal conduct and conspiracy and is part of Evolutionary Homes' broader intent to bribe public officials in exchange for government contracts.

* * *

The inclusion of a category of evidence in this letter does not constitute a concession that notice is required to use the listed evidence at trial. The omission of a category of evidence does not constitute a determination or notice that the government does not intend to use such evidence at trial.

Finally, the government reserves its right to supplement or revise this notice in advance of trial. Additionally, all the categories of evidence listed above may also be admissible in cross-examination of the defendant or other defense witnesses, including any potential defense expert witnesses.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
MOLLY K. PRIEDEMAN
LLOYD FARNHAM
BRANDON MOORE
Assistant United States Attorneys

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
MOLLY PRIEDEMAN (CABN 302096)
LLOYD FARNHAM (CABN 202231)
BRANDON K. MOORE (MDBN 1312180261)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Abraham.fine@usdoj.gov
Molly.priedeman@usdoj.gov
Lloyd.farnham@usdoj.gov
Brandon.moore@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO,<br>ANDRE JONES,<br>DAVID TRUNG DUONG, AND<br>ANDY HUNG DUONG,<br><br>Defendant. | Case No. 25-CR-0003-YGR<br><br>MANUAL FILING NOTIFICATION |

MANUAL FILING NOTIFICATION

Regarding: EXHIBITS 6, 9, 10,

This filing is in paper or physical form only and is being maintained in the case file in the Clerk's office.

If you are a participant in this case, this filing will be served in hard-copy shortly.

For information on retrieving this filing directly from the court, please see the court's main website at http://www.cand.uscourts.gov under Frequently Asked Questions (FAQ).

This filing was not e-filed for the following reasons(s):

___ Voluminous Document (PDF file size larger than e-filing system allowances)

___ Unable to Scan Documents

___ Physical Object (description)

_X_ Non-Graphical/Textual Computer File (audio, video, etc.) on CD or other media

___ Item Under Seal

___ Conformance with the Judicial Conference Privacy Policy (General Order 53).

___ Other (description)

DATED: September 22, 2026

Respectfully submitted,

CRAIG MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
Assistant United States Attorney