Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendants. | Case No. CR 25-0003 YGR<br><br>**REPLY IN SUPPORT OF MOTION FOR PRODUCTION OF MARIO JUAREZ'S TAX RECORDS**<br><br>Date: October 8, 2026<br>Time: 2:30 p.m.<br>Court: 1, 4th Floor |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Against the backdrop of controlling Supreme Court and Ninth Circuit case law which requires the government to disclose not only what they know but also what they could have learned about possible impeachment of their main witness, defendants present a narrowly tailored request for a limited number of tax returns that are stored at a known location at IRS—on a case where IRS-CI is a lead investigative agency. In response, the government raised a statutory objection seeking to override the defendants' Fifth Amendment right to due process and Sixth Amendment right to confront their primary accuser. But the Supreme Court and IRS both recognize that preemption runs in the other direction here—defendants' constitutional rights override the government's reliance on a privacy statute on this set of facts, including the fact that Mario Juarez waived any privacy rights to these tax returns in his plea agreement. As such, defendants respectfully request that the Court order the government to disclose the tax returns for Juarez and his company, Ciudad Holdings, from 2022 to present.

### II. ARGUMENT

#### A. Rule 16 Compels the Disclosure of Juarez's Tax Records

The government does not dispute that (a) Rule 16 requires the government to produce documents that are material to preparing a defense and (b) establishing materiality is a "low threshold" that is satisfied if the information in Juarez's tax returns will help the defendants prepare a defense. *United States v. Hernandez-Meza,* 720 F.3d 760, 768 (9th Cir. 2013). The government also does not dispute that Juarez is obligated to report the funds he received from the FBI—or the other funds he received from Evolutionary Homes ("EH") and California Waste Solutions ("CWS")—as gross income on his tax returns. *Rodriguez v. C.I.R.*, T.C. Memo 2001-36, *7 and 10 (2001). Nor does the government dispute that any failure to disclose these funds on his tax returns would be material to impeaching his credibility as a witness. *United States v. Blanco*, 392 F.3d 382, 392-94 (9th Cir. 2004). Instead, the government focuses on why the FBI made the payments to Juarez by seeking to justify the payments. ECF 390 at 8:21-27.

Defendants' motion, however, does not litigate why the FBI paid Juarez—it focuses on how Juarez handled the tax treatment of those funds.

The government also attempts to distinguish *United States v. Swenson*, No. 1:13-cr-00091, 2013 WL 4735591, at *1, 3 (D. Idaho Sept. 3, 2013) by arguing that "the facts in *Swenson* are far afield from the non-tax investigation in our case." ECF 390 at 7:11-13. The government is mistaken for two reasons. First, the government in *Swenson* took the exact same position the government takes here and lost. In the government's brief opposing the defense request for tax returns in *Swenson*, the government led its argument by asserting: "***Contrary to Defendant's arguments, the IRS civil division has not participated in this investigation***." Reply Declaration of Neal Stephens ("Stephens Reply Decl."), ¶ 2, Exhibit 1. That is the same argument the government makes here. Second, the court's opinion in *Swenson* does not rely on the alleged facts that the government includes in its opposition here to try to argue that *Swenson* is somehow far afield from this case. Instead, the court in *Swenson* found that IRS's "minimal" involvement in the investigation was a sufficient, ***but not necessary***, factor to show that the government possessed the tax records at issue for Rule 16 purposes. *Swenson*, 2013 WL 4735591, at *2. The court proceeded to order the production of tax records from victims of the alleged crime. *Id.* at *2-3. Thus, *Swenson* illustrates that a district court may order the disclosure of tax returns even where the government raises a Section 6103 objection and asserts that the IRS civil division has not participated in the underlying investigation.

**B. Juarez's Tax Returns Are Material Under Both Rule 16 and *Brady/Giglio***

Materiality under Rule 16 is broader than *Brady/Giglio* because information is material under Rule 16 even where it simply causes a defendant to completely abandon a planned defense. *Hernandez-Meza,* 720 F.3d at 768. As to materiality regarding exculpatory information, it is a bedrock principle in *Brady/Giglio* jurisprudence that benefits provided by the government to a cooperating defendant must be disclosed to defense counsel. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (evidence that would impeach a central prosecution witness is indisputably favorable to the accused); *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (same);

*Blanco,* 392 F.3d at 392-94 (reversing conviction where the government failed to disclose immigration benefits provided to cooperating witness because those benefits were "highly relevant impeachment material"). The Ninth Circuit has extended that principle to tax benefits provided to a cooperating defendant. *United States v. Shaffer*, 789 F.2d 682, 688-89 (9th Cir. 1986) (affirming grant of new trial where the government committed several *Brady* violations, including failing to disclose tax benefits provided to the defendant because those undisclosed benefits demonstrated that the cooperator was paid in the form of leniency for his cooperation).

