United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**SHENG THAO, ET AL.,**

Defendants.

**TRIAL ORDER NO. 2 REGARDING DEFENDANTS' MOTIONS TO COMPEL DISCLOSURE OF CERTAIN DOCUMENTS**

Case No. 25-cr-003-YGR-1
Case No. 25-cr-003-YGR-2
Case No. 25-cr-003-YGR-3
Case No. 25-cr-003-YGR-4

Re.: Dkt. Nos. 373, 401, 403, 413, 414, 416

Pending before the Court are two motions filed by defendant David Duong for production of certain categories of documents. The first motion seeks an order compelling the government to produce the personal and business tax returns for cooperating witness Mario Juarez from 2022 to present.[1] (Dkt. No. 373.) The second motion seeks an order compelling the government to produce new and additional documents from Juarez's Microsoft and Apple email accounts beyond those the government previously seized pursuant to three warrants and later produced.[2] (Dkt. No. 401.) At a hearing on October 8, 2026, the parties rested on their papers submitted regarding the motion for tax records and gave oral argument regarding the motion for documents from the email

[1] Defendants Andy Duong, Andre Jones, and Sheng Thao each join in the motion. *See* Dkt. Nos. 381, 383, 386.

[2] The notice of motion states that "the other defendants will join this motion," although no joinders were actually filed. *See* Dkt. No. 401 at ii.

accounts.[3]

Having considered the papers and argument submitted, and for the reasons explained below and more fully on the record, both motions are **DENIED**.[4]

## I. LEGAL FRAMEWORK

Rule 16 of the Federal Rules of Criminal Procedure requires that the government disclose documents or objects that are "within the government's possession, custody, or control and[] the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Separately, constitutional due process requires the government to produce "evidence favorable to an accused" that "is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This extends to impeachment evidence of a prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "Under both *Brady* and Rule 16, the government 'has no obligation to produce information which it does not possess or of which it is unaware.'" *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (quoting *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995)). "Documents held by another executive branch agency are deemed to be 'in the possession of the government' if the prosecutor has 'knowledge of and access to' the documents." *Id.* (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)).

[3] On October 7, 2026, D. Duong filed an unopposed motion to shorten time and for expedited hearing on the motion for documents from Juarez's email accounts. Dkt. No. 403. The government subsequently submitted its opposition to the underlying motion the next day. In light thereof and because the Court heard argument on October 8, 2026, the motion to shorten time is **DENIED AS MOOT.**

Separately, D. Duong filed an unopposed motion seeking leave to enter into the record a concurrently filed reply in support of his motion for documents from Juarez's email accounts. Dkt. No. 414. The unopposed motion is **GRANTED**, and the reply filed at Dkt. No. 414-2 and supporting documentation have been considered by the Court.

[4] D. Duong's motion to file Juarez's plea agreement under seal (Dkt. No. 413) is **DENIED** because the criminal action against Juarez has been unsealed in its entirety. *See United States v. Mario Juarez*, Case No. 4:24-cr-00623-YGR-1, Dkt. No. 29.

The government's motion to seal the search warrants and letter to defense counsel filed in support of its opposition to the motion for email account documents (Dkt. No. 416) is generally **GRANTED** for good cause shown. However, the Court unseals the portions of the search warrants that it quotes in this Order.

## II. MOTION FOR TAX RECORDS

Defendants move to compel disclosure of Juarez's and his company Ciudad Holding's tax records under Rules 5(f) and 16, the Fifth and Sixth Amendments to the Constitution, *Brady*, and *Giglio* on the grounds that the records will help them identify evidence that supports their theory of defense and avenues for impeaching Juarez's credibility. The government argues that disclosure is not required because, *inter alia*, it does not possess the tax records at issue.

By way of background, the Internal Revenue Code makes tax returns and return information confidential absent statutory authorization. *See* 26 U.S.C. § 6103(a). In non-tax criminal investigations, disclosure can only be obtained upon an *ex parte* court order under Section 6103(i)(1) that is supported by showings of reasonable cause, relevance, sole investigative use, and unavailability from other sources. *See* § 6103(i)(1)(B)(i)–(iii).

The government's opposition states that "the prosecution team has not obtained Juarez's tax returns as part of its investigation." (Dkt. No. 390 at 1.) In support of its opposition, the government also filed a declaration by the Internal Revenue Service – Criminal Investigation ("IRS-CI") agent staffed on this case, which states that "this is a non-tax investigation," meaning "an ex parte order would be required for [the agent] to access and review tax returns or return information." (Dkt. No. 390-2 ¶ 4.) Accordingly, the agent has "not reviewed tax returns or return information related to the IRS-CI investigation of Mario Juarez and others." (*Id.*)

On this record, the Court finds that the government does not possess the tax records at issue for the purposes of Rule 16, *Brady*, and *Giglio*.[5] The Court cannot compel the prosecution to produce records to which it has no access and, consequently, has not reviewed. Moreover, the defense strains credulity to suggest that the Court should compel the prosecution to petition the Court for an *ex parte* order under Section 6103(i) to obtain the records.

The government's authorities are persuasive on this issue. *See, e.g.*, *United States v. Zinnel*, 2011 WL 5593109, at *3 (E.D. Cal. Nov. 16, 2011) (reconsideration granted on other

[5] Because the issue of possession is dispositive, the Court need not and does not reach the parties' dispute as to materiality.

grounds) (government did not possess "non-disclosed IRS non-party tax information" because the "requirement to obtain an order before access of tax records is authorized stands as the antithesis of constructive possession"); *United States v. Lochmondy*, 890 F.2d 817, 824 (6th Cir. 1989) (district court properly denied disclosure of prosecution witness's tax returns because "the prosecutor never had possession or knowledge of the income tax returns sought by the defendants"); *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006) (Rule 16 disclosure obligation did not extend to tax records "in the possession of the civil side of the IRS" because the records were "not in the possession of the prosecution team—the members of the United States Attorney's Office involved in this case and the IRS personnel in the Criminal Investigation Division"). Defendants' attempts to distinguish these cases do not undermine the fundamental reasons for finding lack of possession here.

Defendants' authorities, by contrast, contain materially different facts or do not analyze the issue of possession. *See United States v. Swenson*, 2013 WL 4735591, at *2–3 (D. Idaho Sept. 3, 2013) (compelling disclosure where "the civil division of the IRS" was involved in the case, albeit minimally); *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 (1987) (defendant convicted of raping his daughter was entitled to have trial court review state agency records concerning his daughter to determine whether they probably would have changed the trial outcome); *United States v. Lloyd*, 71 F.3d 408, 409–10 (D.C. Cir. 1995) (trial court erred in holding that Section 6103 raised Rule 16's materiality standard in a tax fraud prosecution). That the Internal Revenue Manual lists *Brady* and *Giglio* as "[c]onstitutional preemptions" to Section 6103 does not give this Court authority to compel the prosecution to disclose records that are not within its possession. *See* IRM Part 11.3.1.1.2 ¶ 25. Further, defendants' motion concedes that the government is not "legally compelled" to request the records from Juarez directly. (Dkt. No. 373 at 3.)

For these reasons, defendants' motion to compel disclosure of Juarez's tax records is **DENIED**.

## III. MOTION FOR DOCUMENTS FROM EMAIL ACCOUNTS

Next, defendant David Duong moves under Rules 5(f) and 16, the Fifth and Sixth Amendments to the Constitution, *Brady*, and *Giglio* to compel disclosure of non-privileged

documents within Juarez's Microsoft and Apple email accounts. The factual record regarding seizure is important, especially in light of the current environment regarding electronic records.

Magistrate judges of this court issued three search warrants over the course of 2023 and 2024 before this case was indicted authorizing the search and seizure of certain documents within Juarez's Microsoft and Apple email accounts, among others. Attachment B to each warrant set forth the following procedures: *First*, the companies were instructed to "create an exact duplicate" of files within the accounts and provide the copy to law enforcement. (Dkt. No. 416-3 (sealed) at ECF pgs. 6, 14, 25.) *Second*, law enforcement personnel were instructed to "review the information received and identify and copy ***only the information***" that the warrant authorized to be "seized by the government" (i.e., evidence of the alleged crimes being investigated). (*Id.* at ECF pgs. 6, 9, 14, 17, 25, 27 (emphasis supplied).) *Third*, law enforcement personnel were instructed to "seal the original duplicate of the accounts and files received from [the companies'] employees and [to] not further review the original duplicate absent an order of the Court." (*Id.* at ECF pgs. 6, 14, 25.)

The government states, and the defense does not dispute, that during the government's review of the files provided by the companies under step two, to "the extent the reviewing agent reviewed an item that appeared to be potential *Brady* or *Giglio* material, the agent seized it." (Dkt. No. 406 ("Oppo. to Emails Mtn.") at 4–5.) The government further states that it "promptly produced to counsel for all defendants" documents it seized during step two. (*Id.*) Those documents are not the issue. Separately, the government told defense counsel in a letter dated October 6, 2026 that the "full dataset is still stored on the FBI's internal system but has not been accessed by the case team since the seized documents were extracted and provided to the prosecutors." (Dkt. No. 402-1 at 2.)

D. Duong now argues that all the records copied and turned over by the companies under step one—not just those that the government seized under step two—are subject to disclosure "under *Brady* and its progeny" because "there is no meaningful distinction between 'seized' and

'non-seized' material."[6] (Dkt. No. 401 ("Emails Mtn.") at 7–8.) D. Duong also argues that disclosure is warranted because "Juarez waived any privacy rights in the non-privileged Juarez Emails by effectively consenting to the government's continued possession and review of the Juarez Emails" in his plea agreement. (*Id.* at 1.) The government responds that "it has no legal right to review, seize, or produce to the defense materials that fall outside the scope of the warrant" because the "plain terms of the warrant . . . prevent the government from accessing the out-of-scope of [sic] materials." (Oppo. to Emails Mtn. at 2, 7.)

Based on this record, the Court finds that the prosecution team does not possess documents that it did not seize pursuant to the warrants and therefore cannot be compelled to produce them under Rule 16, *Brady*, or *Giglio*. D. Duong's claim that the government "fail[ed] to discover the investigation's full results" when it initially reviewed the documents—including materials subject to Rule 16, *Brady,* and *Giglio* disclosure—is pure conjecture stemming from a separate discovery issue that the parties have apparently resolved.[7] In fact, the government has explained that it comprehensively reviewed materials it received from the companies and then seized and later produced anything "that appeared to be potential *Brady* or *Giglio* material." (Oppo. to Emails Mtn. at 4–5.) During oral argument, defendants repeatedly mischaracterized the nature of the government's initial search and review.

[6] D. Duong cites no authority for this proposition, nor is the Court aware of any.

[7] That issue is explained in the parties' briefing and was addressed at the hearing on October 5, 2026, so the Court does not belabor it here. In short, the government recently discovered approximately 14,500 documents that it had not properly reviewed for privilege and therefore inadvertently withheld, in part, from the defense. The government then proposed a set of search terms it would use to expedite production of non-privileged documents within that set. Defendants found the government's search terms to be inadequate and proposed additional terms, to which the government generally agreed. At the hearing, counsel for A. Duong confirmed that defendants were not seeking additional relief with respect to those documents because they had "a plan in short order." Dkt. No. 405 at 19:13–16, 20:14–20. Defendants then previewed the dispute at issue in this motion and argued that the inadequate search terms the government proposed for expedited review of the approximately 14,500 documents indicated that the government must not have adequately reviewed the broader set of email records necessary to meet its Rule 16 obligation. The government vigorously disputes that contention and describes in detail in its opposition the search methodology it employed. *See* Oppo. to Emails Mtn. at 4 ("The Attachment B review was comprehensive and was done based on an iterative process using a combination of search terms based on the warrant categories, searches for relevant individuals, entities, email addresses and phone numbers, and additional manual review.").

Thus, defendants' citation to *United States v. Cerna*, 2009 WL 10823687, at *9 (N.D. Cal. Oct. 5, 2009), for the proposition that the government "had a duty to also identify all exculpatory evidence for production to defendants" merely confirms that the government properly discharged its *Brady* and *Giglio* obligations in executing the search warrants here. (*See* Emails Mtn. at 9.) Absent any evidence to the contrary, speculation of a deficient search based on an entirely separate discovery issue does not provide sufficient grounds to grant the motion. Further, D. Duong cites no cases wherein the government was ordered to disclose materials that fell outside the scope of what a warrant authorized it to seize, and the Court is not aware of any authorities so holding.

The government's cases, by contrast, firmly support finding that it has no obligation to turn over records that it did not seize. *See United States v. Collins*, 409 F. Supp. 3d 228, 243 (S.D.N.Y. 2019) (government met its *Brady* obligations when it "already conducted a search for Brady/Rule 16 Material" in an individual's account—notwithstanding the Fourth Amendment issue—because defendants had "not articulated a sufficient reason to believe that the Government's efforts were deficient"); *United States v. Balwani*, 2022 WL 1405404, at *5 (N.D. Cal. May 4, 2022) (government had no "obligation to review or turn over" data under *Brady* that it was not authorized to seize in the first place because the data fell outside "the relevant time period" prescribed by the warrant); *United States v. Hall*, 2020 WL 7027473, at *5 (N.D. Tex. Nov. 30, 2020) ("[I]t logically follows that if the Government is not authorized to seize it, it certainly has no authority or legal obligation to disseminate it."). The government's cases also affirm the procedures set forth in the warrants as well as the government's discretion in how to execute them. *See United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized."); *Dalia v. United States*, 441 U.S. 238, 257 (1979) ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant . . . ."). In fact, at the time the search warrants were executed, the government had no motivation to conduct a narrow, limited search. Rather, it stands to reason that the government would and did seize as much information as was authorized under the warrants.

Further, the Court need not reach the issue of whether Juarez purportedly waived his

Fourth Amendment rights in his plea agreement. Irrespective of whether a waiver exists, the plain language of the warrants provides that the government no longer has access to the documents. The warrants required law enforcement to "seal the original duplicate of the accounts and files received from [the companies'] employees" and to "not further review the original duplicate absent an order of the Court." (*See* Dkt. No. 416-3 at ECF pgs. 6, 14, 25.) Juarez's purported waiver does not dispense with this requirement, and D. Duong has not raised sufficient grounds, based in law or fact, for this Court to order that the records be unsealed and turned over to defendants now. As noted above, defendants also concede that there is no legal requirement for the government to obtain exculpatory materials from third parties, including cooperating witnesses like Juarez.

For these reasons, the Court finds that the government has already fulfilled its disclosure obligations with respect to the documents that it obtained via search warrants for Juarez's email accounts. D. Duong's motion is therefore **DENIED**.[8]

* * *

This Order terminates Dkt. Nos. 373, 401, 403, 413, 414, 416.

**IT IS SO ORDERED.**

Dated: October 19, 2026

YVONNE GONZALEZ ROGERS
CHIEF UNITED STATES DISTRICT JUDGE

[8] Because the motion is denied, the Court does not reach the parties' dispute as to whether it is untimely. Additionally, in light of the Court's ruling, the hearing currently set for October 21, 2026 is hereby **VACATED**.