Winston Y. Chan (SBN 214884)
Christine A. Bonomo (SBN 364178)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8362
Facsimile: (415) 393-8306
Email: wchan@gibsondunn.com

W. Douglas Sprague (SBN 202121)
Bryanna Walker (SBN 345454)
**COVINGTON & BURLING LLP**
415 Mission St., Suite 5400
San Francisco, California 94105
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: dsprague@cov.com

Erik Babcock (SBN 172517)
**LAW OFFICES OF ERIK BABCOCK**
420 3rd Street, Suite 250
Oakland, California 94607
Telephone: (510) 452-8400
Facsimile: (510) 201-2084
Email: erik@babcocklawoffice.com

Attorneys for Defendant Andy Hung Duong

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG,<br><br>Defendants. | Case No. 4:25-CR-00003-YGR<br><br>**DEFENDANT ANDY DUONG'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL NOTICE OF INTENT TO ADMIT TRIAL EXHIBITS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

# TABLE OF CONTENTS

**I. INTRODUCTION ........................................................................................................ 1**

**II. ARGUMENT ........................................................................................................ 1**

A. The Government Cannot Use Agent Barclay as an Overview Witness ......................... 1

B. Government Exhibit 1833 Should Be Excluded as Substantive Evidence ..................... 3

1. The Records Exhibit 1833 Curates Are Not Voluminous or Inconvenient. ....... 4

2. Exhibit 1833 Is Inappropriate Argumentation. .................................................. 6

C. Multiple Government Exhibits Must be Contemporaneously Supplemented................ 7

1. The Government Should Be Required to Supplement Otherwise Incomplete Text Threads and Recordings. ........................................................................ 8

2. Omitted Attachments from Emails Are Part of the Same Communications..... 11

**III. CONCLUSION ........................................................................................................ 11**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) .......... 7, 11

*Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292 (3d Cir. 1961) .......... 6

*SEC v. Davenport*, 2024 WL 5317310 (C.D. Cal. Sep. 19, 2024) .......... 5

*United States v. Bash*, 2025 WL 51210 (Jan. 8, 2025 E.D. Cal.) .......... 1

*United States v. Doyle*, 130 F.3d 523 (2d Cir. 1997) .......... 2

*United States v. Flores-De-Jesus*, 569 F.3d 8 (1st Cir. 2009) .......... 2

*United States v. Graham*, 2013 WL 6383169 (D. Mont. Dec. 5, 2013) .......... 6

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003) .......... 2

*United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021) .......... 7

*United States v. One 1986 Piper Navajo Twin Engine Aircraft*, 594 F.2d 1040 (5th Cir. 1979) .......... 2

*United States v. Rodriguez-Adorno*, 695 F.3d 32 (1st Cir. 2012) .......... 2

*United States v. Scales*, 594 F.2d 558 (6th Cir. 1979) .......... 2

*United States v. Wood*, 943 F.2d 1048 (9th Cir. 1991) .......... 5

**Other Authorities**

1972 Adv. Comm. Note .......... 8, 11

2024 Adv. Comm. Note .......... 5, 6

**Rules**

Fed. R. Evid. 106 .......... 1, 7, 8

Fed. R. Evid. 107 .......... 5

Fed. R. Evid. 403 .......... 6

Fed. R. Evid. 1006 ....................................................................................................................1, 4, 5, 11

## I. INTRODUCTION

In its Notice of Intent to Admit Trial Exhibits, the government identifies approximately 156 exhibits it intends to admit through case agent Special Agent Katherine Barclay. Andy Duong submits this Response to provide notice to the Court that he intends to object to Agent Barclay's testimony and the admission of these exhibits where Agent Barclay has no personal knowledge of the contents and/or cannot lay proper foundation or relevance without relying on hearsay obtained throughout the course of her investigation.

Andy Duong further does and will object to the admission of Government Exhibit 1833 as a summary exhibit. Like its prior attempt, which the Court denied, the government seeks to admit under the guise of Federal Rule of Evidence 1006 an argumentative demonstrative rather than a summary of admissible voluminous materials that could not conveniently be examined in court.

In addition to seeking the exclusion of certain exhibits the government seeks to admit through Agent Barclay, Andy Duong seeks under Federal Rule of Evidence 106 the contemporaneous admission of additional portions of certain recorded conversations, text message threads, and emails the government intends to introduce through her to provide necessary context to these exhibits. The portions Andy Duong seeks to admit identify what the participants were actually discussing and, in several instances, directly undercut the inferences the government's cherry-picked excerpts invite.

## II. ARGUMENT

### A. The Government Cannot Use Agent Barclay as an Overview Witness

As made apparent by the demonstrative exhibit the government created to use with Agent Barclay—Government Exhibit 1865—the government intends to use Agent Barclay's testimony as an overview witness to deliver a second opening statement and narrate its theory of the case. Courts, including within the Ninth Circuit, have emphasized that this type of testimony at the beginning of the government's case is inappropriate and prejudicial. *See, e.g.*, *United States v. Bash*, 2025 WL 51210, at *9 (Jan. 8, 2025 E.D. Cal.) (identifying problems with overview evidence, including "the government's ability (1) to spin the evidence in its favor before it is admitted (assuming it is ever admitted), (2) to give its official imprimatur to certain evidence, and (3) to allow its witnesses (usually law enforcement) to testify on matters about which they have no personal knowledge or that are based

on hearsay"); *United States v. Rodriguez-Adorno*, 695 F.3d 32, 37–38 (1st Cir. 2012) ("[O]verview testimony is problematic when it consists of declarations by a witness—commonly a law enforcement officer involved in the investigation at issue—presented early during trial to describe the government's general theory of the case." (internal quotation marks omitted)); *United States v. Flores-De-Jesus*, 569 F.3d 8, 26–27 (1st Cir. 2009) (A law enforcement officer's "testimony about the role of the defendants in the conspiracy that was based on information gathered from police reports, other documents not introduced into evidence, and interviews with . . . cooperating co-conspirator [], or other individuals, was hearsay and inappropriate overview testimony."); *United States v. Griffin*, 324 F.3d 330, 349 (5th Cir. 2003) ("unequivocally condemn[ing]" the use of an overview witness "as a tool employed by the government to paint a picture of guilt before the evidence has been introduced"). As one court of appeals explained, the use of an overview witness "greatly increase[s] the danger that a jury 'might rely on the alleged facts in the [overview] as if [those] facts had already been proved,' or might use the overview 'as a substitute for assessing the credibility of witnesses' that have not yet testified." *Griffin*, 324 F.3d at 349 (quoting *United States v. Scales*, 594 F.2d 558, 564 (6th Cir. 1979)).

While a law enforcement officer may testify to the sequence of their investigation and any investigative steps taken, the government cannot rely on that argument here. Government Exhibit 1865 does not follow the sequence of the government's investigation in this case; it lays out the core of the government's evidence in chronological order, mirroring many of the exhibits the government showed the jury during its opening statement. Unlike the prejudice the Defendants face by subjecting the jury to this overview witness testimony, it is not prejudicial to the government to introduce these exhibits and testimony about their meaning and relevance through a proper sponsoring witness.

That Defendants stipulated to the authenticity of the exhibits does not waive objections to the exhibits' admissibility, including on relevance, hearsay, or other evidentiary grounds. *See United States v. One 1986 Piper Navajo Twin Engine Aircraft*, 594 F.2d 1040, 1042 (5th Cir. 1979) ("Merely because a document is authenticated does not mean it is admissible."); *see also United States v. Doyle*, 130 F.3d 523, 545 (2d Cir. 1997) ("It is axiomatic that authenticated evidence must still be admissible under the other rules of evidence including those governing hearsay."). The parties simply agreed that the exhibits are accurate copies of what was produced to the government by a third-party or found on

a particular device. *See* ECF No. 367; ECF No. 368. As the defense informed the government on October 7, 2026, *see* Ex. 4, the fact these records are an accurate copy of material found on a device or within a particular third-party account does not provide the requisite foundation that the materials are relevant or admissible.

Here, the government seeks to introduce dozens of images, videos, and recordings of supposed Evolutionary Home board meetings through Agent Barclay. Agent Barclay lacks personal knowledge that these images, videos, and recordings are true and accurate representations of what the government will argue they depict, as required to lay the requisite foundation for these materials. For example, Agent Barclay would not know whether an image on a device was altered before it was extracted by the government, whether an image included everyone present for a particular event, or whether the Evolutionary Homes board meeting recordings were edited by Cecilia Mendez before producing them to the government.[1]

The government contends that Agent Barclay "will testify that she listened to each of the recordings and recognizes the voices of individuals speaking on the recording, including David Duong, Andy Duong, Mario Juarez, and Cecilia Mendez" and "that for many of the recordings, the metadata timestamps embedded in the recordings correspond to the timestamps of photographs found on Andy Duong's phone depicting the same individuals whose voices can be heard on the recordings." ECF 429 at 4. The government's own transcripts of these recordings, however, are replete with speakers identified only as "Unidentified Male" or "Unidentified Female", which suggests the speaker is unknown. *See, e.g.*, Gov't Ex. 994T. Moreover, because Agent Barclay was not present for these meetings—unlike Cecilia Mendez—she cannot identify whether the voices on the recording or the individuals in photos believed to be taken during these meetings were the only individuals present. These materials therefore should not be admitted through Agent Barclay, and the government must wait to introduce these images, videos, and recordings through other witnesses who do have the requisite personal knowledge and can lay the proper foundation.

### B. Government Exhibit 1833 Should Be Excluded as Substantive Evidence

In addition to exhibits where Agent Barclay cannot lay the requisite foundation and/or does not

[1] Defendants have not stipulated to the authenticity of these alleged board meeting recordings.

have the requisite personal knowledge, Government Exhibit 1833 should be excluded as substantive evidence. This exhibit is the government's second attempt to introduce an improper summary exhibit—this time, a curated timeline of just sixty-two photographs and three short videos with metadata. *See* Ex. 1. These images and their metadata are neither "voluminous" nor incapable of being "conveniently examined in court." Fed. R. Evid. 1006(a). The government in fact intends to present every single photo and video individually through Agent Barclay and then run through them again with this curated compilation exhibit. *See* ECF No. 429 at 4; Ex. 2 at 5–6, 10–13. As with the chronological timeline this Court declined to admit, *see* ECF No. 360 at 6–7, the government again seeks to weave together multiple disparate pieces of evidence about discrete events into a single argumentative exhibit, an exhibit whose introduction will supplement rather than shave the length of their presentation. As with the government's prior attempt, the Court should exclude Government Exhibit 1833 as substantive evidence.

**1. The Records Exhibit 1833 Curates Are Not Voluminous or Inconvenient.**

Rule 1006 reaches only summaries of "voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006(a). As the Advisory Committee explained in 2024, "[i]n most cases, a Rule 1006 chart may be the only evidence the trier of fact will examine concerning a voluminous set of documents." Fed. R. Evid. 1006 advisory committee's note to 2024 amendment ("2024 Adv. Comm. Note").

Government Exhibit 1833 does not present voluminous data. It reproduces sixty-two photographic images that a juror could otherwise page through in a few minutes' time and three videos lasting 90 seconds (Government Exhibit 540), 11 seconds (Government Exhibit 499), and 40 seconds (Government Exhibit 560).[2] As Defendants explained in opposing the government's prior timeline, such images and multimedia require "no expert analysis or distillation." ECF No. 331 at 7. The government has also answered the question of convenience by confirming its intent to individually present each underlying exhibit and its metadata through Agent Barclay, *regardless of whether or not*

[2] These are the same exhibits that Andy Duong also objects to the government introducing through Agent Barclay separately and apart from Government Exhibit 1833, as she lacks personal knowledge that they are true and accurate representations of what the government will argue they depict.

*Government Exhibit 1833 comes in*. Ex. 2 at 5–6, 10–13; ECF 429 at 4 ("SA Barclay will testify to the metadata contained in the photographs and videos, and from the metadata can testify to the location that each photograph and video were taken."). The government cannot simultaneously pursue exhibit-by-exhibit introductions through Agent Barclay (over Defendants' objection) while claiming that doing so would be inconvenient or consume substantial time. *See SEC v. Davenport*, 2024 WL 5317310, at *2 (C.D. Cal. Sep. 19, 2024) (Rule 1006 did not apply to a video summation of 16 videos). To expedite their presentation, Defendants have already stipulated to the authenticity of each file as an extraction from devices the government seized. ECF No. 368 ¶¶ 3–4. Introducing Government Exhibit 1833 does nothing to further streamline their presentation. It would do the opposite, supplementing the presentation of the underlying exhibits with an argumentatively curated timeline of the same information.

The 2024 amendment to Rule 1006 does not help the government. The Advisory Committee's statement that summaries "*otherwise admissible* under Rule 1006 are not rendered inadmissible because the underlying documents have been admitted" presupposes that the rule's volume and inconvenience threshold is met. 2024 Adv. Comm. Note. And the Note's own structure treats co-admission as the exception, refusing merely to draw a sharp line against it: "In *most* cases, a Rule 1006 chart may be the only evidence the trier of fact will examine concerning a voluminous set of documents. In some instances, however, the summary *may* be admitted in addition to the underlying documents." 2024 Adv. Comm. Note (emphasis added).

What is more, the Note and Rule 1006 make clear that summaries that function only as illustrative aids of otherwise easily digestible, non-voluminous evidence are not admissible. *See* Fed. R. Evid. 107 ("[A]n illustrative aid is not evidence and must not be provided to the jury during deliberations . . . ."); Fed. R. Evid. 1006(c) ("Illustrative Aids Not Covered. A summary, chart, or calculation that functions only as an illustrative aid is governed by Rule 107."); *see also United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991) (holding that mere "pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations"). Government Exhibit 1833 is, at best, an "illustrative aid," which "is not evidence" and should not be admitted as such. Fed. R. Evid. 107(b); *see also* 2024 Adv. Comm. Note.

**2. Exhibit 1833 Is Inappropriate Argumentation.**

Even a summary of truly voluminous or inconvenient records "must also pass the balancing test of Rule 403," and "if it is argumentative, its probative value may be substantially outweighed by the risk of unfair prejudice or confusion." 2024 Adv. Comm. Note. Government Exhibit 1833 fails that test in three ways.[3]

*First*, it is an argumentative curation, not a summary. It does not present, for example, every image created on a device during a defined period. It presents sixty-five images (or videos) drawn from Andy Duong's phone, Sheng Thao's phone, and a thumb drive attributed to David Duong that the government believes advance its theory. Selecting evidence for its persuasive value is argument.

*Second*, it weaves images from those three sources, taken on forty-three different dates over nearly two years, into one continuous sequence that invites the jury to draw connections no individual photograph shows. It inserts three photographs from Ms. Thao's phone (Gov't Exs. 73, 78, 84) among photographs from Andy Duong's phone, inviting the inference that they document the same occasion. Gov't Ex. 1833 at 41–46. And it places a thumb-drive photograph (Gov't Ex. 571) whose "Time Created" is listed as "TBD" between two images taken nearly three hours apart—a placement dictated by no metadata, only the government's choice. *Id.* at 25–27.

*Third*, for each video, the exhibit substitutes the government's own captions for the content: "Juarez and the Duongs at CWS," "Video showing Mario Juarez at Skates on the Bay," and "Video showing Sheng Thao, David Duong, and Andre Jones on a plane." Gov't Ex. 1833 at 5, 28, 40. Each caption asserts identity and location—facts that must come from a witness with personal knowledge, not a summary. *See United States v. Graham*, 2013 WL 6383169, at *2 (D. Mont. Dec. 5, 2013) (summary may not refer "to information not contained in the original" (quoting *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961))).

---

[3] Exhibit 1833 is also inaccurate on its own terms. Its entry for Exhibit 204 lists Bates number OAK-0225236, which the government's exhibit list assigns to Exhibit 446. Government Ex. 1833 at 54; Ex. 3 at 6, 11. Although the image appears to depict the same content, the error shows why the jury should examine the exhibits themselves. Similarly, Exhibit 371, dated February 18, 2023, is appended out of sequence to the end, following an alleged May, 3, 2024 photograph. Government Ex. 1833 at 65.

### C. Multiple Government Exhibits Must be Contemporaneously Supplemented

In addition to seeking to impermissibly admit the above exhibits through Agent Barclay, the government has failed to introduce certain excerpts and attachments necessary to complete multiple exhibits. Should the Court allow the government to admit their excerpted exhibits through Agent Barclay, certain additional portions of these exhibits should be admitted contemporaneously with the government's excerpts because omitting those portions would leave the jury with a misleading and prejudicial impression.

Federal Rule of Evidence 106 provides that when a party introduces all or part of a statement, the opposing party may "require the introduction, at that time" of any other portion or statement "that in fairness ought to be considered at the same time." That is true even over a hearsay objection. Fed. R. Evid. 106. This Rule, the rule of completeness, guards against "the misleading impression created by taking matters out of context" and "the inadequacy of repair work" when the omitted evidence is delayed to a later point in trial. Fed. R. Evid. 106 advisory committee's note to 1972 proposed rules ("1972 Adv. Comm. Note"). When the "misunderstanding or distortion can be averted only through presentation of another portion," that material is "*ipso facto* relevant and therefore admissible." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). Accordingly, where omitted statements bear "directly on the meaning of the excerpts presented," they must be admitted to "correct the misleading impression created by the Government's excerpts." *United States v. Lopez*, 4 F.4th 706, 717 (9th Cir. 2021).

These requests below are not an attempt to introduce unrelated self-serving evidence. *C.f. Lopez*, 4 F.4th at 717. They are portions of the same communications the government seeks to admit and are necessary to correct the misleading impressions created by the government's selected excerpts. For example, an excerpt referencing "$30 million" advances the government's narrative while omitting key context lending to an alternative explanation; Evolutionary Homes ("EH") board meeting excerpts omit contemporaneous objections to Mario Juarez's spending and demands for an accounting; and other excerpts omit surrounding material necessary to understand what follows. Those are precisely the type of distortions Rule 106 is meant to correct. *See Lopez*, 4 F.4th at 715–17.

And the correction must come at the same time as the government's excerpts. Agent Barclay

did not participate in these communications and cannot herself supply the omitted context. Leaving Andy Duong to correct the misleading impression created by the government's cherry-picked excerpts through later witnesses is precisely the belated "repair work" Rule 106 guards against. 1972 Adv. Comm. Note. The jury should receive the complete picture when the government presents its excerpts, not after an incomplete one has already taken hold.

**1. The Government Should Be Required to Supplement Otherwise Incomplete Text Threads and Recordings.**

***Government Exhibit 987A—The "$30 Million" Discussion:*** Government Exhibit 987A, the government's first excerpt allegedly from the November 6, 2023 Evolutionary Homes board meeting, begins with Mario Juarez recounting Andre Jones's request for additional money (12:10–19:10)[4] and ends with Juarez asking David Duong whether he has "the $30 million" (21:1–3). Standing alone, the excerpt makes the two appear connected, reinforcing the government's theory that the Duongs were prepared to make additional payments to Jones. But the government omits an earlier discussion (3:5–8:8) in which Juarez pitches David Duong on a separate transaction requiring substantial financing: the Lao Community Center deal. Without the context from pages 3:5 to 8:8, the government's excerpt invites the misleading inference that the "$30 million" refers to additional payments to Jones rather than the separate transaction Juarez had already proposed.

***Government Exhibit 987B—Discussions Regarding Juarez's Spending**:* The government's second excerpt, allegedly from the same meeting, Gov't Ex. 987B, concerns Evolutionary Homes finances and Jones's requests for additional money, while omitting the same meeting's extended discussion of Juarez's spending of company funds. In the omitted portions, David Duong reprimands Juarez for spending without approval (36:1–17), exceeding the budget (45:2–19), stresses the need to generate sales (40:4–7), and requires advance approval for further expenses (40:16–17). Juarez himself acknowledges that the original plan was to focus on sales and that the Duongs had invested their own money into Evolutionary Homes (40:19–41:11). Without the exchanges in the omitted portions at 36:1–17, 40:4–41:11, and 45:2–19, the government presents the Duongs funding Evolutionary Homes

[4] The government's exhibit list includes a transcript for each recording it seeks to admit. For ease of review, this Response cites the transcripts by page and line. The defense will provide the corresponding timestamps for any additions the Court admits.

while omitting the context of how that funding was used—i.e., the Duongs' contemporaneous efforts to control Juarez's spending and require results.

***Government Exhibit 990A—Juarez's $83,000 Reimbursement Demand:*** The government's excerpt, allegedly from the November 8, 2023 Evolutionary Homes board meeting, Gov't Ex. 990A, discusses Evolutionary Homes finances and the availability of additional funding, but omits the meeting's extended discussion of Juarez's own reimbursement requests. In the omitted portion, Juarez seeks approximately $83,000 in reimbursement for expenses incurred over seventeen months and submitted at once (2:1–19). David Duong responds that the expenses must first be reviewed, explaining that the Duongs could not "just sign [Juarez] a check" (2:23–24) for whatever he submitted because the expenses should have been approved in advance (2:20–3:11). David Duong reiterates that Evolutionary Homes had a system for approving and monitoring expenditures (3:13–24) and objects to Juarez waiting seventeen months before seeking reimbursement for the accumulated expenses (4:14–17). Without the exchange at 2:1–9:2, the government presents discussions of additional Evolutionary Homes funding while omitting David Duong's contemporaneous insistence that Juarez's spending be approved, reviewed, and accounted for before the Duongs paid it.

***Government Exhibit 998A—The Missing $750,000 and Restrictions on Further Spending:*** The government's excerpt, allegedly from the February 13, 2024 Evolutionary Homes board meeting, Gov't Ex. 998A, presents David Duong and Juarez discussing whether the City of Oakland would require competitive bidding to purchase Evolutionary Homes units (38:12–41:19). Standing alone, the excerpt portrays Evolutionary Homes as a functioning venture ready to bid on a city contract. The government omits an extended discussion that shows otherwise. David Duong demands to know where a $750,000 investment went (130:25–131:6), and Juarez concedes that Evolutionary Homes no longer has the money (130:6–10). David Duong admonishes Mario Juarez for "operating . . . on [his] own" without consulting the Duongs (156:24–157:8) and states Juarez had yet to "deliver[] anything . . . for real" (165:15–23). The discussion ultimately turns to stopping additional spending until the $750,000 issue is resolved (170:20–171:8; 173:3–7). These portions bear directly on the meaning of the government's excerpt. At the same meeting where a potential bid was discussed, Evolutionary Homes had yet to deliver anything, and the Duongs were cutting off further funding until Juarez accounted for

the money already spent. Without the omitted portions at 130:25–131:6, 132:8–22, 156:24–157:8, 162:5–163:13, 165:15–23, 170:20–171:8, and 173:3–7, the excerpt presents Evolutionary Homes as ready to compete for a city contract, while leaving out necessary context that Evolutionary Homes had produced nothing and that Juarez could not account for the initial $750,000 investment.

***Government Exhibit 706A—The Development Projects Discussion:*** The government begins its excerpt with Larry Gallegos providing Juarez a summary of development guidelines, but omits the immediately preceding messages explaining what prompted that response. At pages 16–17, Juarez asked whether he needed "CEQA" to build a multi-use office building and for the "qualifications" and "exemptions." Gallegos then responds with the guidelines summary appearing at the top of the government's excerpt. Without the messages on pages 16–17, the jury would see Gallegos providing development guidance to Juarez without knowing that it concerned Juarez's own office project, not Evolutionary Homes.

***Government Exhibit 692A—Juarez's Earlier Investment Solicitations:*** This excerpt begins in April 2022, partway through a years-long text thread between Juarez and Andy Duong, with the two discussing names for the entity that would become Evolutionary Homes. Starting there suggests the venture initiated with Andy. But the government omits earlier messages in the same thread showing that Juarez had been soliciting the Duongs' investment months before. In November 2021, Juarez asks about three investment opportunities, including a $500,000 investment in the container-home project (156–57). The messages on pages 156–157 supply context for the later Evolutionary Homes exchanges the government selected by showing that Juarez was affirmatively soliciting the Duongs' investment.

***Government Exhibit 699D—Evolutionary Homes Message Thread:*** Government Exhibit 699D is a single-page excerpt from the Evolutionary Homes WhatsApp thread in which Andy Duong tells the group that "Andre Jones will need to participate in San Jose meetings." Standing alone, that message leaves the jury to speculate about what Jones's participation involved. Later portions of the same thread, which are included in the exhibit the government has designated as Exhibit 699J but does not intend to offer through Agent Barclay, provide that context. They show Jones coming to Evolutionary Homes's office and working alongside the team (Gov't Ex. 699J at 11, 22), and Juarez asking that speaker cards be filled out for Jones for upcoming Alameda County and Oakland meetings

(Gov't Ex. 699J at 46–47). Those messages provide context the jury needs to properly evaluate Jones's participation in Evolutionary Homes.

**2. Omitted Attachments from Emails Are Part of the Same Communications.**

The same completeness principle outlined above applies to email attachments. Two of the emails the government intends to introduce through Agent Barclay, Government Exhibits 730 and 1194, are offered without all their attachments. Each omitted attachment is already a government exhibit (Gov't Exs. 731, 732, and 1197), but the government has left them out of the exhibits it plans to introduce through Agent Barclay. Andy Duong therefore asks that all attachments be admitted together with the emails that transmitted them, rather than leaving the defense to attempt "repair work" later in trial. 1972 Adv. Comm. Note.

Government Exhibit 730 is a January 22, 2024 email circulating materials for the next day's Evolutionary Homes board meeting. The government will introduce the email with only one of its attachments, an organizational chart (Gov't Ex. 733). It omits two others: a January 23, 2024 board agenda (Gov't Ex. 731), which lists finances and various expenses as subjects for board discussion, and an expense sheet (Gov't Ex. 732), which identifies $91,127 in Evolutionary Homes debts and expenses. Those attachments are part of what the email communicated, and the jury cannot fairly assess the email, or the one attachment the government selected, without the rest of what was sent.

The same is true of Government Exhibit 1194, Mario Juarez's June 7, 2022 email to David Duong and Andy Duong about the "House in a Box" project. The government omits the attached investment expenditure budget (Gov't Ex. 1197), which totals $750,000. Showing the jury the cover emails while withholding the documents they transmitted presents only a partial view of each communication. *See Beech Aircraft*, 488 U.S. at 172. The omitted attachments should therefore be admitted with the corresponding emails.

## III. CONCLUSION

For the foregoing reasons, Andy Duong respectfully requests that the Court issue (1) an order excluding the introduction of evidence through Agent Barclay where she has no personal knowledge and/or cannot lay proper foundation or relevance without relying on hearsay obtained throughout the course of her investigation; (2) an order excluding Government Exhibit 1833 as substantive evidence

under Federal Rule of Evidence 1006; and (3) an order admitting, contemporaneously with certain excerpted exhibits the government intends to introduce through Agent Barclay and which are not otherwise excluded, the additional completing excerpts and attachments appended as Appendix A.

DATED: October 21, 2026

Respectfully submitted,

By: */s/ Erik Babcock*

Erik Babcock
LAW OFFICES OF ERIK BABCOCK

Winston Y. Chan
Christine A. Bonomo

GIBSON, DUNN & CRUTCHER LLP

W. Douglas Sprague
Bryanna Walker
COVINGTON & BURLING LLP

Attorneys for Defendant Andy Hung Duong