Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendants. | Case No. CR 25-0003 YGR<br><br>**DEFENDANTS' MOTION REGARDING SCOPE OF CROSS-EXAMINATION OF MARIO JUAREZ** |

## I. INTRODUCTION

Mario Juarez is alleged to have participated in every aspect of the two conspiracies charged in this case and in *United States v. Azevedo*, Case No. CR 25-0358 AMO. The defense anticipates that he will admit his participation in both. But despite the fact that the offenses in this indictment and in *Azevedo* carry maximum penalties of up to 20 years, Juarez was permitted to plead to a single count of conspiracy under 18 U.S.C. § 371, which carries a maximum penalty of 5 years. This is, to put it mildly, a significant benefit.

Defendants respectfully request that the Court permit cross-examination regarding the fact that Juarez's sole offense of conviction carries a maximum of five years and the fact that he avoided conviction under statutes carrying higher penalties. In light of the concerns the Court raised on October 30, 2026, the defense does not seek to elicit the specific statutory maxima for offenses Juarez has avoided having to admit. Trial Tr. 2278:11–2279:10. Instead, the defense asks the Court for guidance on the language the defense may use to describe the benefit Juarez received from pleading guilty to an offense carrying the lower statutory penalty—for example, that by pleading guilty to the § 371 count, Juarez avoided offenses carrying "substantially higher" or "significantly higher" maximum sentences.

The Ninth Circuit has made clear that cross-examination exposing the benefits a cooperating witness has received pursuant to a plea agreement is "essential" to a fair defense, and the Court has discretion to permit this limited, non-numerical inquiry. *United States v. Mayans*, 17 F.3d 1174, 1184 (9th Cir. 1994); *United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). That approach protects the defendants' Confrontation Clause rights while eliminating any risk of improperly raising the charged defendants' potential punishment before the jury.

## II. FACTUAL BACKGROUND

### A. The *Thao* Indictment and the *Azevedo* Information

On January 9, 2025, a grand jury returned an eight-count Indictment against the defendants here. Dkt. No. 1. Counts One and Four charge all four defendants with conspiring with

Mario Juarez (described as "Co-Conspirator 1"). Count One charges conspiracy to commit federal-program bribery under 18 U.S.C. § 371, and Count Four charges conspiracy to commit honest services mail and wire fraud under 18 U.S.C. § 1349. *Id.* ¶¶ 59–63, 69–70. According to the Indictment, Juarez participated at every stage of the alleged scheme: he met with Thao on October 7, 2022, to discuss the arrangement that allegedly initiated the scheme (*id.* ¶ 16); he received $75,000 from California Waste Solutions to fund the negative mailers (*id.* ¶¶ 14, 22); he made the first payments to Jones (*id.* ¶¶ 27–29); and he authored the March 26, 2023 summary of the alleged "Deal Points" (*id.* ¶ 31). The Indictment alleges that he joined both the bribery conspiracy underlying counts Two and Three (bribery) and the honest services fraud conspiracy underlying Counts Five through Seven (wire fraud). *Id.* ¶¶ 10–11, 13, 15.

The maximum terms of imprisonment for the counts Juarez avoided are as follows: 10 years for § 666(a)(2) bribery (Count Three); 20 years for § 1349 conspiracy (Count Four); and 20 years for each honest services mail and wire fraud count (Counts Five through Seven).[1] *Id.* at 2–8. Of the bribery and fraud offenses charged in the Indictment, the § 371 conspiracy carries the lowest maximum term of imprisonment—one-quarter of the maximum for the § 1349 conspiracy and for each honest services fraud count. *Id.*

Juarez is also a co-conspirator in *United States v. Azevedo*, No. CR 25-0358 AMO. In the Information in that case, he is "Co-Conspirator 2" and is alleged to have participated in every aspect of a separate conspiracy to commit honest services wire fraud. *See* Dkt. 1 (case CR 25-0358).[2] As noted above, the applicable statutory maximum penalty for the avoided charge is 20 years.

**B. Mario Juarez's Plea Agreement**

Juarez was "Co-Conspirator 1" but not a named defendant in the Indictment. On January

[1] Count One (§371 conspiracy) mirrors the count Juarez admitted and carries a maximum five year penalty. Count Two (bribery under 18 U.S.C. § 666(a)(1)(B)) applies to government officials only. Juarez is not alleged to have participated in Count 8 (false statement under 18 U.S.C. § 1001), which also carries a five-year maximum.

[2] Here again, Juarez is not alleged to have participated in making false statements under 18 U.S.C. § 1001 (Count 2), which carries a five-year maximum.

7, 2025, he entered into a cooperation agreement and pleaded guilty to a single count of an information charging him with conspiracy to commit bribery in violation of 18 U.S.C. § 371. *See* Case CR 24-0623 AMO, Dkt. No. 5 at ¶ 1; Trial Tr. 2277–78, 2329 (Juarez testifying that he pleaded guilty because he "conspired to commit bribery"). Juarez has not been charged with, or required to plead guilty to, the § 1349 conspiracy, § 666 bribery, or honest services mail and wire fraud offenses alleged in the Indictment or the honest services wire fraud conspiracy alleged in the *Azevedo* matter, even though the Indictment (in this case) and the Information (in *Azevedo*) allege that he participated in the conduct underlying each of those offenses.

Per his plea agreement, Juarez has not yet been sentenced. *See* Case 4:24-cr-00623-AMO, Dkt. No. 5 at ¶ 10. In exchange for Juarez's full cooperation and truthful testimony, the government promises not to prosecute Juarez for the additional counts, and to consider filing a downward-departure motion under § 5K1.1 upon completion of Juarez's cooperation. *Id.* at ¶¶ 16–17.

**C. Bryan Azevedo's Plea Agreement**

Like Juarez, Bryan Azevedo has entered into a cooperation plea agreement with the government and is expected to testify in this case. Dkt. No. 321 at 10. Unlike Juarez, however, Azevedo was required to plead guilty to a conspiracy to commit honest services wire fraud in violation of 18 U.S.C. § 1349, which carries a 20-year statutory maximum penalty, and to making false statements to federal agents in violation of 18 U.S.C. § 1001. *See* Case No. CR 25-0358 YGR. While Azevedo is not alleged to have been a member of the Oakland conspiracy charged here, the conduct to which he pled guilty is related: it involved allegations of a $2,000 cash payment and the promise of future payments in connection with San Leandro's potential purchase of housing units from Evolutionary Homes. Dkt. No. 354 at 8; Dkt. No. 362-1 at 3–4. The government intends to call Azevedo to testify about that scheme, which he says he carried out with Andy Duong and Juarez. Dkt. No. 354 at 8.

## III. ARGUMENT

### A. The Confrontation Clause Requires that Defendants Be Permitted to Cross-Examine Juarez Regarding the Benefits of His Plea Agreement.

"The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). A defendant's right to cross-examine adverse witnesses is "especially important with respect to accomplices or other witnesses who may have substantial reason to cooperate with the government." *United States v. Mayans*, 17 F.3d 1174, 1184 (9th Cir. 1994); *see also United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993) (the testimony of a cooperating government witness "must be considered with more caution" than that of other witnesses, because the cooperating witness may have reason to lie to gain favorable treatment or "strike a good bargain with the Government").

The Ninth Circuit has held that inquiry into the details of a plea agreement is "essential" for effective cross-examination, because such details are "highly relevant" in assessing the credibility of a co-defendant who has pleaded guilty. *Mayans*, 17 F.3d at 1184. This is "especially true" when the witness has not yet been sentenced, because the witness has a "continuing incentive to give testimony that strengthens the prosecution's case." *Id.* In *United States v. Schoneberg*, the Ninth Circuit emphasized that the defense must be permitted to cross examine a cooperating witness's motivation for testifying to the government's satisfaction—noting that "[e]veryone in a trial speaks to an audience, usually the jury," but for a cooperating witness who seeks to earn a benefit pursuant to his plea agreement, "the audience that mattered to [the witness's] fate was not the jury, it was the prosecutor." 396 F.3d 1036, 1042 (9th Cir. 2005).

Here, it is essential for a fair defense that counsel be permitted to inquire into the substantially higher maximum penalties Juarez could have faced but avoided by pleading guilty to a charge that carried the lowest statutory maximum. Juarez received an unusual benefit from the government by pleading guilty to the § 371 conspiracy—which carries only a five-year maximum statutory sentence—when, like Bryan Azevedo, he could have been required to plead to the §

1349 conspiracy count, which carries a 20-year maximum . Like the co-defendant in *Mayans*, Juarez has not yet been sentenced and has a continuing incentive to give testimony strengthening the government's case.The benefits he has received or will receive from his plea agreement are highly relevant for the jury to assess his credibility.

Further, improperly limiting cross-examination about the benefits a cooperating witness receives from his plea agreement violates defendants' Confrontation Clause rights and may require reversal. *United States v. Bleckner*, 601 F.2d 382 (9th Cir. 1979) (reversing conspiracy conviction, finding Confrontation Clause violation where district court limited cross-examination about benefits government witness received from negotiated plea agreement); *Schoneberg*, 396 F.3d at 1043 (reversing conviction where defense counsel was not permitted to cross-examine a cooperating defendant about how he could earn a downward-departure motion in exchange for his testimony); *United States v. Nickle*, 816 F.3d 1230, 1235–36 (9th Cir. 2016) (finding district court abused its discretion in refusing to allow cross-examination of cooperating co-conspirators regarding terms of their plea agreements).

The defense does not intend to cross-examination Juarez regarding the exact maximum penalties his plea agreement allowed him to avoid. However, the fact that Juarez avoided much higher penalties is highly relevant for the jury to assess his credibility and motive for testifying. It is undisputed that Juarez is "Co-Conspirator 1" in this case, was involved in the alleged conduct underlying Counts One through Seven, and was "Co-Conspirator 2" in the conduct alleged against Azevedo. Yet the government not only declined to charge Juarez with any of the substantive offenses in which he allegedly participated in both this case and the *Azevedo* matter but also selected the conspiracy count that carries the lowest maximum sentence. The government could have required Juarez to plead to the § 1349 conspiracy, as it required of Azevedo despite Azevedo's much less extensive involvement in the charged offenses. It chose not to. Cross-examination into this unusual benefit will allow the jury to understand Juarez's potential bias and the extensive benefits he is getting in exchange for his cooperation.

**B. The Court Has Broad Discretion to Allow Such Inquiries on Cross-Examination.**

Trial judges have "broad discretion" to limit cross-examination, but "that limitation cannot preclude a defendant from asking, not only '*whether* [the witness] was biased" but also "to make a record from which to argue *why* [the witness] might have been biased.'" *Schoneberg*, 296 F.3d at 1042 (emphasis in original). "[W]here a plea agreement allows for some benefit or detriment to flow to a witness as a result of his testimony, the defendant must be permitted to cross-examine the witness sufficiently to make clear to the jury what benefit or detriment will flow, and what will trigger the benefit or detriment, to show why the witness might testify falsely in order to gain the benefit or avoid the detriment." *Id*. The key factor with respect to cross-examination about a plea bargain "is not the actual existence of a deal but the witness' belief or disbelief that such a deal exists." *Mayans*, 17 F.3d at 1184 (citing *United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976)); *United States v. Del Toro Soto*, 676 F.2d 13, 19 (1st Cir. 1982) ("It was the witness's understanding of the plea bargain, not the statutory penalty on the dismissed counts, that bore on his credibility.")

Undersigned counsel has not located cases in the Ninth Circuit addressing the situation at bar: a cooperating witness who, despite admitting participation in all the charged conduct, is permitted to plead to a substantially less serious offense and thereby avoid much higher maximum sentence exposure. This is, presumably, because such lenient agreements are frowned upon by the Justice Department policies, which require that where "a prosecution is to be concluded pursuant to a plea agreement, the defendant should be required to plead to a charge or charges … [t]hat ordinarily include the most serious readily provable offense consistent with the nature and extent of his/her criminal conduct." Justice Manual § 9-27.430.[3] However, the First Circuit in *Del Toro Soto*, *supra*, addressed a closely analogous situation. There, a cooperating

---

[3] Available at https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution#9-27.430; *see also* Comment 4 (noting the "negative jury appeal that may result … when a principal prosecution witness appears to be equally culpable as the defendants but has been permitted to plead to a significantly less serious offense").

codefendant testified that, in return for his cooperation, three of four counts charged against him would be dismissed, and he would be permitted to plead to a single count carrying a maximum penalty of five years. 676 F.2d at 18. Defense counsel sought to examine the witness regarding the fact that one of the dismissed counts carried a maximum of 25 years. *Id.* The district court precluded that line of questioning but permitted counsel to inquire (1) whether the witness understood that a dismissed count carried a much higher penalty than the count he pled guilty to; and (2) whether the witness learned during discussions with his lawyer what penalties each charge carried. The district court did so in order to allow counsel to "argue to the jury that [the witness] bargained for a count in the indictment that carries a maximum of five years when there were other counts that carried a higher penalty." *Id.* at 19. The Court of Appeal found no error in this limitation of the cross-examination, holding that "it was the witness' understanding of the plea bargain, not the statutory penalty on the dismissed counts, that bore on his credibility." *Id.*

The defense does not intend to elicit testimony regarding Juarez's understanding of the Sentencing Guidelines or his knowledge of the exact statutory maxima applicable to offenses the government elected not to charge. Instead, like the permitted line of questioning in *Del Toro Soto*, the defense here intends to ask Juarez only about his understanding of the maximum punishment for the § 371 conspiracy charge and the fact that the government elected not to charge him with offenses carrying significantly higher penalties. Juarez's understanding of the benefits of the deal he received is critical for the jury to weigh his credibility against his incentive to testify favorably for the government, and inquiry into his knowledge of the higher penalties (without asking the exact maximums) is the type of permissible cross-examination that *Del Toro Soto* upheld.

The defense anticipates that the government will seek to distinguish *Del Toro Soto* on the basis that it involved dismissed counts, while Juarez was never charged with counts other than the § 371 conspiracy. This is a distinction without a difference. Like the cooperating witness in *Del Toro Soto*, Juarez admitted conduct underlying multiple charges (in both this case and *Azevedo*), but the government decided to reward his cooperation by not pursuing those charges. The fact that the government decided not to charge the other counts here, rather than dismissing them after

the fact as in *Del Toro*, makes no difference. The government's procedural maneuvers do not justify hiding from the jury the benefit it has given Juarez.

### C. The Court Should Permit the Defense to Describe the Avoided Penalties as "Substantially Higher" or "Significantly Higher," Without Reference to Specific Numbers.

The defense recognizes the concern the Court expressed on October 30, 2026 about introducing the statutory maximums of the offenses to which Juarez was not made to plead. Tr. 2278. The approach the defense proposes accommodates both the Court's concern and the defendants' Confrontation Clause rights. The defense must be permitted "to make clear to the jury what benefit or detriment will flow" from Juarez's plea agreement. *Schoneberg*, 396 F.3d at 1042. The jury cannot appreciate that benefit without knowing that the offenses Juarez avoided are substantially more serious than the one to which he pleaded. Thus, as in *Del Toro Soto*, where the court excluded the statutory penalties but permitted questioning about whether the witness understood that a dismissed count carried a much higher penalty, a qualitative description—"substantially higher" or "significantly higher"—conveys the magnitude of Juarez's benefit without disclosing any figure from which the jury could infer the defendants' potential punishment. 676 F.2d at 19. The Court has discretion to permit this inquiry while limiting its form, and the appropriate balance is to permit a qualitative description of Juarez's avoided exposure without getting into specific statutory maximums.

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court (1) permit the defense to cross-examine Juarez regarding his understanding that, by pleading guilty to a single § 371 conspiracy count, he avoided offenses alleged in the Indictment and in the *Azevedo* matter that carry higher maximum sentences, without reference to any specific statutory maximum; and (2) provide guidance on the descriptive terms the defense may use, such as "substantially higher" or "significantly higher".

Dated: November 2, 2026

Respectfully submitted,

By: /s/

Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong