Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendants. | Case No. CR 25-0003 YGR<br><br>**DEFENDANTS' MOTION TO STRIKE FALSE TESTIMONY AND REQUEST FOR CURATIVE INSTRUCTION REGARDING THE VALUE OF CWS CONTRACT** |

## I. INTRODUCTION

On the morning of October 30, 2026, the Court excluded evidence of the value of the City of Oakland's residential recycling contract with California Waste Solutions ("CWS"), which the government offered to show the "magnitude of the contract, what it's worth." Tr. 2271–74. Within hours, cooperating witness Mario Juarez told the jury three times that the proposed 10-year extension of the CWS contract was worth "a billion dollars." Tr. 2424, 2438, 2471.

The testimony was factually incorrect, as the government knew or should have known. The government had just proffered its evidence on CWS's annual gross receipts under the contract, which (even over 10 years) amounted to nothing close to a billion dollars. Tr. 2272. In more than twenty interview memoranda documenting Juarez's conversations with the government, not a single one records him assigning any value to CWS or its contracts. Yet the government did not correct Juarez's testimony, despite having multiple opportunities to do so.

Under *Napue v. Illinois*, 360 U.S. 264 (1959), the government must correct testimony it knows or should know is false. Its failure to do so leaves the defense in an impossible position: either stand silent in the face of Juarez's false claims or impeach him with the very evidence that it asked the Court to exclude. Defendants therefore request that the Court strike the testimony and instruct the jury that it was false and that the jury has no evidence of the value of the CWS extension before it.

## II. FACTUAL BACKGROUND

On October 30, 2026, the government informed the Court of its intent to call Brittany Hines, a city employee who would testify to the "approximate value of the CWS contract." The government argued that the "magnitude of the contract" was relevant because one of the alleged deal points involved an extension of that contract. To support its claim, the government cited CWS's reported gross receipts from residential recycling. Tr. 2271:17–2272:16. The defense objected on the grounds that the government had not produced discovery on this issue until after opening statements and had not disclosed that Hines would testify about the CWS contract's approximate value; in addition, the defense noted that the proffered figures did not take into account business costs. Tr. 2273; *see* Dkt. 399. The Court ordered the exclusion of this evidence, finding that the government's last-minute disclosure was unfairly prejudicial and that evidence regarding the value of the CWS contract may only be elicited on government's cross-examination of the defendants, should they choose to testify. Tr. 2274:6–7, 11–13. Both the government and the defense acknowledged the Court's order. Tr. 2274:14, 19.

That same morning, Mario Juarez took the stand. On three separate occasions, he testified

that the extension of the CWS contract was worth a billion dollars:

> Q. [reading] "Plus we have a 10-year extension to CWS." Mr. Juarez, when you mentioned a 10-year extension to CWS, what were you referencing?
>
> A. The—CWS is California Waste Solutions. They hold the contract for the recycling pickup in the City of Oakland. Getting an extension for that contract is important, but also to get an extension on what they had at the Army Base, a land deal. They would also get that extension to complete that. With both of those things, CWS would be able to build the facilities, finance the trucks, and move more money. **It's a billion-dollar worth business, a lot more than Evolutionary Homes would make**.

Tr. 2424.

> A. [I]t was a full-package deal. It was—everything was agreed. What was not agreed was said. The only thing that she added to that agreement initially was $300,000 paid to her through Andre. It was a minute amount of money versus the amount of money that we were about to make. **And if we received the 10-year extension of CWS, it would have been another billion dollars in value.** A transfer station for garbage station in Army Base, adds a tremendous amount of value in the City of Oakland.

Tr. 2438.

> Q. [As read]: "CWS extension and Army Base deal are priorities. He said he knows and he will deliver." What did you mean by that?
>
> …
>
> A. The real money for the Duong family is [objection overruled] is CWS, the Army Base and the garbage contract. **This is billion dollars. This is not 100 million, not 69 million. This is the money.**

Tr. 2471. Not once did the government attempt to correct Juarez's testimony.

The government has disclosed no memorandum of interview or any other discovery in which Juarez claimed a billion-dollar value to the CWS contract extension. Instead, Juarez has told agents that "for the most part [he] was not involved in the CWS business." Juarez FD-302 (Feb. 10, 2025) at 11.[1]

---

[1] At one point, Juarez did refer to a "billion dollar" figure, but he alleged that was the value of a potential deal between Evolutionary Homes and Santa Clara County, not the CWS contract extension or Army Base project.

## III. ARGUMENT

### A. Juarez's claims about a billion-dollar value are false and inadmissible.

Juarez's "billion-dollar" figure has no basis in fact. CWS's primary revenue is derived from recycling and garbage contracts for cities in the Bay Area. None of these contracts is valued at one billion, nor would a 10-year extension provide anything close to that value. The government knew statements regarding a "billion-dollar" value of the CWS extension were false. Just before Juarez took the stand, the government presented evidence of the approximate value of the CWS contract during the relevant time period. Even if the government did not know the exact value of a 10-year contract extension, simple arithmetic says it was nowhere near a billion dollars.

The testimony is also inadmissible. Juarez lacks personal knowledge of the value of a municipal franchise, and such a valuation is not proper lay opinion. Fed. R. Evid. 602, 701. Far more problematically, this testimony allowed the government to introduce precisely the evidence the Court had just excluded—the contract's magnitude, but falsely inflated many times over.

### B. Due Process requires that the government correct Juarez's false testimony regarding the value of the CWS contract.

The government violates due process when it knowingly solicits false testimony or knowingly allows it "to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025). The Fifth Amendment Due Process clause "entitles defendants in criminal cases to fundamentally fair procedures. It is fundamentally unfair for a prosecutor to knowingly present perjury to the jury." *United States v. LaPage*, 231 F.3d 488, 491 (9th Cir. 2000). If a prosecutor knows his witness has lied, he or she has a "constitutional duty to correct the false impression of the facts," even if the prosecutor did not himself elicit the false testimony, and even if the defense attorney had the opportunity to cross-examine the witness about the false testimony. *Id.* at 492. The prosecutor has a constitutional obligation to correct false testimony whether or not the prosecutor intentionally elicited the testimony. *Id.* The government's failure to correct false witness testimony that had a "reasonable likelihood" of affecting the jury's judgment constitutes a *Napue* violation requiring "virtually automatic" reversal on appeal. *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

The Supreme Court has made clear that "the Due Process Clause imposes the duty to correct false testimony on the State, not the defense," explicitly rejecting the suggestion that the defense bears responsibility for discovering the lie. *Glossip*, 604 U.S at 229. As set forth above, the government knew Juarez's claims regarding the value of a contract extension were false. Nevertheless, when Juarez three times volunteered that CWS stood to gain a billion dollars from the extension, the government did not question or attempt to correct the testimony.

### C. The Court should strike Juarez's testimony regarding the value of the CWS contract extension and instruct the jury that the testimony was false.

The government's failure to correct Juarez's testimony is precisely the type of conduct that gives rise to a *Napue* violation. The government sought to introduce evidence of the approximate value of the contract to demonstrate "the magnitude of the [CWS] contract." Tr. 2272:2-3. Despite the Court's exclusion of this evidence, the government stood silent while Juarez repeatedly testified—falsely—that CWS stood to gain a billion dollars under the alleged deal. The fact that the Court had just excluded exactly the type of evidence that Juarez presented heightens the need for a curative instruction. Absent instruction from the Court, the government forces the defense to either leave the prejudicial and false billion-dollar claim in evidence, or rebut it by introducing evidence of the actual value of the CWS contract—the very evidence the defense requested to exclude.

/ / /

## IV. CONCLUSION

Defendants respectfully request that the Court strike Juarez's testimony regarding the supposed billion-dollar value of the CWS contract extension. These statements are factually inaccurate and serve only to unfairly prejudice the defense. The defense further requests the Court instruct the jury that (1) Juarez's testimony about the value of the CWS contract was incorrect, (2) that the jury must disregard it entirely, and (3) that there is no evidence before the jury about the value of the CWS contract or the CWS contract extension.

Dated: November 4, 2026

Respectfully submitted,

By: *\/s/*

Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong