Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>SHENG THAO, et al.,<br>Defendants. | No. CR 25-0003 YGR<br><br>**DEFENDANT DAVID DUONG'S OPPOSITION TO ADMISSION OF RECORDINGS AS PRIOR CONSISTENT STATEMENTS** |

The government asks to play two excerpts (Exhibits 1881AT and 1881CT) of a recorded May 15, 2024 interview of Mario Juarez by OPD Sergeant Anwan Jones as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). Defendant David Duong requests that the Court exclude these clips as inadmissible hearsay because Mr. Juarez's motive to fabricate arose before the statements were made. The clips serve the sole purpose of improperly bolstering Juarez's testimony and have no probative force bearing on credibility apart from mere repetition.

## ARGUMENT

### I. The government has failed to identify the specific testimony that it claims is consistent with the recordings.

As a threshold matter, the recordings are inadmissible as consistent prior statements because the government has failed to identify specific trial testimony that (1) is consistent with the recordings, and (2) was challenged by the defense. *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996) (proponent "must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony"). Both Exhibits 1881AT and 1881CT include statements as to which there has been no testimony at all (such as the blocked windows at the Evolutionary Homes showroom), and statements as to which there has been no defense challenge (the nature of the business, the existence of a showroom, the fact that Juarez was locked out of the showroom, the donation of drones to OPD, the existence of the Vietnam trip).[1] Until the government identifies specific trial testimony that was challenged by the defense and is consistent with its proffered hearsay statements, they remain inadmissible.

### II. The requirements of Rule 801(d)(1)(B)(i) are not met because Mr. Juarez's motive to fabricate predated the May 15, 2024 recording.

Rule 801(d)(1)(B)(i) permits the admission of a prior consistent statement to rebut a charge of recent fabrication or improper motive only if the statement was made before the motive to fabricate arose. *Tome v. United States*, 513 U.S. 150, 156 (1995); *see* 2014 Advisory Committee's Note to Rule 801 (2014 amendment retains the requirement of *Tome*). The government conceded that Mr. Juarez already harbored a motive to retaliate against the Duongs when he spoke with Sergeant Jones. Tr. 3684-85, 3688. That concession alone renders the May 15, 2024 clips inadmissible.

Mr. Juarez had only one motive: to take revenge against the Duongs by providing information about them to law enforcement. The government attempts to recast one motive as

[1] Exhibit 1881CT is, at least in part, inconsistent with Juarez's testimony. He testified at trial that it was his idea to purchase the news outlet that was inquiring about the Vietnam trip (Tr. 2656); in 1881CT he said it was David Duong's idea. Ex. 1881CT at 00:33:43.

two by alleging a secondary motive of cooperation with federal authorities. It argues that this secondary motive did not exist before May 15, because Mr. Juarez was not yet aware of the federal investigation. But Mr. Juarez's cooperation was not an independent motive; it was simply the means by which he intended to carry out his revenge. His initial meeting with OPD was for the purpose of providing evidence against the Duongs—i.e. cooperating—and he pressed for a federal investigation at that meeting. Communications with his attorneys make clear that he cooperated *because* he wanted revenge: he attempted to condition his own plea on the government securing convictions of the Duongs. Tr. 2804, 2807; Ex. 5065 at p. 27.

As established at trial and conceded by the government, the motive for revenge (and for cooperation as a means to that end) existed by April 24, 2024—well before the May 15, 2024 clips the government seeks to introduce. *See* Ex. 952 (April 24, 2024 email from Mr. Juarez to the Duongs stating that Mr. Juarez wanted to "document [his] case for the sure-to-come investigations"); Ex. 5110 (May 5 OPD bodycam footage of interview with Mr. Juarez).

## III. Alternatively, Mr. Juarez's desire to cooperate predated the May 15, 2024 recording.

Even if the Court treats revenge and cooperation as independent bases for Mr. Juarez's motive to lie, both predate the May 15 interview. During the May 5 interview, Officer Jones told Mr. Juarez that Mr. Juarez had just admitted to committing federal crimes, thereby putting him on notice that the federal government could charge him for his involvement in the alleged bribery scheme. *See* Ex. 5110 at 28:29. Thus, should there be any difference between a general motive to cooperate and a specific motive for leniency, Mr. Juarez's motive to fabricate in either instance arose as early as May 5, because he knew he could be charged for the same conduct of which he accused the defendants.

Nor does Mr. Juarez's lack of awareness of an ongoing federal investigation make his statements to OPD more credible. The Ninth Circuit has held that "a motivation to fabricate exists when such statements are inherently self-serving" and noted that the self-serving nature of statements can apply to anticipated future events. *United States v. Lynch*, 903 F.3d 1061, 1070

(9th Cir. 2018) ("[a]n alibi surely does not become a prior consistent statement, just because it is proffered before a crime occurs," and a statement of innocent purpose does not become a prior consistent statement when the defendant had already planned to commit the crime when he made it). *Lynch* held that the district court properly excluded prior statements as inadmissible hearsay because the defendant's statements "planted the seeds for a defense against the obvious threat of prosecution for Lynch's intended future activities," even though the defendant had not yet begun the illicit activity. *Id*. That defendant "consistently told the same story was not ultimately probative of his veracity" when circumstances indicated he already had a strong incentive to lie. *Id*. at 1071.

Accordingly, the inquiry focuses on the self-serving nature of those statements and the surrounding circumstances indicating such a motive. *Collicott*, 92 F.3d at 989 (witness's motive to fabricate, if any, existed the moment police officers stopped her with defendant, because she did not want officers to believe she owned the drugs in the car); *United States v. Miller*, 874 F.2d 1255, 1274 (9th Cir. 1989) (defendant's prior exculpatory statements inadmissible because all were made either to federal agents or defense attorneys and during the period the defendant was under criminal investigation or indictment, "thus heightening the suspicion that the statements are too self-serving to have any significant probative value"); *see also United States v. Portillo*, 969 F.3d 144, 173 (5th Cir. 2020) (cooperators' prior statements to law enforcement inadmissible because they were motivated by a desire to shift blame to defendants to obtain benefits of cooperation).

Here, the circumstances in which Mr. Juarez made his May 5 statements to OPD show that he had a strong, self-serving interest to make the statements he made and already intended to cooperate with law enforcement. On May 5, 2024—shortly after the altercation at CWS—Mr. Juarez volunteered information to OPD, actively sought federal prosecution of the alleged scheme, and repeatedly asked if OPD could refer the matter to FBI. Ex. 5110; Tr. 2789. His self-interest is betrayed by the fact that he sought to implicate others while denying that he had committed any crime. *Id.* At trial, Mr. Juarez admitted that rather than "confessing it all," he had

"tried to minimize [his] involvement" when speaking with OPD. Tr. 2788. That Mr. Juarez did not yet know he was a target of the federal government's investigation on May 5 does not keep his statements from being self-serving. And whether he knew that he would be required to cooperate pursuant to a plea agreement, and not as an uninvolved witness, also makes no difference to the analysis.

## IV. The recording is inadmissible hearsay that serves only to improperly bolster Mr. Juarez's trial testimony.

Finally, the government cannot introduce these clips simply because Juarez's credibility was attacked on cross-examination. Doing so would constitute improper bolstering. *See Tome*, 513 U.S. at 157–58 ("Prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because [he or] she has been discredited…. The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told."); *United States v. Gonzalez*, 533 F.3d 1057, 1060–61 (9th Cir. 2008) (government witness's testimony improperly and prejudicially bolstered by police officer's testimony, which merely retold the witness's story).

Moreover, "Rule 801(d)(1)(B) should not be read to open 'the floodgates' to any prior consistent statement" and must be considered alongside Rule 403 limitations of prejudicial and cumulative evidence. *Gonzalez*, 533 F.3d at 1061. Here, neither of the government's proffered clips sheds any light on Mr. Juarez's credibility and serve no purpose other than to reiterate what he has already repeatedly said at trial. *See Miller*, 874 F.2d at 1273–74; *Gonzalez*, 533 F.3d at 1060–61. To conclude that cross-examination opens the door to prejudicial and cumulative evidence that essentially retells Mr. Juarez's story would "remove the restraint on prior consistent statements that Rule 801(d)(1)(B) imposes." *Gonzalez*, 533 F.3d at 1061.

**CONCLUSION**

The government's inability to satisfy the requirements of Rule 801(d)(1)(B) precludes it from relying on the Rule for admission of the OPD recordings. For the foregoing reasons, Mr. Duong respectfully requests that the Court exclude the OPD clips.

Dated: November 15, 2026

Respectfully submitted,

*/s/*
Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Duong