# EXHIBIT 1

**Volume 19**

**Pages 4032 - 4278**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

UNITED STATES OF AMERICA, )
Plaintiff, )
VS. ) **NO. 4:25-cr-00003-YGR**
SHENG THAO, et al., )
Defendants. )

Oakland, California
Tuesday, November 17, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

CRAIG H. MISSAKIAN
UNITED STATES ATTORNEY
1301 Clay Street
Oakland, California 94612
**BY: ABRAHAM H. FINE**
**MOLLY PRIEDEMAN**
**ASSISTANT UNITED STATES ATTORNEYS**

UNITED STATES ATTORNEY
450 Golden Gate Avenue
San Francisco, California 94102
**BY: LLOYD A. FARNHAM**
**ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By: Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG
Official United States Reporter, CSR No. 12219

records; is that right?

A. If you think it could be relevant to the investigation.

Q. And in this case, after you joined, there was a search warrant. There were several search warrants but there was one executed at CWS; is that right?

A. Correct.

Q. A couple of months after you joined?

A. Correct.

Q. And you did, through the course of -- were you at CWS during the search warrant?

A. Sorry. Yes.

Q. So there were several locations searched, houses and a business, and you were physically at the search warrant site at CWS?

A. Correct.

Q. And during the course of the search at CWS, you did recover various records, including bank records; is that right?

A. Yes.

Q. And some of those records -- also, you've been -- you have been here in court during trial; is that right?

A. Yes.

Q. And you heard Mr. Juarez's testimony?

A. Yes, yeah.

Q. And there was some testimony that Mr. Juarez provided that I want to see if we can tie together with records that you

found at CWS.

There was a discussion with Mr. Juarez on cross-examination about padding expenses.

Do you remember that topic?

A. Yes.

Q. And Mr. Juarez was asked questions about instances in which he submitted expenses for reimbursement; is that right?

A. Correct.

Q. And the questions suggested that there were two versions of bank records. You remember that line of questioning?

A. Yes.

Q. When you executed the search warrant at CWS, you found the expenses -- the expense reports and the backup documents that Mr. Juarez submitted; correct?

A. Correct.

Q. So when that line of questioning was happening in court, you were seeing documents you had seen before because you were part of the search at CWS that recovered those documents?

A. So when I saw that in court, I -- I guess at the time that the search warrant was done, I didn't review those documents to compare them to the bank statements and that type of detail.

But, yeah, when I heard it in court, I went back and I -- I looked for the records.

Q. You had the records as a result of the search?

A. Mm-hmm.

Q. Is that right?
A. Correct.
Q. But you did not, at the time, let's say June of 2024, when the search happened, or in the months afterwards, you didn't do the work that you saw done here in court, that is taking the expense reports and comparing them to the records that you obtained from the banks?
A. I had done that with the actual expense report, not the backup records that were submitted by Mr. Juarez. So I took the expense report and compared it to bank statements that I had obtained from subpoenas.
Q. I see. But you didn't look at the backup documents.
When -- when Mr. Juarez submitted an expense report and supporting documents, you, in reviewing that, didn't look at the submitted backup documents with the bank records obtained from the banks; is that fair?
**MR. FARNHAM:** Objection. Compound and foundation.
**THE COURT:** You can answer it if you can understand it.
**THE WITNESS:** Sorry. Can you repeat it.
**MR. SCHENK:** I will, thank you.
**BY MR. SCHENK:**
Q. I think what you said was you did a portion of that comparison previously. You looked at the expense reports that were recovered during the search warrant, but you did not look

at the backup documents; is that right?
A. Correct. Like during the investigation, I did not, yes.
Q. But you have since done that?
A. I did when I heard it during the trial.
Q. And tell me about that. When you heard it in trial, you were surprised, that was new information; correct?
A. Correct.
Q. And as part of your late afternoons or evenings the last week or so, you took the backup documents this time; is that right?
A. Correct.
Q. And compared them to what?
A. And I compared them to the bank statements.
Q. And that work led you to conclude that the submitted backup statements were fabricated, were doctored; is that right?
A. The submitted backup documents were doctored, or at least the ones that I had reviewed. I'm not sure what was submitted to Mr. Juarez during trial, if it was the same thing, but I looked at the backup records related to the 83,000 expense reimbursement report.
Q. And about how many times were you able to match the submitted backup document with a true bank statement?
A. Sorry. I don't know if I can give you a -- a number. I don't -- I don't know if I can give you a number. Sorry.

**Q.** Okay. Were there any instances in which you did that comparison, the submitted backup and the true bank statement, and found accuracy; in other words, found that the bank statement had not been doctored?

**A.** Yeah. Yes, I believe so.

**Q.** I want to talk about a few examples and see if these examples are ones that you happened to look at in the last week or so.

**MR. SCHENK:** Your Honor, if I may approach.

(Counsel approaches witness.)

**THE COURT:** And Mr. Schenk, you've got seven minutes.

**THE WITNESS:** Thank you.

**BY MR. SCHENK:**

**Q.** I've handed you a binder of documents. I'd ask you to just start by looking at it. It's marked 5317. Agent -- sorry.

Do you recognize this?

**A.** Yes.

**Q.** This is the expense report and backup documents that we were just talking about; is that right?

**A.** Correct.

**MR. SCHENK:** Your Honor, the defense offers 5317.

**MR. FARNHAM:** No objection.

**THE COURT:** It's admitted.

(Trial Exhibit 5317 received in evidence.)

**MR. SCHENK:** Thank you.

**BY MR. SCHENK:**

**Q.** I want to talk about expenses related to one particular account and it's an account called Provident.

Are you familiar with the Provident account?

**A.** Yes.

**Q.** You obtained the true bank records from the Provident account; is that right?

**A.** Correct.

**MR. SCHENK:** I would also like to, with the Court's permission, hand you some Provident bank records.

Your Honor, may I approach?

**BY MR. SCHENK:**

**Q.** I've also handed you what's been marked as Exhibits 5271 and 5273.

Do you see those?

**A.** Yes.

**Q.** And do you recognize these as records you obtained through the grand jury subpoena process from Provident bank --

**A.** Yes.

**Q.** -- Credit Union?

**MR. SCHENK:** Your Honor, the Government -- I'm sorry. The defense offers 5271 and 5273.

**MR. FARNHAM:** No objection.

**THE COURT:** They're admitted.

(Trial Exhibits 5271 and 5273 received in evidence.)

**BY MR. SCHENK:**

**Q.** Agent, if I could start by directing your attention to 5317. That is the binder. And let's look at page 48?

**A.** Okay.

**MR. SCHENK:** It's been admitted, so I think, with the Court's permission, we can publish this.

**BY MR. SCHENK:**

**Q.** So I'm showing on the screen the expenses -- the backup documents for the expenses that Mr. Juarez submitted.

And if you look at page 48, do you see that these are expenses in the October 2022 time frame?

**A.** Yes.

**Q.** And if we turn to the next page, that's page 49, when you recovered these documents, they were all redacted; is that right?

**A.** Yes.

**Q.** Except for this one transaction, do you see the one transaction on October 13?

**A.** Yes.

**Q.** And it's alleging an expense from Costco for a little over $1,300.

Do you see that?

**A.** Yes.

**Q.** And was this one of the ones when you were -- I'm going to

call it homework.

When you were doing your homework over the last week, did you see this one?

A. Yes, I -- this is one that I could not match to the true bank statements.

Q. And in doing your work, did you take the document that I just handed you, marked 5271, that's one of the loose pieces of paper --

A. Mm-hmm.

Q. -- you took this -- the document I handed you and tried to do the comparison; is that right?

A. Yes.

Q. So if you'll turn with me now to 5271 on page 2.

And you spent your time looking for a matching expense; that is, in October 13, 2023, a roughly $1,300 charge from Costco, but you could not find it; correct?

A. Yeah. I mean, I don't know if it's the same month that I looked at. I just looked to see if it was -- but, yeah, I mean, it could be the same month that I looked at. I'm not really too positive.

Q. Okay.

A. But, yeah, that's similar to what I had looked at.

Q. When you're reviewing 5271, page 2, which is on the screen in front of you and also the paper copy that I gave you --

A. Yes.

**Q.** -- you do not see a matching Costco charge on October 13th; is that right?
**A.** Correct.
**Q.** And, therefore, did you conclude, when you did your homework, that Mr. Juarez had fabricated this bank statement that's 5317 and submitted it for reimbursement?
**A.** I concluded that -- I mean, when I was looking at it, it seemed like it was altered and it was included with an expense report that was seized at CWS.
**MR. SCHENK:** Your Honor, I have another one to do but maybe now would be a good time to end.
**THE COURT:** Okay.
**MR. SCHENK:** Thank you.
**THE COURT:** Members of the jury, then, we'll stand in recess.
One of the questions I have is if 15 minutes is feeling too short given the length of the day, we can add 10 minutes and finish at 2:10 to give you a 20-minute break.
Would that feel better to have a slightly longer break?
No?
**JUROR STIRNAMAN:** We're good.
**THE COURT:** All right. 15 minutes it is.
We'll stand in recess until tomorrow with you at 8:15. Thank you.
**THE COURTROOM DEPUTY:** Please rise for the jury.