# EXHIBIT 11

**Volume 14**

**Pages 3018 - 3194**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>VS.<br>SHENG THAO, et al.,<br>Defendants. | **NO. 4:25-cr-00003-YGR** |

Oakland, California
Monday, November 9, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

CRAIG H. MISSAKIAN
UNITED STATES ATTORNEY
1301 Clay Street
Oakland, California 94612
**BY: ABRAHAM H. FINE**
**MOLLY PRIEDEMAN**
**ASSISTANT UNITED STATES ATTORNEYS**

UNITED STATES ATTORNEY
450 Golden Gate Avenue
San Francisco, California 94102
**BY: LLOYD A. FARNHAM**
**ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By: Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG
Official United States Reporter, CSR No. 12219

this is in evidence.

**MR. SWANSON:** Can we just blow up the top?

**BY MR. SWANSON:**

**Q.** So November 1st, 2023, you submitted a reimbursement request for prenegotiated personal expenses; isn't that right?

**A.** Yes. It appears that that's an e-mail that I sent.

**Q.** And this is what you were claiming for food, rent, transportation through the end of October 2023; correct?

**A.** Yes.

**Q.** And if we could go to page 2 at the bottom, you received, in response to this request, what you were seeking, $86,505.68; correct?

**A.** Yes, this is an expense report that I authorized, and it was signed, I would assume, by my assistant because that's not my signature.

**Q.** And you got paid on that; right?

**A.** Don't remember if I got paid or not.

**Q.** Would it refresh your recollection to take a look at your bank statement?

**A.** Yes. Or the check if you have it.

**Q.** I have both.

**MR. SWANSON:** Your Honor, if I could approach?

**THE COURT:** You may.

**BY MR. SWANSON:**

**Q.** Mr. Juarez, I'm handing you two documents. One is

Exhibit 5154, a bank statement, and another, 5155, a check.

(Counsel approaches witness.)

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

**Q.** Tell me when you have had a chance to look at those.

**A.** (Witness examines document.)

I have a check --

**THE COURT:** That wasn't the question.

**THE WITNESS:** And I'm --

**THE COURT:** That wasn't the question.

**THE WITNESS:** Thank you, your Honor.

I have a -- I had an opportunity to look at them.

**BY MR. SWANSON:**

**Q.** Okay. Having looked at those two documents, does that refresh your recollection that you received, the end of October, a check for $83,000 from Evolutionary Homes as reimbursement for your expenses?

**A.** This is -- it says "Advance," but I assume that it's reimbursement.

**Q.** Does that -- that refreshes your recollection that you did get paid $83,000?

**A.** Yeah. But it doesn't reconcile with the invoice amount, but I assume that it is part of that.

**Q.** Okay. Well, let's take a look, then, at the reimbursement report that you submitted to get this money.

**MR. SWANSON:** This is Exhibit 599. If we could put that up.

Sorry. Let's actually go to the substance of it.

**BY MR. SWANSON:**

**Q.** This is a report that you submitted that listed, in detail, spreadsheet form, what you had incurred as expenses that you wanted to be reimbursed for; right?

**A.** I believe so, yes.

**Q.** Okay. And it's true, is it not, that what you did with these reimbursements was you padded them?

**A.** No.

**Q.** Okay. Isn't it true -- let's -- let's just take a look at the airline flights.

Isn't it true that with every single entry on this document where -- with every entry I've highlighted here, a flight, you took the price that you had to pay, and you added a hundred bucks to it when you asked for reimbursement?

**A.** I don't remember that.

**Q.** Okay. Then let's go through it.

Let's just take it step by step.

**MR. SWANSON:** Your Honor, I have bank records that -- that are somewhat voluminous. I'm going to ask them to be marked, but we'll see if they need to be admitted ultimately.

**THE COURT:** All right.

\\\

**BY MR. SWANSON:**

**Q.** So, Mr. Juarez, I'm handing you a set of documents that have been marked -- my apologies -- 5146, 5147, 5148, 5149, 5150, 5151, 5152, and 5153.

**MR. SWANSON:** May I approach, Your Honor?

**THE COURT:** You may.

(Counsel approaches witness.)

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

**Q.** Mr. Juarez, if you would, take a look at these and see if you recognize these as your Chase Bank account records for various months between December 2022 and October 2023.

**A.** (Witness examines document.)

Yeah. There's -- this appears to be my bank records for Ciudad Holdings.

**MR. SWANSON:** All right. Your Honor, I'd ask that Exhibits 5146 through 5153 be admitted.

**MR. FINE:** No objection.

**THE COURT:** They're admitted.

(Trial Exhibits 5146 through 5153 received in evidence.)

**BY MR. SWANSON:**

**Q.** Okay. So up on the screen, we have Exhibit 599. This is your expense report, and I think we're on page 7. What I'm showing you are highlights here.

**MR. SWANSON:** If we could just blow it up a little bit

so we can see the -- just take the top third here so we can see what these actually represent, so we get the far left.

**BY MR. SWANSON:**

**Q.** All right. So you can see these are highlighted flights from San Diego to Oakland on Southwest.

Do you see that?

**A.** I see there's highlighted documents, yes.

**Q.** Okay. So let's start at the top.

You see that first entry here. You're asking for reimbursement for a flight from San Diego to Oakland on December 4th that cost you $323.98.

Do you see that?

**A.** I see it.

**Q.** All right. Let's go to Exhibit 5146 at page 3.

**A.** Okay. I'm there.

**MR. SWANSON:** Could you blow that up?

**BY MR. SWANSON:**

**Q.** This is from your bank statement, produced by the Government, showing your flight on Southwest on December 4th that cost $223.98; correct?

**A.** I see it.

**Q.** So you asked for 323. That wasn't what you paid; right?

**A.** It appears not, yes.

**Q.** Okay. Let's go down to the next one.

December 14th on Exhibit 599.

A. The 14th or the --
Q. Hold on. We're just getting it up on the screen.
A. Okay.
Q. Another flight for which you asked for $323.98 for reimbursement.
Do you see that?
A. Page 4. Hold on.
Q. Page 5 of Exhibit 599. It's up on the screen. It's the second line -- yellow line down, if that helps.
A. I see it, yes.
Q. Okay. Let's take a look at the bank statement, 5146, page 4. December 14th, Southwest flight, $223.98; right?
A. I see it.
Q. So this is what you did with each of these flights; correct? On each of the times you asked for reimbursement, you lied about how much it cost and tacked on an additional hundred dollars; correct?
A. I didn't do that on every flight, but --
Q. Okay. Well, then let's just keep going. Let's take the next one.
A. Okay.
Q. January 7th, 2023, if you see on Exhibit 599, you billed the Duongs $323.98.
Do you see that?
A. Which date?

Q. That would be on January 7th, 2023, third line down, highlighted line down, red box on it if you look at the screen.
A. I see it.
Q. Okay. Let's take a look at Exhibit 5147, page 2.
There's that flight, $223.98. Another hundred bucks; right?
A. I see it.
Q. Okay. Let's do the next. January 21st. And, again, 323.98 billed to the Duongs.
Do you see that?
A. I do.
Q. Page 54- -- story. Exhibit 5147, page 3.
Again, 223.98; right?
A. I see it.
Q. Okay. So it's true, is it not, that time and time and time and time again, you padded your bills and lied about how much things cost when you sought reimbursement?
A. I see there's the discrepancy, yeah, as you mentioned. I can see that.
Q. You call that a discrepancy?
Is this a discrepancy to you to -- to tell your client that you have spent $323 when you didn't?
A. They're not my client.
Q. Your partner -- I'm sorry. Your business partner.
A. Yes.

**Q.** That's a discrepancy, in your mind?
**A.** I can see the issue of the amounts.
**Q.** Okay. Well, the Duongs didn't -- you didn't submit your bank statements to the Duongs; correct? Not these bank statements; correct?
**A.** I submitted how I paid for it, yes.
**Q.** Yeah. But let's take a look at what you did submit to the Duongs.
Let's go, if we could, to Exhibit -- well, let's start off with how you delivered your receipts to the Duongs. You said you provided some -- some receipts at some point in an effort to get repaid; right?
**A.** I don't remember if they were receipts or statements or how it was prepared by the accounting staff in Mexico, what was provided in particular.
**Q.** Mr. Juarez, I'd like to show you a document that is an e-mail from you to Isis Choto at Cal Waste, dated November 17th of 2023.
**MR. SWANSON:** May I approach, Your Honor?
**THE COURT:** Yeah.
**BY MR. SWANSON:**
**Q.** Do you recognize this document, Mr. Juarez, this e-mail?
**A.** Yeah, I recognize the -- an e-mail from Isis to me.
**MR. SWANSON:** Okay. And this was -- if we could move Exhibit 5250 into evidence.

**MR. FINE:** Which one is 5250?

**THE COURT:** The one-pager.

**MR. SWANSON:** The one in front -- oh, sorry.

**MR. FINE:** It doesn't have an exhibit number on it.

**MR. SWANSON:** 5251. My apologies.

**THE COURT:** 5251? Because mine didn't have a number either. Okay.

**MR. SWANSON:** Yep. My apologies.

**THE COURT:** No objection?

**MR. FINE:** No objection, Your Honor.

**THE COURT:** It's admitted.

(Trial Exhibit 5251 received in evidence.)

**MR. SWANSON:** Okay. If we could just blow that up, if we could. Just the top part.

Okay. Actually, we're going to need to use the ELMO for this, if we could, Your Honor.

**THE COURT:** That's fine.

**BY MR. SWANSON:**

**Q.** Mr. Juarez, you have in front of you Exhibit 5251, as you said, an e-mail from Isis Choto to you, thanking you for dropping off receipts. And she says [as read]:

"I'm going to assume some of the items on the attached are receipts you have for me for your personal expenses, which total about 83,000K, leaving about 894K."

Do you see that?
A. I see it.
Q. So you dropped off some documents for her to look at, right, to prove up what it was that you had spent the money on?
A. That's correct. I had someone dropped off those documents.
Q. Okay. So let's start with some of these reimbursement -- well, actually, let's just be clear. Let's just sort of walk through how that all happened then.
We have, at Exhibit 599, page 8, your Southwest flight reimbursements. So I'm going to start with two of these on June 15th and June 16th.
So you see here on June 15th. Do you see this -- this entry here for -- thank you. Yeah.
**THE COURTROOM DEPUTY:** Please make sure you have paper underneath, Counsel. Sorry.
**MR. SWANSON:** I do not want to pay for the ELMO.
**BY MR. SWANSON:**
Q. Do you see that entry there?
**THE COURT:** I should put that in my standing order so everybody is on notice in case of...
**BY MR. SWANSON:**
Q. I'm going to direct your attention to two entries here, on June 15th and June 16th.
Do you see those?

A. You know, it must be age, but I'm getting older and trying to follow up that line, but I see it.
Q. All right. So there's an entry for reimbursements for two flights on June 15th for $653.98.
Do you see that?
A. The first one, I see there's a flight from SAN to Oakland and then OAK to San Diego.
Q. Okay. First one is for $653.98.
Do you see that?
A. It says 353 98. I think you're wrong with the 600. Am I wrong?
Q. On June 15th for $353.98?
A. Yeah, not 600; right?
Q. Correct.
A. All right. We're looking at different amounts.
Q. All right. Let's just start again.
Do you see here highlighted, it says 625.23?
Do you see that?
A. 615, not 625.
Q. 615; correct?
A. Yes.
Q. And then over here, it's $353.98; right?
A. That's correct.
Q. And then on June 16th, you see -- you have an entry. You're seeking reimbursement for $432.98; right?

**A.** That's correct.

**Q.** Now, we've already discussed how the prices that you're asking for reimbursement for, that's not what shows up on your actual bank statements; correct?

**A.** It appears, yes.

**Q.** But you submitted an e-mail to Isis Choto where you forwarded statements.

**MR. SWANSON:** If I could approach, Your Honor.

**THE COURT:** You may.

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

**Q.** I've handed you what is marked Exhibit 5251.

Do you recognize this e-mail?

This is -- actually -- sorry, just to refresh your recollection, this is not -- do you recall sending files to the Duongs with your bank statements?

**A.** I don't. And especially, this e-mail is not from me and it's not something I was copied on, and it's not something that it was -- it was -- it appears to be an e-mail from Isis to someone else, a third party called Kristina, which is Kristina Duong --

**THE COURT:** That's not the question. What is the...

**THE WITNESS:** They're asking me to recognize a document I had --

**THE COURT:** No. They're asking whether it refreshes

your recollection.

Does it refresh or not?

**THE WITNESS:** It doesn't, Your Honor.

**THE COURT:** Okay. Just say it doesn't.

**MR. SWANSON:** So, Your Honor, we're going to ask that this document and the attachments be conditionally admitted as business records from the Duongs.

**THE COURT:** This is just an e-mail. It has nothing on it.

**MR. SWANSON:** Correct. But what it does have, Your Honor, are attachments that we will now be taking a look at.

These are CWS business record kept in the ordinary course of business and we will --

**THE COURT:** You can't testify.

Is there a -- an agreement or not?

**MR. FINE:** No, Your Honor, we --

**THE COURT:** So --

**MR. FINE:** Mr. Juarez is not on this e-mail.

**THE COURT:** I don't have anything and you can't testify.

**MR. SWANSON:** No, Your Honor. What I'm asking for is this to be conditionally admitted as a business record. I would represent the e-mail that we're looking at here is a scan of what Mr. Juarez dropped off. And in order --

**MR. FINE:** Objection, Your Honor. He's testifying.

**MR. SWANSON:** I'm making a representation for the record for the conditional admission of these documents.

**THE COURT:** So this says nothing.

What's your next question? Is there an attachment?

**MR. SWANSON:** There is an attachment, Your Honor.

**THE COURT:** Well, let me see it. I don't have it. And you said this was 5251, but it's not. That's the last one I did.

**MR. SWANSON:** Sorry. Yeah, you are right. This is 5250. My writing is wrong.

**THE COURT:** And I thought my writing was bad here.

Who are you offering -- who are you going to offer to authenticate these?

**MR. SWANSON:** We intend to call a family -- a representative of the family business. There are a couple who may be called, Your Honor, but...

**THE COURT:** Who will be called, not may be called?

**MR. SWANSON:** Michael Duong will be called, Your Honor.

**THE COURT:** All right. Let me see the other one.

And what is his role with the company?

**MR. SWANSON:** His current title is procurement director, Your Honor.

**THE COURT:** Was he procurement director at the time?

**MR. SWANSON:** Yes, he was.

**THE COURT:** In 2023?

**MR. SWANSON:** Yes, he was.

**THE COURT:** And he has -- he will have personal knowledge?

**MR. SWANSON:** He'll have personal knowledge of the business records and how the records are kept and that these records were kept in the ordinary course of business.

**THE COURT:** How will he know, given everything, what Kristina Duong did or how she maintained her records?

**MR. SWANSON:** If I could.

(Defense counsel conferring.)

**MR. SWANSON:** Your Honor, it might be simpler for us to just -- we can call Isis Choto, who is the recipient of the -- and author of these e-mails. That's who we'll call as a witness for this purpose.

**THE COURT:** And who -- and what is that person's role?

**MR. SWANSON:** She's the office manager, Your Honor.

And, Your Honor, just to be clear so the Court knows what it's looking at, what we're saying --

**THE COURT:** The attachment is what number?

**MR. SWANSON:** The attachment is 5252.

**THE COURT:** Okay. You can use it provisionally.

(Trial Exhibit 5252 marked for identification)

**BY MR. SWANSON:**

**Q.** I'm handing you what has been marked as Exhibit 5252.

**A.** Thank you.
**Q.** Do you, Mr. Juarez, recognize this as a portion of a Chase bank account statement with your bank account number there at the top of the page?
**A.** I don't recognize this to be my bank statement or my bank account.
**Q.** Do you recognize this as a document that you submitted to the -- I'm sorry.
You don't recognize that as your bank account number?
**A.** First of all, I don't remember my bank account number. But I don't recognize this to be my document nor a document that I provided.
**Q.** If it would refresh your recollection, you can take a look at bank statements that you have up in front of you.
**A.** There's so much paperwork you left me without folders here. This is what I have.
Out of all these things, which do you want me to take?
**Q.** Just to be clear, is it your statement that this Mario Juarez account ending in 81581 is not an account that you have?
**A.** That's not what I'm saying. I don't recognize this document as one of them.
**Q.** Okay. So I'll represent to you that this is a document that was obtained by the Duongs.
**MR. FINE:** Objection, Your Honor. He's testifying again.

**THE COURT:** Okay. So what's the question?

**BY MR. SWANSON:**

**Q.** All right. So if we could take a look at the second page of this document.

What you did, Mr. Juarez, I understand, is you provided in connection with the e-mail you sent to the office manager, a series of bank statements that contained various blackouts, redactions, but that left unredacted the portions you were seeking reimbursement for; is that right?

**A.** Did I do the blackouts?

**THE COURT:** That's the question.

**THE WITNESS:** Is that what you're saying?

I don't recognize that, Your Honor, that I blanked out this bank statement. And I don't recognize this document.

**THE COURT:** Okay.

**BY MR. SWANSON:**

**Q.** Isn't true that you provided, in connection with that e-mail that we were just looking at, documents to the Duongs seeking reimbursement?

**A.** Again, I didn't write this e-mail.

How would I know what e-mail that I wrote?

This is an e-mail between Kristina Duong and Isis Choto?

Why are you saying that?

**Q.** I'm asking you if you provided receipts to the Duongs in support of your reimbursement request.

**A.** In what period of time? When? What time? I did provide. I testified that I did.

**Q.** Okay. In November of 2023; correct?

**A.** There are a multitude of times I provided -- I provided multiple documents to the Duongs, that's correct.

**Q.** Okay. And some of those included copies of your bank statements showing what you had spent the money on; correct?

**A.** I believe that, yes, you're correct.

**Q.** All right.

**MR. SWANSON:** Your Honor, I would like to publish to the jury 5252.

**THE COURT:** You can. Not admitted, but you can publish it.

And I'm assuming the second page?

**MR. SWANSON:** Yes, the second -- the first page to orient us and then the second page.

**BY MR. SWANSON:**

**Q.** So we see here a statement for Mario Juarez for July 21st to July 31st, 2023.

Do you see that, Mr. Juarez?

**A.** I see a document, yes.

**Q.** On the back of this document, we see it's largely blacked out, but there's a request for a reimbursement of a flight on June 15th for $353.98.

Do you see that?

A. I see it.
Q. That is a forgery, is it not?
A. I don't recognize this document. How would I know that?
Q. This is a document that you doctored to include an entry that did not occur; correct?
A. You're making an incorrect assessment. I don't recognize this document.
Q. You even got the month wrong, didn't you? You put a June entry on a July bill.
A. What? I didn't recognize this document. How -- this is not a document that I recognize.
Q. If we could take a look, then, at Exhibit 523.

**THE COURTROOM DEPUTY:** 523?

**MR. SWANSON:** Sorry. 5253.

If I may approach, Your Honor.

**THE COURT:** You may.

(Counsel approaches witness.)

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

Q. All right. This is -- do you recognize this document?
A. Doesn't appear a document that I have or that I control or that is mine. I don't recognize it.
Q. So this is a -- you recognize your name on the document and you recognize the bank account number; correct?
A. I don't recognize the account number because I don't

remember, frankly. But I do see my name on the document. I see my business address on the document. And I see that it's from Chase and it's a bank that I use. But I don't recognize the document.

**MR. SWANSON:** Okay. Your Honor, I'd like to be able to publish at this point Exhibit 5253 to the jury.

**THE COURT:** You can publish.

**BY MR. SWANSON:**

Q. Now, this is another statement that seems to have the same dates as the last one, July 1st through July 31st.

Do you see that?

A. Yeah. It appears that it has both dates, yes.

Q. And on this one we have an entry on June 16 for $432.98 for a Southwest flight.

Do you see that?

A. Yeah, it has those amounts.

Q. Looks like you actually capitalized the "W" in Southwest, didn't you?

A. Why do you keep saying that I did it? I didn't testify that I did that.

Q. Just to compare here, this is a document July 1st through July 31st, 2023, an entry on it for June 16th.

Do you see that?

A. I see it. I see the amounts, I see the dates, and I already testified that I don't recognize these documents.

Q. And then looking at the previous exhibit, 5232, same dates, but June 15th.

Do you see that?

A. I see the differences, yes, and the dates that you have. And if these documents I created or if I doctored them, I would so tell the jury. I don't recognize them. I don't remember them.

Q. So, in fact, you did this in June for June 2023 and for October 23; isn't that correct?

A. You're incorrect. I don't recognize doing this.

Q. And let's, in the interest of time, just take a look at -- we'll take a look at the May -- the May exhibit just in the interest of time here.

Okay. So -- the -- the document we're going to be looking at here is Exhibit 5262, which I would now hand to the Government and the Court.

**MR. SWANSON:** If I can approach, Your Honor.

**THE COURT:** You may.

(Counsel approaches witness.)

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

Q. Okay. We're looking at another statement. This one, April 18th, 2023 through May 8th, 2023.

Do you see that document in front of you, Exhibit 5262?

A. Doesn't have an exhibit, but I see a document you just

handed to me.
**Q.** Okay. And, again, this is -- says it's the Chase account for Mario Juarez; correct?
**A.** It's a document that has my name. I recognize it has my name, but then this one has a different business address that I know to be my business address.
Frankly, I don't remember the bank account numbers. That could well be my account numbers on those two assets checking in there. But I don't remember me blacking out any documents or providing this type of style of documents to anyone. So if I did remember, I would tell you: I blocked it out, I did this.
But I don't remember it, so...
**Q.** All right. So let's take a look if we could --
**MR. SWANSON:** If I could publish this to the jury, Your Honor.
**THE COURT:** You may.
**MR. SWANSON:** All right. Sorry.
**BY MR. SWANSON:**
**Q.** Just on the first page of 5262, Mario Juarez, and you're saying that is, indeed, your address; correct?
**A.** That's one of my addresses, office addresses. And I did live at that address as well, yes.
**Q.** All right. We've heard about your addresses.
Let's turn to the second page.

Here we see a number of entries including some flight entries.

Do you see that?

Do you see Southwest again for 348, on the sixth line down?

Do you see that?

**A.** I see a Southwest charge for 348, and I see a Viva for 138. And then I don't see any Southwest. Are those the two ones you were referring to?

**Q.** Just to clarify, it looks like there's a capital W in the Southwest.

But do you see that entry there on 5/2 --

**A.** I do.

**Q.** -- it says Southwest for 348 in this document? Okay.

**MR. SWANSON:** Then, Your Honor, one last document on this.

**THE COURT:** Okay.

**MR. SWANSON:** If I could approach.

**THE COURT:** You may.

(Counsel approaches witness.)

**THE WITNESS:** Thank you.

**BY MR. SWANSON:**

**Q.** Now, this is Exhibit 5263.

Do you see that?

**A.** I see Exhibit SB166.

**Q.** Okay. So I'll tell you this is Exhibit 5263. And this is, again, a Chase bank statement for Mario Juarez dated April 18 through May 8th of 2023.

Do you see that?

**A.** Yes.

**Q.** I'll represent to you this was provided by Chase Bank in response to a Government subpoena and produced in discovery.

**MR. SWANSON:** Your Honor, if I could publish Exhibit 5263.

**THE COURT:** You may.

**BY MR. SWANSON:**

**Q.** Okay. Looking first at 52 --

**MR. FINE:** Your Honor, I don't know where this exhibit came from. It doesn't have our Bates number on it. I -- I didn't really move to admit it. I'm not really sure what this document is or where it came from.

**THE COURT:** Well, I haven't -- I haven't admitted any of them and he indicated that he got it using a subpoena from Chase.

**MR. FINE:** It doesn't have our Bates number on it.

**THE COURT:** Right. But subpoenas to Chase directly.

**MR. FINE:** Was there a subpoena? I thought you said the Government.

**MR. GUGELMANN:** It's discovery.

(Defense counsel conferring.)

**MR. SWANSON:** Your Honor, I'll represent this was produced in discovery by the Government.

**THE COURT:** All right. We will -- I'm not admitting it yet, so let's just do this quickly.

**BY MR. SWANSON:**

**Q.** So, again, we're at Exhibit 5263. Looking first at Exhibit 5262, this is the one we were just looking at with the blackouts -- do you see that, Mr. Juarez, on the screen?

**A.** On this document it looks like something that would come from Chase.

**Q.** Okay. So I'm looking first at 5262.

Do you see that?

This is the document up on the screen --

**A.** Okay.

**Q.** -- with the blackouts.

**A.** And I testified I don't recognize that document.

**Q.** And, again, here's the transaction detail that we were just looking at.

**A.** Okay.

**Q.** All right. Now, I'm showing you what came from the bank.

This is the same at the top.

Do you see that?

**A.** Okay.

**Q.** Same dates, correct, as the one I just looked at that had the blackouts?

A. Yeah, it has the same dates.

Q. Yup.

The statement that came from the bank just had this information.

Do you see that?

It did not -- I'm talking about the statement that came from the bank, not the statement that -- that we submit that you provided to CWS -- it had a starting balance of 0, an ending balance of 0.

Do you see that?

A. Yeah.

Q. And money going in and money going out. That's all it shows. A thousand in, a thousand out, a thousand in, a thousand out.

A. Okay.

Q. That's not what went to the Duongs; correct?

A. Okay.

Q. Show me --

A. I didn't testify that I provided that to the Duongs. I don't recognize those documents and you keep putting mouths in my word [sic], but okay.

Q. I am showing you Exhibit 5262.

A. Okay.

Q. Do you see this includes a number of other expenses including a Southwest entry for $348 that did not show up in

the statement from the bank; correct?
**A.** Okay.
**Q.** So, Mr. Juarez, just plain and simple -- there's a lot of documents to go through. But plain and simple, what you did when you submitted your request for reimbursement to the Duongs, was you forged, fabricated, altered a number of Chase bank statements to try to justify the expenses; isn't that true?
**A.** That's not correct.
**Q.** That all of those entries that we just looked at there on those bank statements, you got the wrong month sometimes, you spelled the name wrong sometimes, you didn't cover up everything sometimes, they're all altered bank statement that you submitted to try to get money from the Duongs; isn't that true?
**A.** That's not correct.
**Q.** Just like the bank statement you submitted to get the $3 million Balboa loan; isn't that true?
**A.** That's not correct.
**MR. SWANSON:** All right. For the record, Your Honor, the Bates on that document is IRS-0144274, page 1891. And that was received in discovery. That is exhibit -- the exhibit we were just discussing.
**MR. FINE:** With that, Your Honor, we have no objection.

**THE COURT:** Okay.

**BY MR. SWANSON:**

Q. So is it -- is it your testimony somebody else did this, not you?

A. What I'm saying is that I -- I don't recognize doing those documents. I didn't forge those documents. I didn't black out those documents. I also had individuals that worked for me. We had accountants, we had individuals, we had other individuals that worked on the financials aspects and on the detail -- things that you call spreadsheets that were produced for me, not by me. There were other people.

The things that I submitted, I submitted. The things that I'm responsible, I am responsible. If you say that I doctored them, I would be freely saying I doctored things, I forged things; I would say it. I don't have a problem with doing it or admitting that, but I don't remember this.

Q. So you -- who -- who did doctor the documents if you didn't?

A. I don't know.

Q. Your account bank statements -- your account bank statements; right? Those are your bank account statements?

A. I'm not the only one with that access, sir.

Q. All right. Let's turn to Genfinity.

At the end of Evolutionary Homes, you decided to try to -- to keep the container home business idea going; right?

A. We're still keeping the idea going, sir.
Q. And you -- you -- you took all the plans, all the work that had been done with the Duongs' money -- right? -- and tried to start a new company; correct?
A. I took my idea. I -- it was my invention, it was my concept, and I wanted to continue working on modular housing.
Q. And they paid for it all; right? They had paid for -- for $750,000 of what you now had; right?
A. They invented -- invested money. I invested money. I invested talent. And we couldn't finalize that and we ended up closing the company. I have a right to make a living. They have a right to make a living. And I continue making a living on something that I knew was a good idea.
Q. Right.
So you took what you had and -- and you said that you started Genfinity Homes; right?
A. You cannot take away knowledge. Once I learned it, what do you want me to do? Take it out of my brain?
Q. You testified that you were sought after by investors, is that right?
A. I sought investors. There were people that were interested in investing in modular housing. There were companies that were being funded for this particular area of housing needs. It was an up-and-coming situation.
Q. Well, you testified that you were sought after by

investors; is that right?

**A.** I testified that I sought and I was sought after and there was -- there was a lot of investment capital available.

**Q.** In fact, you actually testified you got an investment of $650,000; is that right?

**A.** I think it was a little bit more than that, but it was around that -- that amount, correct.

**Q.** Okay. That's not true; right? You're talking about the money you get from Pacific Homes?

**A.** You're mischaracterizing the name of the company. It's called Pacific Companies.

**Q.** Okay. You're talking about the money you got from the Pacific Companies?

**A.** That's correct.

**Q.** Okay. You asked them to invest; right?

**A.** I asked them to invest.

**Q.** They say no; right?

**A.** You're incorrect.

**Q.** They gave you a loan; right?

**A.** That's -- that's what I asked for.

**Q.** Not investment, you asked for a loan; right?

**A.** I did.

**Q.** Of $600,000?

**A.** I think it was more than that.

**Q.** Would it refresh your recollection to take a look at the

records?
A. No.
Q. If you looked at the records, you wouldn't -- it wouldn't help you remember?
A. I remember that it was around $600,000. 610-, 620-, 650-, it was the same amount.
Q. That loan was due in August of this year; right?
A. It was due.
Q. It's past due; right?
A. We're extending it.
Q. Your testimony is that you and -- and Mr. Roope have agreed to extend the closing date of that loan.
A. Not yet, but we will extend it.
Q. You are past due on that loan; correct?
A. As of August we are working towards extension of those loans.
Q. Okay. So tell us what you are doing. Tell us what you and Mr. Roope had discussed about extending the extension of that loan.
**MR. FINE:** Objection, relevance.
**MR. SWANSON:** Your Honor, this is testimony that is now at issue.
**THE COURT:** So sustained at this point.
**BY MR. SWANSON:**
Q. What is -- what is the status of your negotiations with

Mr. Roope to get an extension of the loan that you just testified you were in discussions about getting an extension of?

**MR. FINE:** Objection. Relevance.

**THE COURT:** Sustained. I mean, I don't know how this is at all relevant to the Duongs. So move on. We aren't -- doing we aren't going to spin this out of control.

**MR. SWANSON:** It's a question of veracity, Your Honor.

**THE COURT:** There's plenty for you to work with.

**BY MR. SWANSON:**

**Q.** Indeed, you haven't paid a penny back on that loan, have you?

**MR. FINE:** Objection. Relevance.

**THE COURT:** You can answer that one question.

**THE WITNESS:** No.

**BY MR. SWANSON:**

**Q.** All right. I want to return to the issue of, sort of where we started in this exam, what I characterize your motivation for being here today.

Now, you've -- you've had, as we've discussed, lots and lots of meetings with the Government; right?

**A.** Yes. We met a -- a lot of times, many hours. Many -- it's been a long time. It's over two years.

**Q.** And during that time, you -- you told them everything that you had to know that you thought was important about David

what truly happened was that she requested $300,000, and that was out of the ordinary.

And did I document it?

I did so.

And did I send a text after the fact of that meeting?

I did so to Andy Duong. So --

Q. Mr. Juarez, I think you -- you think that because you write something, it makes it real.

**MR. FINE:** Objection. Argumentative.

**THE COURT:** Sustained as to the form.

Question, please.

**BY MS. HALBERT:**

Q. We've seen, Mr. Juarez, that just because you write something doesn't mean it's true; right?

**MR. FINE:** Objection. Argumentative.

**THE COURT:** Sustained as to the form.

**BY MS. HALBERT:**

Q. Just because you write -- you write lots of things that are false; right? We saw that this morning.

You write fraudulent checks; right? That's -- those are false.

A. Yes, I wrote fraudulent checks.

Q. Okay. And you've doctored bank account statements. That's your writing and it's false; right?

A. I didn't testify to that.