The government attempts to distinguish *Shaffer* in two respects. First, the government focuses on the other materials, beyond the tax liability of the cooperating defendant, that the government failed to disclose. ECF 390 at 7:16-21. Second, the government argues that the government possessed the information at issue in *Shaffer. Id.* Both points miss the mark. Defendants cited *Shaffer* to establish that the failure to disclose tax benefits provided to a cooperating defendant constitute payment in the form of leniency, and therefore, fall inside the scope of a prosecutor's disclosure obligation under *Brady/Giglio.* Defendants did not cite to *Shaffer* to analyze the appropriate scope of information inside the government's knowledge and access. Defendants addressed that argument in a later section of their motion. ECF 373 at 6-7.

The government also asserts that defendants' theory of materiality is speculative and claims that the government is not required to unearth every scrap of paper in pre-trial discovery that defendants might use because fishing expeditions are not permitted. ECF 390 at 8:12-16. Defendants' request, by contrast, targets a discrete, finite set of documents stored in a known location. Defendants do not assert that the government must scour all files and desks and lockers looking for all nuggets, large and small. *Id.*

The tax returns from Juarez and Ciudad Holdings from 2022 to present are material under both Rule 16 and *Brady* for several reasons. First, Juarez has a long history of underreporting his tax obligations. For example, in 2024, Juarez's real estate company, Mario Juarez Real Estate Inc., received a tax lien for $3,233.32 from the State of California. Stephens Reply Decl., ¶¶ 3-4, Exhibits 2-3. In 2023, another Juarez entity, Villaone LLC received a tax lien from the State of

California for $9,078.20. Stephens Reply Decl., ¶ 4, Exhibit 3. In 2017-18, another Juarez entity, Cartagena LLC, received a series of tax liens from the State of California. Stephens Reply Decl., ¶¶ 6-7, Exhibits 5-6. In 2009, another Juarez entity, Fruitvaleone Inc., received a tax lien from the IRS for $52,982.18. Stephens Reply Decl., ¶¶ 8-9, Exhibits 7-8. As a result, Juarez may have underreported or misreported the monies he received from the FBI, CWS, and EH on the tax returns for his company, Ciudad Holdings, or his own personal tax returns. That would trigger tax liabilities which the government has not enforced thereby demonstrating Juarez received undisclosed tax benefits in exchange for his cooperation. *Shaffer*, 789 F.2d at 688-89.

Second, the government alleges that CWS provided a $75,000 check to Ciudad Holdings to pay for the negative mailers related to the mayoral election. ECF 1 at ¶ 22. In a proffer to the government, Juarez admitted pocketing about $30,000 of the $75,000. Stephens Reply Decl., ¶ 10. As a result, Juarez's tax treatment of those funds could be relevant to show that the funds were related to something other than the mailers, or that Mr. Juarez misreported the tax treatment generating a tax liability that the government has not enforced.

Third, in 2022-24, Evolutionary Homes provided about $1,000,000 to Ciudad Holdings and Juarez to fund the operation of the business. As a result, Juarez and Ciudad Holdings would need to categorize the tax treatment of these funds to account for issues like reimbursements. If Juarez improperly categorized aspects of these funds to defer immediate tax liabilities or to manipulate the tax basis on his tax returns or the returns of Ciudad Holdings, that information could lead to impeachment regarding tax liabilities that the government has not enforced following Juarez's agreement to testify against the defendants.

Fourth, in 2022, Juarez invoiced ABC Security through Ciudad Holdings for at least $80,000. Stephens Reply Decl., ¶ 11, Exhibit 9. During a proffer session on February 10, 2025, Juarez admitted netting about $130,000 from the owner of ABC Security in 2022–2023, about $100,000 of that amount for unregistered lobbying. Stephens Reply Decl., ¶ 12. The $100,000 for unregistered lobbying may be the proceeds of illegal conduct, but Juarez still should have disclosed those funds as gross income on his tax returns. *James v. United States*, 366 US 213,

218 (1961) ("It had been a well-established principle … that unlawful, as well as lawful, gains are comprehended within the term 'gross income.'"). An IRS-CI agent attended the proffer but it does not appear that Juarez has faced any consequences related to the admissions he made regarding his relationship with ABC Security—a vendor that provided security services to the City of Oakland. *Id.*

Fifth, as a final example, Juarez received appointed counsel under the Criminal Justice Act on approximately June 6, 2024. To qualify for appointed counsel, Juarez must be "financially unable to obtain counsel" within the meaning of 18 USC § 3006A(b). Under the Judiciary Policy governing appointment of counsel (Guide to Judiciary Policy, Vol 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 2, Section 210.40.30(c)), "[a]t the time of determining eligibility, the court or U.S. magistrate judge should inform the person of the penalties for making a false statement, and of the obligation to inform the court and the appointed attorney of any change in financial status." Given the monies that Juarez received between 2022 to present, Juarez's tax records are material to determine whether he misrepresented his finances to the Court to both obtain and maintain CJA counsel. Defense counsel raised the CJA issue with government because it appears that Mario Juarez may have received a wire for $600,000 on or about June 28, 2024. Government counsel stated that they have no reason to believe that Mr. Juarez has not complied with CJA and the government has not taken a position on Mr. Juarez's eligibility at any time. The government stated it did not have a position about how or whether the $600,000 wire would affect Juarez's eligibility for appointed counsel. Stephens Reply Decl., ¶ 13.

### C. The Government Has Knowledge of and Access to the Tax Returns

#### 1. The IRS Manual Concedes That *Brady* Preempts Section 6103.

In its opposition, the government does not to dispute the policy in the IRS Manual which expressly acknowledges that a defendant's Fifth Amendment due process right to *Brady/Giglio* information overrides the confidentiality provisions in Section 6103. ECF 373 at 12:5-16. The IRS Manual identifies *Brady* disclosures as a "constitutional preemption" to the statutory

provisions in Section 6103. *Id.*

**2. Supreme Court Precedent Requires Disclosure Because Defendants' Constitutional Right to Due Process Overrides Juarez's Statutory Right to Confidentiality.**

In its opposition, the government attempts to distinguish *Pennsylvania v. Ritchie*, 480 U.S. 39, 43 (1987) by stating that the case had "nothing to do with the IRS or tax returns." ECF 390 at 7:23-25. But that argument misses the point. If the Supreme Court analyzed the facts of this dispute through the legal framework it used in *Ritchie*, it would hold that the government must disclose Juarez's tax records. Section 6103, like the confidentiality statute at issue in *Ritchie*, allowed for disclosure of information in certain prescribed circumstances, including when directed by court order for use in judicial proceedings. *Id.* at 57-58. Like the defendant in *Ritchie*, defendants have a similar constitutional due process right to the information protected by the confidentiality statute at issue. *Id.* When analyzing this fact pattern, the Supreme Court holds that a defendant's constitutional right to due process overrides a statutory interest in protecting sensitive information. *Id.*

In addition, defendants' argument for disclosure here is stronger than the defendant in *Ritchie* because Juarez has no privacy interest in his tax return information, is not the victim of any crime, and is not on any government "enemies list." Unlike the 13-year-old rape victim in *Ritchie*, Juarez waived any privacy interest in the material protected by the relevant confidentiality statute (Section 6103) when he committed in his plea agreement to produce any documents requested by the government. On that point, defendants cited Juarez's plea agreement to demonstrate that Juarez waived any privacy interest in his tax records; not to assert that the government is legally obligated to obtain Juarez's tax records from him. (ECF 373 at 3:13-16 and 11:17-22).

The government's analysis of *United States v. Lloyd*, 71 F.3d 408, 409 (D.C. Cir. 1995) is similarly flawed. The government attempts to distinguish *Lloyd* by claiming that the underlying investigation "was explicitly designated as [an] IRS tax investigation involving tax charges against a tax preparer." ECF 390 at 7:28-8:1. In *Lloyd,* the defendant sought pre-trial discovery

of tax returns of his clients. *Lloyd*, 71 F.3d at 409. The government objected pursuant to Section 6103 and refused to produce certain tax returns. *Id.* The defendant requested a Section 6103 order from the court. *Id.* The district court rejected the defendant's request. *Id.* On appeal, the D.C. Circuit reversed and ordered disclosure of the tax records because "the relevant undisclosed returns constitute materially exculpatory evidence under *Bagley*, *Kyles* and *Kelly* as to the convictions in Counts 7 and 11." *Id.* at 413. In other words, like *Ritchie*, the court found that the defendant's constitutional right to due process outweighed the confidentiality provisions in the statute at issue—Section 6103 in this instance. The fact that the underlying investigation related to tax fraud did not drive the analysis. The government in *Lloyd* tried to use Section 6103 to block a defendant's attempt to obtain *Brady/Giglio* information and the court held for the defense—piercing the government's assertion here that Section 6103 places tax returns at the IRS permanently outside the scope of the government's *Brady/Giglio* disclosure obligations.

**3. The Government's Cases Are Distinguishable.**

The government relies on a series of out of circuit and district court cases that fail to overcome the authority cited in defendants' motion. Notably, none of the cases cited by the government involve a situation where the court considered arguments made by defendants here: (1) the admission by the IRS in its IRS Manual that *Brady* obligations serve as a "constitutional preemption" to Section 6103 confidentiality, or (2) the Supreme Court's analysis in *Ritchie,* or (3) the D.C. Circuit's analysis in *Lloyd. See United States v. Zinnel,* 2011 WL 5593109 (E.D. Cal. 2011); *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006); *United States v. Lochmondy*, 890 F. 2d 817, 823-24 (6th Cir. 1989); *United States v. Salyer*, 271 F.R.D. 148, 156 (E.D. Cal. 2010); *United States v. Weed*, 775 F.Supp. 3d 520, 531-32 (D. Mass 2025).

In addition, the government's reliance on *Salyer* is also misplaced because the prosecutors in *Salyer* agreed to provide defense counsel with the tax returns of government witnesses pursuant to their *Brady/Giglio* obligations. As the court noted in *Salyer,* ***the government agreed that "witness tax returns will be disclosed if they contain Giglio and only at or around the time of trial."*** *Salyer*, 271 F.R.D. at 164. The court's opinion does not describe any difficulties with

respect to accessing the tax returns of government witnesses due to any distinction between IRS-CI and IRS Civil.

While the government raised a host of other objections to very broad discovery requests from the defendant, the court's opinion does not suggest that the government raised any Section 6103 objection to producing exculpatory evidence in the tax returns of government witnesses. 271 F.R.D. 148. Moreover, the language the government quotes regarding "the need for formal process being the antithesis of access" was not related to any analysis regarding whether the IRS must produce tax return information of a cooperating defendant under *Brady/Giglio* when the IRS is a participating agency in the investigation. *Id.* at 156. The IRS-CI was an investigating agency in *Salyer* along with DOJ-Antitrust, FBI, USDA and FDA. *Id.* The dispute regarding the scope of Salyer's discovery request related to the broad list of other federal agencies Salyer sought to add to the prosecution team. Salyer sought to add "the Department of Commerce, the entire Department of Justice, the United States Trustee, the Office of Inspector General and generally, any other agency or department of the United States." *Id.* It was only in reaction to the unlimited scope of Salyer's request regarding agencies other than IRS that triggered the court to utter the quoted language relied on by the government here. *Id.*

*Zinnel* is further distinguishable because it did not involve a cooperating defendant like Juarez, which triggers heightened *Brady/Giglio* obligations given that cooperating defendants are inherently untrustworthy. *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).

*Stein*, like *Zinnel,* did not deal with a *Brady* request related to a cooperating defendant. *Stein*, 424 F. Supp. 2d at 723. In addition, the request related to civil audit files related to many of the 18 defendants that were stored in IRS "locations dispersed throughout the country." *Id.* Here, by contrast, defendants' request is narrowly tailored and seeks a finite, discrete number of tax returns stored in one centralized database.

*Lochmondy* involved narcotics charges related to the distribution of marijuana. 890 F. 2d at 819-20. There is no indication in the court's opinion that IRS was one of the investigating agencies on the case.

In *Weed*, like *Lochmondy,* the IRS was not one of the investigating agencies. 775 F. Supp. 3d at 532. In addition, the court emphasized that granting the defendant's motion "would impose a duty on the government to examine all of the files of every federal government agency to ascertain whether any cooperating witness may have committed wrongdoing previously unknown to the prosecution." *Id.* Defendants make no such request here. Defendants seek a contained set of records in a known location from one agency, IRS, where IRS is one of the investigating agencies in the case.

## III. CONCLUSION

The government's *Brady* argument invites potential reversible error—if there is a *Brady/Giglio* violation regarding Juarez's tax returns, there is no harmless error analysis on appeal to try to remedy the issue short of remand back to the trial court. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) ("once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless error analysis"). As a result, the safest course for the government is always disclosure, particularly given that defendants seek a discrete, finite set of known documents from one of the lead investigating agencies related to a cooperating defendant who has no privacy claim in the documents at issue given the terms of his plea agreement. Accordingly, defendants respectfully request that the Court order the government to produce the tax returns for Mario Juarez and Ciudad Holdings from 2022 to present.

Dated: October 5, 2026

JONES DAY

By: */s/ Neal J. Stephens*
Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong